①

July 20, 2007                    # 06-138-MPT



FILED U.S. DISTRICT COURT DISTRICT OF DELAWARE
2007 AUG -3 PM 3: 55

Opening brief in Support of
Plaintiff Vernette Walker Motion to deny
request of dismissal against Defendant
Ann Hines' & the News Journal (et al - join

Vernette Walker
29 Richard Rd.
New Castle, DE 19720

① Ann Hines Sent me cert. letter. I had
26 wks based on My years J Service.

② Anne Hines Approved my Aug 30, 04 Surgery
Procedure ⊕ fired me ⊕ my benefits August 30, 2004

③ I recr'd cert letter position would be filled
July 29 '04 preceeded by a Phone call
from Anne stating I had nothing to worry
about, that was procedure, I had 26 wks.

③ Aug 23 '04 I was sent to clinic (Concentra Med. Ctr)
Job description said was not mine.

④ letter dated Aug 30, 04 - due to Bus. Re
I no longer had a job & all benefits deceased

⑤ I got no health nor other benefit extension

⑥ I got no oppty to appeal.

July 20, 2007

walker vs Hines/newo?     #06138-MPT ②

⑦ I was terminated, they chose to hire a +
⑧ I recr'd no return to work date ab
Aug 23, '04 exam/evaluation

⑨ Anne Hines supplied me with intentional
misrepresented Information.

⑩ Anne Hines refused to communicate with
me thru my Atty-

⑪ Ann Hines made repeated aggravating
harrassment calls to me.

⑫ Anne Hines refused my request to Redirect
Send me something to sign approving her
to contact my Dr. /atting for necessary
info. I told her the phone calls were
interfering with me getting well &
causing me a set back. She started
no these were my benefits & hung
up on me.

⑬ Anne Hines repeatedly ignored request
from Comm. Legal Aid Sept '04.

⑭ Anne Hine was fully aware I suffered
Pain from injuries sustained on the job
'99- '04. Non stop treatment

⑮ I was never gbored Another position

⑯ I was denied my STD full term leave

⑰ Ann Hines knew I had previous injuries, she
knew I had an attorney - chose to ignore both
She knew the repeated phone calls were affecting
me, she then fires me.

July 20, 2007    #06-138 MPT  ③

Ann Hines ~~~~~~~~~~~~~~~ Kautz vs Hines

④ Ann Hines - Shelly Rumpf were both involved + named on my termination loss wrongful acts (intentional infliction of emotional + mental distress, invasion of privacy, misrepres

⑤ Violated verbal & written Policy (Ann Hines)

⑥ Ann Hines sent me the income Protection Plan which state "STD" Continues until fit to return to work, a physical exam or periodic reports from my Doctor may be requested to continue payments.

21) ⑦ 8/23/04 while on STD Ann Hines ~~retaliated against~~ violated the written policy when she ~~requested~~ scheduled the exam at concentra medical center - which was the Company chosen doctor. I'm concerned she also retaliated against my doctor exam 8/11/04 when he prescribed me out of work accommodation. The News Journal handbook states due to years of service, the time earned may be used to cover any long term illness. If that time is not enough then FMLA may be used. I had 16 years full time.

July 20, 207        # 06-138-MPT    ④
                    Walker vs Hines / News Jour

㉒ The News Journal + Ann Hines were awar
   my injuries was caused by The News Jour
   negligence in 1999. They are awar I new
   stopped medication nor treatment from 199
   2004 when I had a Motor Vehicle acciden

㉓ My scheduled visit and treatment for the
   1999 accident was April 14, 2004. the
   auto accident was April 27, 2004, which I
   was rear-ended while stopped at a traffic
   light. I continued by Dr. prescription to take
   the same medicine + received a month or
   less of physical therapy.

㉔ I was never released by Dr. Steinberg from
   worker's comp treatment.

㉕ November or October 2004, instead of the
   News Journal / Ann Hines responding to the
   request from Community legal Aid, they chose
   to send a settlement offer to release them
   from my 1999 injury medicine + treatment.

㉖ Shelly Rumpf sent a email to the entire
   Finance dept stating "Due to medical" I would
   not be returning. This email dated 9/7/04.

July 30, 2007                    # 06-138- MPT

⑤

Venetta Walke

(26 con't) contradicts the News Journal / Ann Hines sta-
"due to business necessity. They eliminated my position
chose to hire a temp instead, they were downsizing
in the finance dept.

(27) July 30, 2004, a letter stated my position
would be filled as a credit clerk. therefore,
the exam August 23, 2004 was illegal due
to no job offer before requesting the exam.

Your Honor,
        I am responding the best I can.
I have documents to support my
statements. I misplaced them, however I'm
still trying to find them. I went to
DDOL 7/17/07 to request my file, no
one has returned my call or responded to my
written statement (see attached). If I
misspoke or did not include something that
may support my case, please do not dismiss
my charges, but allow me to provide the
missing documents and/or explain something I
may have worded wrong. I strongly relied on
the information I received from Ann Hines
verbally and in writing to maintain my job.
This information I thought was being properly

July 20, 2007          #06-138-mA ⑥
                       Warren v.s. Hines / The News

Communicated to me "via" verbal and the
News Journal Policy.

On the employee Profile, the News Journal,
are Hines contradicts themselves by
dates of "Job elimination" - recommended
by Shelly Rampf - 9/7/04 - effective - 8/30/0.
Human Resources signed 9/24/04 - reviewing
mgr. (no date - signature not legible). There
is also a date 9/30/04 but nothing it
relate to. Sau Hines / the News Journal
also provided Concentra Medical Center
with a letter of accommodation a gave
light duty for me, however me nor my
Doctor ever received such notices.

July 5, 2007                    #06-138-MPT      (7)

Medical exams under ADA      (Haercu
                                    Hines/new.

Law Limits med. exams + inquiries of Current employee
to those that are "job-related + consistent with business
necessities.

"Third Circuit appeals, Tice -v- centre Area Transported,
Authority #00-1753, in addition employer did
not regard employee as disabled simply because
it requested a IME

" reasonable basis? I was seen 8/11/04 by my
Dr. Submitted out of work, Also, included surgery procedure
8/30/04, will re-evaluate 9/2/04. I was
required by my employer to have IME 8/23/04

narrowly focused" - A return to work exam was
          requested + upheld as a good health
          stipulation. My specific injuries +
          illness was not the focus. My complete
          medical records were demand to be
          requested + delivered by me to Ann Hines.
          they was submitted 8/18/04.

Medical exam applied consistently" - 8/11/04 my Dr. Supplied
          out of work - 8/23/04 - Company selected Dr.
          Supplied return to work - (No IME stated)

June 15, 2007    # 06-135-MPT
                 (Walker vs Hines)
                             News Journal    Pag 8

Medical Exam \ work Evaluation

(1) By definition: A "Medical Examination"
Procedure or test that seeks informat
about an individual's physical or ment
impairments or health.

(1a) Ann Hines never seeked info from th
Company request Exam 8/23/04 concer
my Mental impairment.

(2) My exam was administered by a Dr. at
a Medical Clinic who only perform
return to work evaluations and distribut
no Medications.

(3) It is unknown how results are interpreted

(4) From 1999-2004, all my IME's were
performed in a professional office. The
only non-professional office setting was
8/23/04. 2005-2006 each IME was
in a professional office setting.

(5) July 23, 2004, shelly Rumpf called me
from the News Journal. She stated
Ann Hines told her I did not return

June 15, 2007

# 06-138-mpt    Page 9

(5 cont'd)

My Medical request form which was due July 16, 2004. She stated that she told Ann Hines she was going to call (at home) to find out what happened, so was given the okay from Ann Hines to call me. I was asleep due to taken heavy medication following a 7/19/04 injection and a 7/22/04 visit with the Psychologist (Dr. Fisher). Shelly asked me if she woke me up, I "answered" yes. She asked how I was feeling, I "answered" sore drowsy & weak. I told her I had the injection which help alot, but painful afterwards for a few days. While sedated she continued to question me:

① When do I think I will be returning?
② What do I do all day?
③ Am I still in therapy?
④ What are my Doctors saying?
⑤ Who are my Doctors?
⑥ Where are they located?

06-138 MPT          Pag 10

(5 cont'd)

⑦ what are they saying is wrong with x
⑧ Do I have disc problems?
⑨ what type and where?
⑩ what type of Doctors are they?
⑪ Am I seeing a back/neck specialist?
⑫ what type medicine do I take?
⑬ she stated she have no disc in her ba
  and she is fine, so she doesn't understand
  why I have so much problem getting
  back to work?

⑭ she stated my Doctors does not care abt
  me, I need to back them in a corner &
  make them release me back to work!

⑮ she stated from her experience, all I
  need is a ③ day a week massage!

⑯ she also stated she did not expect me
  to be out of work past June 2004.

I finally realized the headache she was
causing me, the depression she was making
worse & informed her these questions are
rediculous, I'm getting a major headache and

Pag (11)
# 06-138-MPJ

(5 cont'd)

I want to end the call. I asked her
pray for me she laughed, we hung up.

(17) shelly baggered me so bad, what prm
me to end the call which made me
realize she was torturing me was whe
She stated aggressively " I told her in
June there was nothing wrong with
me. (this statement from that day to
present flared up my depression and
haunt me everyday. From 2004 - presen
not a day go by I do not revisit the
lies, humiliating, and mentally abusive and
intimidating stament she lied and quote
me as saying. After that statement I
ended the call. August 4, 2004 Ann
Hines want me to provide her with
my medical records
this information was requested, persuaded,
coerced and pressured out of me while
Shelly knowingl I was under medication.

Page 

# 06-138-mPT

I Called My attorney at the time Mark Fridkin. to allow him to know the Calls I was receiving from Shelly Rumpf. He then Called Ann Hines. Ann Hines violated my rights when she provided me intentional misrepresented information (verbally and in writing)", denying my request to Communic with me through my attorney, denying my earned benefits and providing deceitful information.

Vernette Walker





**Delaware**
**Back Pain**
**& Sports**
**Rehabilitation Centers**

*Depend on us to*
*get you better faster.*



● **Depend on teamwork**
**for better health:**
- Physical medicine
  & rehabilitation
- Interventional
  pain management/
  injections
- EMG
- Chiropractic care
- Rehabilitation
  therapy
- Exercise physiology
- Psychology/pain
  management
  counseling
- Massage therapy
- Wellness/nutrition
  programs
- QFCEs

● **Nonsurgical solutions:**
- Auto, work & sports
  injuries
- Back & neck pain
- Shoulder pain
- Leg, ankle &
  foot pain
- Hand & wrist pain
  (carpal tunnel
  syndrome)
- Arm pain
- Arthritis, neuritis
  & bursitis pain
- Headaches

● **Effective**
**rehabilitation:**
- Musculoskeletal
  injury
- Nerve injury
- Postsurgical
  rehabilitation
- Sciatica
- Stroke
- Postpolio syndrome
- Spinal cord
  & brain injury
- Joint replacement

SELF REFERRAL                          FOLLOW
                                       RE: Vernet
                                       DATE:

Since Mrs. Walker was last seen, she continues to note pain in the ne
with a pain level of 5 out of 10. The injection did help. The neck pain
on the right and the left side. It was more on the right previously.

There is no pain radiating into the upper extremities.

She notes ain in the low back area, with occasional numbness to the right

Unfortunately, work fired her, and she is quite upset about this. She ha
injection in August 30th and was told that she would be having an injectio
that date. They said that this was ok, and then went and fired her anyway.

I have instucted her to try to see what she can do to appeal this throu
whatever legal means that she can, as this appears quite unjust.

Lexapro does not seem to be helping, as she is becoming quite depresse
Certainly, her firing from work has continued to this, as well, along with hc
pain.

She will need a refill on her Ambien, though has enough of her other
prescription, at this time.

She has another injection scheduled with Dr. Chiang on September 23rd.

On the physical examination, her height is 5'3" and her weight is 148½ lbs. Her
blood pressure is 98/62 and her temperature was 97.4.

Her skin is soft and moist, with no ecchymosis noted.

Mental status is quite depressed.

The cervical region demonstrates areas of tenderness. Range of motion of the
cervical spine is tender, with some guarding noted. The compression and
distraction tests are negative.

The lumbar region demonstrates areas of tenderness. Range of motion of the
lumbar spine is tender, with some guarding noted. Straight leg raising, Patrick's
and Gaenslen's tests are negative.

**Five convenient locations:**
Foulk Road Office Park Plaza: (302) 529-8783 • 2006 Foulk Road, Suite B, Wilmington, DE 19810 • Fax: (302) 5
Medical Arts Complex: (302) 764-0271 • 700 Lea Boulevard, Suite 102, Wilmington, DE 19802 • Fax: (302) 7
Omega Professional Center: (302) 733-0980 • 87-B Omega Drive, Newark, DE 19713 • Fax: (302) 733-09
Glasgow Medical Center: (302) 832-8894 • 2600 Glasgow Avenue, Suite 210, Newark, DE 19702 • Fax: (30
Walker Square: (302) 730-8848 • 830 Walker Road, Suite 11-1, Dover, DE 19901 • Fax: (302) 73

www.delawarebackpain.com

Vernette Walker vs. The News Journal

Attachment ①                    # 06-138 MPT

Case no. 0410077801/17CA500028

**From:** Rumpf, Shelly
**Sent:** Tuesday, September 07, 2004 10:50 AM
**To:** WIL-FINANCE
**Subject:** Vernette Walker

Unfortunately, Vernette will not be returning to work for medical reasons. Her work has and will continue to be divided among the Credit team.

#06-138.MPT

**The News Journal**
A GANNETT NEWSPAPER
WILMINGTON, DELAWARE

WILMINGTON TRUST COMPANY
WILMINGTON, DELAWARE

89-9
311

**089145**

| CHECK NUMBER | DATE |
|---|---|
| 89145 | 05/12/04 |

PAY          *** FIVE HUNDRED TWENTY-FIVE AND 06/100

| AMOUNT |
|---|
| ******525.06 |

PAY TO
THE
ORDER
OF

011052105252002200        52018
VERNETTE WALKER
29 RICHARD RD
CHELSEA ESTATES
NEW CASTLE, DE              19720

NOT GOOD AFTER 90 DAYS

PAYROLL ACCOUNT

**c) GANNETT**

## ADVICE OF DEPOSIT          NON-NEGOTIABLE

▼ DETACH AND RETAIN THIS STATEMENT OF YOUR EARNINGS AND DEDUCTIONS ▼

**News Journal**

| CHECK NUMBER | PERIOD END | DEPT | EMPLOYEE NAME | | EMPLOYEE ID | |
|---|---|---|---|---|---|---|
| | 05/09/04 | 5200 | WALKER, VERNETTE | | 095509486 | |
| BOARD RATE | TOTAL HOURS | YEAR TO DATE GROSS | GROSS TAXABLE PAY | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
| .3176 | 70.00 | 13,883.46 | 1,102.11 | 265.71 | 421.46 | 525.06 |
| EARNINGS TYPE | HOURS | CURRENT | YEAR TO DATE | ST/EXMP | TAXES/DEDS | CURRENT | YEAR TO DATE |
| LAR PAY | 3.50 | 60.61 | 9,819.07 | | FICA-OASDI | 72.84 | 837.59 |
| TIME(1. | .00 | .00 | 961.16 | 5-00 | FEDERAL | 136.47 | 1,880.72 |
| LEAVE | 38.50 | 666.73 | 787.95 | | FICA-HI | 17.04 | 195.89 |
| DAY | .00 | .00 | 242.45 | 5-00 | STATE DE | 39.36 | 522.81 |

\# 06-138-MPT

```
                    TRANSACTION REPORT
                                        MAY-18-2004 04:55
        FOR: WALKER                     302 324 1010

    SEND

DATE   START     RECEIVER            PAGES     TIME    NOTE

AY-18  04:52 PM  3155673534            3       2'14"   OK
```

To: Mark Fridkin - my Att'y

Ann very disrespectful
to my daughter for asking
her to initial she rec'd
paperwork. I call Sue
Klymski. (Publisher Secretary) at
home to discuss procedure
for signature 3/5/04

# 06-138-MPT

**FOLLOWUP VISIT**
**RE: Vernette Walker**
**DATE: 09/03/04**
**Page 2**

Strength, sensation and reflexes of the upper and lower extremities are within functional limits.

Functionally, she transfers independently. Her gait is without specific antalgia.

IMPRESSION: 1. Neck pain, with cervical strain and sprain, secondary to a new motor vehicle accident.
2. Low back pain, with lumbosacral strain and sprain, secondary to a new motor vehicle accident.
3. Rule out a right lumbosacral radiculopathy.
4. Previous injury.

PLANS AND RECOMMENDATIONS: She is to continue following up with Dr. Chiang for injections.

She has enough of her prescriptions, at this time, except for Ambien, which I have renewed. I will take her off the Lexapro and start her on Zoloft 50 mg., to be taken one tablet p.o. daily.

Hopefully, her job situation can be rectified shortly.

I will see her in follow-up in approximately one month.

Medical services rendered were medically necessary, as the result of a motor vehicle accident which occurred on April 27, 2004.

Craig D. Sternberg, M.D.
CDS/nc
dt: 09/14/04

#06-138-mpt

# 06-138 MPT



ne News Journal

## EMPLOYEE PROFILE

**ERNETTE WALKER**
**REDIT CLERK**                                                                      095-50

EPARTMENT:    Business Office          NEXT REVIEW DATE:    2/1/2004    G/L NO.: 520
OB CODE/EXT:   10350 1000              JOB DATE:            2/5/2001              220
OSITION CODE:                         ORIGINAL HIRE DATE:  2/18/1988.

ADDRESS:   29 RICHARD RD

           NEW CASTLE, DE    19720          DATE         TITLE
                                            02/05/01     CREDIT CLERK
PHONE:   (302) 656-4870                     02/05/01

BIRTH DATE:   09/14/58

| DATE | HOURLY | PER PERIOD | ANNUAL | | DATE | SALARY | REASON | CHG % |
|------|--------|-----------|--------|--|------|--------|--------|-------|
| 2/03/03 | $17.32 | $1,212.23 | $31,518 | | 02/03/03 | $31,518 | Increase-Merit | 3.00 |
| | | | | | 02/04/02 | $30,600 | Increase-Merit | 2.00 |
| GRADE | MINIMUM | $22,600 | % OF RANGE | | 02/12/01 | $30,000 | Increase-Promotion | 19.94 |
| .07 | MIDPOINT | $28,300 | 78.23 | | 11/29/99 | $25,012 | Increase-Merit | 4.11 |
| | MAXIMUM | $34,000 | | | 11/30/98 | $24,024 | Increase-Merit | 3.36 |
| | | | | | 12/01/97 | $23,244 | Increase-Merit | 3.71 |
| | | | | | 12/02/96 | $22,412 | Increase-Merit | 4.87 |
| | | | | | 02/19/96 | $21,372 | | 0.00 |

ST RATING        LAST % CHANGE        LAST AMOUNT CHANGE
.5  Commendable +    3.00                $918

---

8-30-04                          **Change Information**                        9/3/04

EFFECTIVE DATE

                                                      HOURLY ☐
                                                      BIWEEKLY ☐
CHANGE REASON            NEW SALARY            ANNUAL ☐        % CHANGE        % BUDGETED

PERFORMANCE RATING      NEXT REVIEW DATE        NEW TITLE

NEW DEPARTMENT          NEW SUBDEP/SHIFT        PT/FT STATUS          REPORTS TO

August 30, 2004         Job Elimination
TERMINATION DATE        REASON                                        ANNUAL LEAVE DUE

COMMENTS

Shelly Rumph  9/7/04   X                              9/24/04
RECOMMENDING MGR   DATE   REVIEWING MGR      DATE   HUMAN RESOURCES   DATE

Intentionally Misrepresented the Income
Protection Plan

# 06 138- MPT

**NOTICE TO EMPLOYEES:**

This handbook summarizes The News Journal
Company's policies, procedures and benefits for regular
full-time employees. Benefits for regular part-time
employees are described under "Part-time Employee
Benefits." The programs and benefits described in this
handbook may or may not apply to members of a
bargaining unit, depending on whether the union has
duly bargained for them. Union employees should
consult their union agreement for programs applicable
to them. Benefits, policies and procedures described
in this handbook may be improved, modified or
terminated at any time at the discretion of the company.

These policies and programs may or may not apply
to members of a bargaining unit depending on the
outcome of previous negotiations. Union employees
should consult their union agreement for policies and
programs applicable to them. Changes in this edition
of the handbook from prior editions are not applicable
to union-represented employees unless there has been
appropriate collective bargaining.

The statements in this handbook do not create an
express or implied contract between us for employment
or for any benefit. A staff member may terminate
employment with The News Journal at any time and
The News Journal may terminate employment of a staff
member at any time.

None of these policies or procedures can be amended
or altered in any way by anyone other than company-
authorized management executives.

terminated by
Ann Hins (Benefits Mgr.)
(no other executive(s)
Signatures

*#06-138 MPT*

**FAMILY LEAVE**

*Still had Sick & Vacation time*

Following completion of 90 days of employment, full-time employees (or part-time employees scheduled to work 1,250 hours per year) may receive up to 12 weeks unpaid leave per year to provide care for your newborn child or child newly placed for foster care with you, or child, spouse, or parent who has a serious health condition, or your own serious health condition (if you have already used your sick leave benefit). Family leave is available in addition to any disability coverage to which you may be entitled.

During Family Leave benefits continue uninterrupted on the same basis as an active employee. You must, however, arrange to continue your contributions to medical and life insurance (if the 401k Savings Plan and Gannett Spending Account is suspended during the leave, but may be resumed when you return to active employment.

Upon return from Family Leave, you are entitled to be reinstated in your prior job or to an equivalent position with equivalent pay, employment benefits and other terms and conditions of employment.

Family Leave related to care for newborns, adoption, or foster care placements is available to both mothers and fathers. If both parents are employed at The News Journal, the benefit (up to 12 weeks) applies per family per year.

Continuation of medical benefits and job reinstatement assurance end after 12 weeks. If you cannot return to active work at that time, you may request additional unpaid leave under the terms of our personal leave of absence policy.

→ *Benefits were approved under STD & LTD income Protection Plan (see attached) Never rec'd notice to request my Dr. review for accomodations.*

#06-138-MPT

information can be obtained from Personnel.

## SAFETY AND SECURITY

We strive to maintain a safe and secure work environment, and we need your cooperation.

- Enter and exit the building through the employee entrance only. Part-time employees who do not have access cards should show their photo I.D.'s and sign in at the guard's station.
- Visitors should enter the building through the lobby and sign in. You will be notified that you have a visitor and you should go to the lobby to meet them and escort them to your area. Visitors should not move around the building unescorted. Visitors arriving after normal business hours must sign in with security, and again, be escorted through the building by an employee.
- We request that you not bring your children into the office during the hours you are working.

## SEPARATION

You and The News Journal both have an equal right to terminate your employment at any time, with or without cause. When possible and appropriate, you will be given the courtesy of advance notice.

I rec'd no notice of termination at all.

Should you decide to resign, normal business practice is to give us the courtesy of 2 weeks' notice. Normally, you are expected to continue to work during your notice period, but in some circumstances you may be asked to stop work immediately. If that's the case, you'll receive pay through your notice period, generally a maximum of two weeks.

Illegal or unethical activities or other violation of company policies can result in immediate termination. For your protection, dismissals of this sort are generally reviewed by your manager, by his or her manager, and by the director of personnel.

no director of personnel nor my supervisor or her Mgr. signed my termination letter.

#06:138 MPT

*My personal item were released to a ex-coworker approved by my supervisor. I still have not rec'd them.*

When you leave us, we expect you to return anything of ours you have been given, including keys, identification and access cards, radios, etc. If for some reason you owe us money, we will ask you to make arrangements for payment before you leave. Pay for all vacation and compensatory time up to one week earned but not taken will be included in your final paycheck. Pay for vacation taken that has not yet been earned will be deducted from your final paycheck.

*did not get my vacation compensatory pay or my final payche*

You will not be paid for sick days taken after submitting your resignation.

It is important that you provide us with a forwarding address if you are moving so that we may contact you if necessary and send you withholding tax information.

### SERIOUS ILLNESS/DISABILITY

Employees with disabilities, physical or mental, or life-threatening illnesses such as cancer or AIDS often benefit from the normal routines of daily life, including working at their regular job. At The News Journal, as long as you are able to perform your job satisfactorily, with or without reasonable accommodation, and your condition does not endanger you or other employees, you will be able to continue in employment on the same basis as all other employees.

*I was approved due to my years of service for STD under this plan.*

*(See attached)*

If your illness/disability prevents you from being able to perform your job even with reasonable accommodations or endangers you or other employees, you may become eligible for benefits under the Income Protection Plan.

We believe your health status is private and make every effort to protect the confidentiality of medical records and information. We also make every reasonable effort consistent with business needs to accommodate employees with medical disabilities or

#06-138-MPT

## SEVERANCE PAY

Employees whose terminations are involuntary, such as layoff, will receive severance pay at the rate of two weeks pay for each year of service or major fraction thereof to a maximum of 52 weeks.

Some instances where severance pay would not be applicable would be cases where there is clear violation of stated company policy (which includes any discharge for cause, including unsatisfactory performance), dishonesty or illegal activity. Final determination of such cases rests with the Publisher.

If an employee does not successfully complete his/her introductory period, severance pay does not apply.

## SICK LEAVE

Should an accident or illness leave you unable to work, full-time and part-time employees who were hired to work 20 hours or more a week are eligible for sick leave with full pay. During your first year you will be eligible for one day sick leave for each month of service (not to exceed 10 days for the year). Paid sick leave is not given during the initial introductory period.

Eligible employees are credited with two weeks sick leave each January. Any unused sick leave from the previous year will be carried into the next year and added to the two weeks. Should an extended illness exceed the length and/or your eligibility for full pay, additional leave at half pay may be considered.

An especially prolonged illness might qualify you for disability retirement or coverage under the company's long-term disability plan, if you are eligible. Family Leave (described in this handbook) can also be used if you have exhausted your sick leave benefit. Under the Family Leave Policy, eligible employees may receive up to 12 weeks of unpaid

#06-138-MPT

# BENEFITS

## ACCIDENTS/WORKERS' COMPENSATION

Each injury or accident, regardless of how insignificant it may seem, must be reported to your supervisor and an accident form must be completed. If medical assistance is needed, Personnel should be contacted immediately. Minor accidents during the daytime (7:30 a.m. to 4:30 p.m.) should be treated at Occupational Health Services, Medical Center of Delaware, 501 W. 14th Street, Wilmington, DE. Serious accidents at anytime and minor accidents during the night shift should go to either the Wilmington Hospital or Christiana Hospital emergency room. You should take an Occupational Health Services form to the hospital with you. Personnel should be notified the following morning.

Workers' compensation insurance payments will be paid directly to you. Full-time employees will receive a supplement from The News Journal equal to the difference between their weekly salary and the amount paid by the insurance company until they return to work, up to a maximum of six months. Benefits such as health and life insurance will continue for a maximum of 12 months.

Regular periodic updates on your condition should be given to your supervisor and Personnel. You will be required to provide a doctor's return to work slip. If you are permanently unable to return to your position and no other suitable position is available, supplemental payments will be discontinued and employment will be terminated.

If you operate a company vehicle or equipment you are expected to do so in a safe manner, in accordance with all applicable laws and operating procedures. Use of seat belts is required when operating company vehicles. Any accident, damage,

#06-138 MPT

accelerated payment of insurance coverage is not a loan; it simply reduces the amount of life insurance payable to your beneficiary in the event of your death.

## TRAVEL ACCIDENT INSURANCE

Means added protection in the event of accidental death of dismemberment while you are traveling on company business. Out of town and daily travel on assignments are covered. The maximum benefit is $75,000 for exempt employees and $40,000 for non-exempt employees. Coverage is effective on your hire date.

## Long-Term Disability

Protection is effective the January 1 following six months of employment. The Long Term Disability Plan pays a benefit of 60 percent of your total compensation (including commissions and executive incentive bonuses, if applicable) commencing 26 weeks after the onset of your illness or injury. This coincides with the end of your short term disability coverage. A complete description of this plan is available in personnel.

## MEDICAL

Employees have the option of selecting the medical insurance plan that best suits their individual needs following the successful completion of the introductory period. The Communicare Choice program offers comprehensive coverage for employees and their families. Coverage under HMO plans is also available. Dental, vision and hearing assistance coverage, through Aetna, are a part of each medical program offered. Employees must contribute toward the cost of coverage. See

#06-138 MPT

LAW OFFICES
## KIMMEL, CARTER, ROMAN & PELTZ
PROFESSIONAL ASSOCIATION

MAILING ADDRESS
P.O. BOX 1070
BEAR, DELAWARE 19701

(302) 392-2000
(866) 792-5277 (TOLL FREE)
FAX (302) 392-0800
www.KimmelCarter.com

MORTON RICHARD KIMMEL*
EDWARD B. CARTER, JR.
THOMAS J. ROMAN
WILLIAM R. PELTZ
MICHAEL D. BEDNASH
MATTHEW M. BARTKOWSKI**
JONATHAN B. O'NEILL****
DANIEL A. SCHWARZ▲
LAWRANCE SPILLER KIMMEL*

*ALSO MEMBER DC BAR
**ALSO MEMBER PA BAR
***ALSO MEMBER NJ BAR
▲MEMBER PA & NJ BARS ONLY
*ALSO MEMBER PA & NJ BARS

OFFICE LOCATIONS
200 BIDDLE AVENUE
SUITE 101
SPRINGSIDE PLAZA
NEWARK, DE

913 MARKET STREET
SUITE 700
WILMINGTON, DE
(302) 571-0800

June 26, 2007

Re:    Vernette Walker vs. Gannett Co. Inc.

Ms. Vernette Walker
29 Richard Road
New Castle, DE  19720

Dear Vernette:

Enclosed please find a copy of the Decision on Petition to Determine Additional Compensation Due. The Industrial Accident Board found that you are entitled to payment of 50% of your medical bills for a total of $4,020.57. Please be advised that the employer's attorney has thirty (30) days to appeal this award. I will keep you updated regarding this matter.

If you have any questions, please feel free to contact me.

Very truly yours,

Lawrance Spiller Kimmel

LSK/bel
Enclosure

#06 -138 MPT

D.F. _____ DICT. _____
F.F. _____ SUS. _____

#### BEFORE THE INDUSTRIAL ACCIDENT BOARD
#### OF THE STATE OF DELAWARE

JUN 2 5 2007

M.F. _____ PH·
ENC. _____ OTHER _____

VERNETTE WALKER,                          )
                                          )
    Employee,                          )
                                          )
    v.                                 )
                                          )    Hearing No.:  1139748
GANNETT CO., INC.,                        )
                                          )
    Employer.                          )

#### DECISION ON PETITION TO DETERMINE ADDITIONAL COMPENSATION DUE

Pursuant to due notice of time and place of hearing served on all parties in interest, the

above stated cause came before the Industrial Accident Board on March 15, 2007 in the Hearing

Room of the Board, New Castle County, Delaware.

#### PRESENT

#### LOWELL L. GROUNDLAND

#### IRVING S. LEVITT

Lydia C.F. Anderson, Workers' Compensation Hearing Officer, for the Board

#### APPEARANCES:

Lawrance S. Kimmel, Esquire, for the Employee

Cassandra F. Roberts, Esquire, for the Employer

## NATURE AND STAGE OF THE PROCEEDINGS

On February 8, 1999, Vernette Walker ("Claimant") was injured while working for Gannett Company, Inc. ("Gannett"). Pursuant to an Agreement as to Compensation, Gannett paid workers' compensation benefits, including permanent impairment of cervical spine[1] at a weekly rate of $300.30 based on an average weekly wage of $450.45. On December 12, 2006, Claimant filed a Petition to Determine Additional Compensation Due, seeking compensation for medical expenses. Gannett argues a question of causality, as it believes the reasonable and necessary expenses in connection with the 1999 work accident have been satisfied.

A hearing on the matter was held on March 15, 2007. This is the Board's decision.

## SUMMARY OF THE EVIDENCE

Claimant testified that she worked for six years in retail ads and collections at the *News Journal*. On February 8, 1999, something fell on Claimant, causing injury to her neck, back, and left shoulder. She underwent left shoulder surgery in 2001 and again in 2006 because of continuing problems. Claimant had been seeing Dr. Sternberg every four to six weeks until April 14, 2004, because of neck and back symptoms. She had two injections, was taking medication, Skelaxin, Celebrex and Dextra, and receiving chiropractic care.

In April 27, 2004, Claimant was in a motor vehicle accident and injured her neck and back. She was stopped at a red light and struck in the rear. Claimant's neck pain worsened. Prior to the motor vehicle accident, her neck pain was at a level of six out of ten, with ten being the worst pain. Afterwards, her neck pain increased to seven out of ten. She returned to chiropractic care and therapy, but took the same medications as before.

---

[1] Of the 14% permanent impairment found, 7% was attributed to the work accident and 7% to the motor vehicle accident. *Deposition of Conrad K. King, Jr.*, M.D., March 5, 2007, p. 18.

2

# 0 6-138-mPJ

In April 2005, Claimant stopped treating with Dr. Sternberg. In May 2005, she started treating with Dr. King. She is seeing him every eight weeks. She never stopped treating for back and neck pain. She is taking Hydrocodone two times a day.

On cross-examination, Claimant stated that she has good and bad days. Dr. Ginger Chiang administered injections before and after the motor vehicle accident. Narcotic mediations were added after that event. She was taken out of work and has not returned.

Conrad K. King, M.D. testified by deposition on behalf of Claimant.    Claimant first presented for evaluation on May 11, 2005. She provided a history of sitting at her computer when her entire work station fell onto her lap, including the keyboard, tray, desk and monitor. She had to lift the equipment off. Initially, Claimant experienced pain in her legs, where the direct impact occurred. Subsequently, she experienced tingling in the leg, sharp shooting pain in her neck and pain in the low back pain. Dr. King reviewed pertinent medical records, noting Claimant began treatment with her primary care physician, Dr. Julian Vengen, who referred her to the Delaware Back Clinic, where she came under the care of Dr. Craig Sternberg.

An MRI of the cervical spine, taken April 1, 2002, revealed a right paracentral hard disc at C5-6, which indented the ventral aspect of the cervical cord at that level, and a small diffused disc bulge at C6-7. Reviewing Dr. Sternberg's April 14, 2004 medical record, Dr. King noted complaints of pain with some burning pain in the mid-back area, extending down the right side to the right leg. She had a pain level of six out of ten. Symptoms would increase with prolonged sitting and doing household chores. Getting up and moving actually eased the pain. Dr. Sternberg's physical examination revealed some tenderness in the cervical spine and lumbar spine. Range of motion was essentially full and her neurologic examination was nonfocal. Dr. Sternberg recommended continuance of medication and a return visit in four weeks. Claimant

3

returned for treatment on May 5, 2004, reporting involvement in a motor vehicle accident on April 27, 2004. Dr. Sternberg's notes indicated complaints of pain in the neck, low back and left leg. Claimant had received treatment in the emergency room and had x-rays and a CT scan of the neck. She was prescribed Vicodin and released.

In Dr. King's initial examination, his physical findings included some discomfort in the cervical spine on extremes of motion in all planes. Claimant had some tightness of the trapezius muscles bilaterally, the only objective finding. She had a palpable trigger point on the left. Straight leg raising was negative at 75 degrees bilaterally, though it produced complaints of thigh pain. She had a normal lumbar spine examination with full and essentially painless range of motion. She also had a normal neurologic examination.

Dr. King has seen Claimant every eight weeks, about six times a year, since the initial consult for pain management. He has been maintaining her on medications including narcotics, analgesics and muscle relaxants for control of painful muscle spasms. Claimant also had physical therapy and iontophoresis treatments, a method of driving cortisone into the trapezius muscle to alleviate pain and spasms. She underwent EMG studies, which revealed bilateral C6-7 radiculitis. Dr. King's working diagnosis is neck pain secondary to acute post-traumatic cervical strain and sprain, which he attributed the work accident of 1999, and a herniated nucleus pulposus at C5-6.

Based on Claimant's history, her initial presentation and the medical records, Dr. King believed that Claimant aggravated her neck injury in the motor vehicle accident. She had neck and low back symptoms for five years, with waxing and waning, which never resolved. The motor vehicle accident aggravated the work injuries. Just prior to the motor vehicle accident, Claimant was still taking medication and receiving treatment for her work accident injuries. Her

4

# 06-138-MPT

discomfort after the motor vehicle accident was over and above the baseline level. Dr. King believes that, without the motor vehicle accident, Claimant would still be treating for the work injuries through the present. She would have required treatment for continuing chronic pain.

When Dr. King last saw Claimant on January 24, 2007, she was complaining of ongoing neck pain and left upper extremity radicular symptoms. Dr. King kept her on a self-directed home treatment program and medications.

Dr. King's medical bill, in the amount of $3,892.00, remains unpaid. He opined that his treatment was reasonable and necessary for Claimant's physical condition. Dr. King also reviewed a medical bill from Dynamic Physical Therapy, in the amount of $3,271.00, and he opined that that treatment was reasonable and necessary, with 50% related to the work accident and 50% to the motor vehicle accident. Another bill, from Summit Pharmacy, in the amount of $878.14, for OxyContin and Hydocodone, prescribed for pain, was also reasonable and necessary, with 50% related to the work accident.

On cross-examination, Dr. King testified that, at the time he started treatment, Claimant would have been in a more acute phase relative to the motor vehicle accident as opposed to the work injury. She was placed on disability after the motor vehicle accident and was out for an extended time. Dr. King prescribed the treatment at Dynamic Physical Therapy.

Fifty percent of all the treatment is directly related to the 1999 work accident and the other 50% is related to the April 2004 motor vehicle accident.    Dr. King explained that, some seven years after the work accident, Claimant's injury waxes and wanes with periods of partial temporary remissions followed by acute exacerbations. The motor vehicle accident was a flare-up.  Dr. King believed that treatment would have been palliative, to help control ongoing significant pain after the motor vehicle accident. It was reasonable and necessary to try to

5

control the neck and back pain with a course of physical therapy. Claimant was still treating prior to the motor vehicle accident; so she had not fully recovered from her work injuries. The motor vehicle made it worse, but there was no way to ferret out one cause. Dr. King thought it fair to apportion the expenses for medical treatment at 50%.

Gannett presented the deposition of Carl D. Sternberg, M.D., who was Claimant's treating physician. Claimant was seen in his office on April 14, 2004 for complaints of low to mid back pain with radiation to the right lower extremity. He diagnosed chronic neck and low back pain and sprain and strain. He next saw her on May 5, 2004, prompted by the April 27, 2004 motor vehicle accident, where Claimant as rear-ended by an SUV. Claimant's neck and low back symptoms escalated in intensity. She also developed headaches severe enough to produce vomiting. Dr. Sternberg took her out of work and she has not worked since that time.

Dr. Sternberg opined that Claimant was totally disabled as a result of the motor vehicle accident. His treatment, rendered almost monthly, was reasonable, necessary and causally attributable to the "April 27, 2004, work event."[2]    When he last saw her in March 2005, Claimant's diagnoses was cervical, lumbar strain and sprain. While the base of the treatment at the point was the motor vehicle accident, Claimant had some underlying chronic neck and back issues that predated that event.

On cross-examination, Dr. Sternberg testified that Claimant has a permanent problem in her neck and back as a result of the work accident. The problems would have persisted whether or not she had the motor vehicle accident. He agreed with Dr. King that Claimant had an aggravation of her neck and back symptoms from the auto accident. That minimizes, however,

---

[2] *Deposition of Carl D. Sternberg, M.D.,* December 7, 2005, p 6. Either Dr. Sternberg misspoke or the transcription is in error, as the April 27, 2004 event was the motor vehicle accident, not the work event, which occurred on February 8, 1999.

6

#06-138· MPT

the impact of the car accident, which had a major impact on her neck and back pain and caused depression. Dr. Sternberg would describe the car accident as a significant aggravation.

Alan J. Fink, M.D., provided two depositional testimonies on behalf of Gannett. In the December 9, 2005 deposition, Dr. Fink indicated evaluations occurred on August 28, 2000, October 31, 2001, and October 25, 2005. He was aware of an intervening motor vehicle accident that occurred on April 27, 2004. Dr. Fink reviewed pertinent medical records and reports, noting that Claimant underwent a left shoulder surgery on June 6, 2000, an acromial fragment and acromioplasty decompression of the left shoulder. She also had chondromalacia of the humeral head. Claimant returned to work in 2001 until the motor vehicle accident, when she was rear-ended by a four by four truck. She suffered an immediate increase in neck, low back and upper back pain. She also developed daily headaches for the first time. Thereafter, Claimant was out of work for four months before her employment was terminated.

In 2005, Dr. Fink's physical examination revealed a normal range of neck motion and full range of low back motion with some limitation of forward flexion. Her neurological examination was entirely normal. Dr. Fink's assessment was by history, a new injury resulting from the April 2005 motor vehicle accident, which precipitated daily severe headaches. By 2000, Claimant had significant improvement in her neck and low back pain. Her occasional complaints did not prevent her from working. Claimant felt that her current major problem was headaches, as opposed to neck and low back aching. Dr. Fink diagnosed ligamentous and muscular injury of the neck and low back, secondary to the motor vehicle accident. The headaches are likely a combination of post-traumatic headaches plus rebound analgesic headaches.    Dr. Fink related the symptoms and the treatment to the 2004 motor vehicle accident, rather than the 1999 work accident.

7

# 06-138-MPT

On cross-examination, Dr. Fink noted an April 2002 MRI revealing a right paracentral hard disc at C5-6, indenting ventrally on the cord. The imaging preceded the motor vehicle accident. The hard disc herniation would have become hard in the three years since the 1999 work accident. Also, a June 23, 2004 MRI, taken after the motor vehicle accident, showed a herniation at C6-7 that previously showed as a bulge. There was no change in the prior herniation at C5-6.

Dr. Yalamanchili's record of May 2002 noted a diagnosis of cervical radiculopathy. Dr. Sternberg's records indicate neck and low back complaints between 2000 and 2004. Still, Dr. Fink testified that Claimant had a normal examination and she told him that she had improved and was able to get back to work. Dr. Fink believed that Claimant had a cervical and lumbar sprain, which had essentially improved. She could have taken over-the-counter medication for her neck and low back pain and really did not need continuing follow-up. Just before the April 2004 car accident, Dr. Sternberg was prescribing medication and it makes sense that he did so for a reason. Dr. Fink agreed with Dr. Sternberg's diagnosis of chronic neck and low back pain.

In Dr. Fink's March 12, 2007 deposition, he testified that prior to the motor vehicle accident, Claimant had been gainfully employed for at least two or three years. Since the motor vehicle accident, she has not returned to work. Since the motor vehicle accident, Claimant has undergone a new treatment modality in the form of trigger point injections administered by Dr. Chiang. Also, Dr. Sternberg's office assigned causality to the motor vehicle accident.

Dr. Fink believes that the motor vehicle accident produced a new injury. All treatment thereafter relate to that incident. Dr. Sternberg's medical note just prior to the motor vehicle accident indicated Claimant's primary complaint was mid back pain going down the right lower extremity. Dr. Sternberg's findings included cervical spine motion within functional limits, as

8

$\#\ 06-138-MPT$

noted in earlier exams on March 17, 2004, January 21, 2004, and November 12, 2003. In August 2003, Claimant reported that her neck felt fair and she complained of low back pain. In July 2003, she called attention to the right upper extremity; in June 2003, she reported that both her back and neck pain levels were under fair control. Claimant's medications prior to the motor vehicle accident included Celebrex, a nonsteroidal anti-inflammatory drug, and Zanaflex, a drug used for spasticity, to relax muscles. The drugs were not narcotics. After the car accident, she was prescribed Vicodin, a narcotic, Skelaxin, Ultracet, and Bextra. The medication is stronger and layered with muscle relaxant and anti-inflammatory medication.

On cross-examination, Dr. Fink agreed that Dr. Sternberg's notes of January 21, 2007, and March 17, 2007, indicate neck pain at a level of six out of ten. Claimant had tenderness in the neck and low back in Dr. Sternberg's April 13, 2004 examination. Dr. Fink agreed that, at that time, Claimant's symptoms were chronic. Dr. Sternberg's note of May 5, 2004, indicated neck pain at seven out of ten. Claimant has had consistent complaints of neck and low back complaints since the February 8, 1999 work accident.

On re-direct, Dr. Fink stated that the physical therapy treatment occurring in July, August and September 2006 arose from the motor vehicle accident, which was closer in time than the work accident. On re-cross, Dr. Fink added that when a person has a prior injury and a trauma later to the same part of the body, in many cases, treatment will increase and then decrease to the level before the trauma. On re-direct again, Dr. Fink stated that he was not inferring that Claimant was back to base line relative to the work event.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Compensability:** The employer is bound by statute to pay compensation for personal injury or death by accident arising out of and in the course of employment. 19 *Del. C.* § 2304.

9

# 06-138- MP1

Claimant must prove by a preponderance of the evidence to that the expenses for which she seeks compensation are related to the 1999 work accident. For the reasons stated below, the Board finds that Claimant has met her burden with respect to fifty percent of expenses.

The parties rely on conflicting medical testimony. The Board is free to rely on either medical expert as long as the substantial evidence standard can be met. *DiSabatino Brothers, Inc. v. Wortman*, 453 A. 2d 102, 106 (Del. 1982). The testimony of three medical experts was presented. The Board relies on Drs. King and Sternberg, Claimant's treating physicians. Dr. Sternberg's testimony that Claimant has a permanent problem with her neck and back as a result of the work accident is believable in light of the ongoing treatment she was still receiving in 2004, just before the motor vehicle accident. Her neck and back problems would have persisted even if she had not suffered the motor vehicle accident. The Board accepts Dr. Sternberg's opinion that the motor vehicle accident significantly aggravated Claimant's chronic neck and back symptoms. Dr. King had a similar opinion. The Board rejects Dr. Fink's opinion that a new injury occurred as a result of the April 2004 vehicle accident, as the doctor apparently believed that the injuries from the work accident had essentially improved to the point of resolution. He did not appear to accept the opinion that Claimant's chronic injuries waxed and waned, with periods of temporary remissions followed by acute exacerbations, as Dr. King opined. Yet, Dr. Fink agreed that Claimant has chronic neck and back pain.

The Board considered Dr. Fink's observation that Claimant had been gainfully employed for two to three years and was not able to return to work after the motor vehicle accident. Those facts are not dispositive of the issue, as injury does not necessarily keep one from working. The Board accepts Claimant's testimony that just prior to the motor vehicle accident, her neck pain was at the level of six out of ten. After the motor vehicle accident, her neck pain rose to seven

10

out of ten. She had continuing pain emanating from the work accident. The Board finds that the
motor vehicle accident aggravated Claimant's underlying chronic neck and back pain. Hence,
Claimant is entitled to receive compensation for treatment of the underlying pain.

**Medical Expenses:** "During the period of disability the employer shall furnish
reasonable surgical, medical, dental, optometric, chiropractic and hospital services, medicine and
supplies, . . . as and when needed unless the employee refuses to allow them to be furnished by
the employer." 19 *Del. C.* § 2322 (a). Dr. King attributed 50% of his treatment ($3,892) and
that from other providers ($3,271 + 878.14) to the work injury and 50% to the motor vehicle
accident. The Board accepts that percentage based on his opinion that it would be difficult to
ferret out one cause from the other and 50% appears to be fair. Thus, Claimant is entitled to
receive $4,020.57.

**Medical Witness and Attorney's Fees:** This successful Claimant is entitled to receive a
medical witness fee to be taxed against Gannett, pursuant to 19 *Del. C.* § 2322(e). Whenever a
claimant is awarded compensation, she is entitled to payment of reasonable attorney's fee in an
amount not to exceed thirty percent of the award or ten times the weekly wage as announced by
the Secretary of Labor, which is currently $8,574.60. 19 *Del. C.* §2320(j). Pursuant to §2320,
Claimant is entitled to attorney's fees for an award of medical expenses, which shall be taxed
against Gannett.

In determining an appropriate attorney's fee, the Board considered the following factors
as set forth in *General Motors Corp. v. Cox*, 304 A. 2d 55, 57 (Del. 1973). Claimant's counsel
submitted an affidavit indicating that he spent approximately 22 hours preparing for the hearing,
which lasted approximately two hours. The issues in this case were not particularly novel or
difficult. The affidavit indicated representation began on March 8, 2006. Counsel was not

11

# 06-138 MPT

precluded from accepting other employment because of this case, although he could not work on other cases at the same time he was working on this case. His fee is contingent; he does not state his hourly rate, but notes two years of experience, mostly in workers' compensation. A fee of $175 is considered reasonable for an attorney with that level of experience. Counsel does not expect to receive compensation from any other source. There was no evidence presented that Gannett s unable to pay an award of attorney's fee. The Board finds a fee of $4,200 (24 x $175) or thirty percent (30%) of the award, whichever is less, is reasonable.

## STATEMENT OF THE DETERMINATION

Accordingly, the Board **grants** Claimant's Petition to Determine Additional Compensation Due and awards compensation for medical expenses, a medical witness fee and an attorney's fee, as set forth above.

IT IS SO ORDERED THIS 21st day of June, 2007.

INDUSTRIAL ACCIDENT BOARD

LOWELL L. GROUNDLAND

IRVING S. LEVITT

I, Lydia C.F. Anderson, Hearing Officer, hereby certify that the foregoing is a true and correct decision of the Industrial Accident Board.

LYDIA C.F. ANDERSON, ESQUIRE

Mailed Date: 6-22-07

bac

OWC Staff

12

#06-138-mPT

GLASGOW M  CAL CENTER, L.L.C.
Ambulatory Surgery Center

2600 Glasgow Avenue • Suite 226 • Newark, Delaware 19702-4777
302-836-3539 / Fax 302-836-3671

## AMBULATORY SURGERY CENTER

### OPERATIVE REPORT

| | |
|---|---|
| PATIENT: | Vernette Walker |
| CHART NUMBER: | 036782 |
| DATE: | 08/30/04 |
| PRE-OPERATIVE DIAGNOSIS: | Lumbar disk protrusion. |
| POST-OPERATIVE DIAGNOSIS: | Same as above. |
| PROCEDURE: | Midline L4-5 interlaminar epidural steroid injection with epidurogram and fluoroscopic guidance. |
| PHYSICIAN: | Ginger Chiang, M.D. |
| ANESTHESIA: | Conscious sedation due to medical necessity. |

DESCRIPTION OF PROCEDURE: After informed consent and answering all questions, IV was inserted per routine protocol. The patient was brought into the procedure room and placed in the prone position. The patient's back was prepped with Betadine and draped in the usual sterile fashion. All skin injection sites were anesthetized with 1% Lidocaine using a 25 gauge needle. The procedure needle was an 18 gauge, 3-1/2 inch Touhy needle.

Fluoroscopy was utilized in the AP view to identify L4-5 interlaminar space. A right paramedian approach was taken. A target point was chosen over the superior aspect of the inferior lamina. The procedure needle was directed towards the chosen target point until the needle was in contact with lamina. The needle was then directed superiorly into the ligamentum flavum. Epidural space was identified using a continuous loss of resistance technique using normal saline. There was a frank loss of resistance. There was no heme or CSF aspirated.

At this point, 3 cc. of omnipaque was injected slowly through the needle. On AP view, this showed right-sided and midline spread of the dye. On lateral view, the dye spread was posterior from L4 and L5. There was no intravascular or intrathecal uptake.

Accreditation Association

#06·138·MPT

Vernette Walker            - 2 -            08/30/04

Then, 80 mg. of DepoMedrol in 1 cc. with 1% PF Lidocaine, 4 cc.
was injected through the needle.  The needle was flushed and
removed intact.  The patient tolerated the procedure without any
difficulty and was taken to the Recovery Room in stable
condition.  There was no motor deficit nor were there any
complications.

Pulse oximetry and blood pressure were being continuously
monitored and a total of 3 mg. of IV Versed was given during the
procedure.

Ginger Chiang, M.D.

TR:  GC:afc
DD:  09/14/04
DT:  09/16/04

cc:  Ginger Chiang, M.D.
     Chart

*# 06-138. MPT* (handwritten)

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE

REHABILITATION ASSOCIATES, P.A.

Accounts 25408 - 25408  All Dates

Page  1

*miles* (handwritten)

| Acct | Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amount |
|------|------|-------|------|-----|-----------|--------|------|-------|--------|
| 25408 | Walker,Vernette | | | | | Previous Balance : | | | 0.00 |
| | 03/22/99 | 0 | Walker,Vernette *Beneck* | 22 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 03/22/99 | 0 | Walker,Vernette *Riverside* | 22 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 03/24/99 | 0 | Walker,Vernette *Stonberg* | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 03/24/99 | 0 | Walker,Vernette *Riverside* | 92 | 97035 | Utrasound - Each are | | 724.2 | 1.00 | 28.00 |
| | 03/24/99 | 0 | Walker,Vernette | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 03/25/99 | 0 | Walker,Vernette *Beneck* | 22 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 03/25/99 | 0 | Walker,Vernette *RH* | 22 | 97035 | Utrasound - Each are | | 724.2 | 1.00 | 28.00 |
| | 03/25/99 | 0 | Walker,Vernette | 22 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 03/30/99 | 0 | Walker,Vernette *mack* | 29 | 97035 | Utrasound - Each are | | 724.2 | 1.00 | 28.00 |
| | 03/30/99 | 0 | Walker,Vernette *RH* | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 03/30/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 03/31/99 | 0 | Walker,Vernette *Sternberg* | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 03/31/99 | 0 | Walker,Vernette | 92 | 97035 | Utrasound - Each are | | 724.2 | 1.00 | 28.00 |
| | 03/31/99 | 0 | Walker,Vernette *RH* | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 03/31/99 | 0 | Walker,Vernette | 92 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 03/31/99 | 0 | Walker,Vernette *Stern RH* | 8 | 99244 | Office Consult - Ext | | 724.2 | 1.00 | 325.00 |
| | 04/01/99 | 0 | Walker,Vernette *Kennedy RH* | 180 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 67.00 |
| | 04/01/99 | 0 | Walker,Vernette *glassman* | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/01/99 | 0 | Walker,Vernette *RH* | 43 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/01/99 | 0 | Walker,Vernette *RH* | 43 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/05/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 04/05/99 | 0 | Walker,Vernette | 22 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/05/99 | 0 | Walker,Vernette *Beneck* | 22 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/05/99 | 0 | Walker,Vernette *RH* | 22 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/05/99 | 0 | Walker,Vernette | 22 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/07/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 04/07/99 | 0 | Walker,Vernette *RH* | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/07/99 | 0 | Walker,Vernette *Steps* | 92 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/07/99 | 0 | Walker,Vernette *RH Berg* | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/08/99 | 0 | Walker,Vernette | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/08/99 | 0 | Walker,Vernette *glassman* | 43 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/08/99 | 0 | Walker,Vernette *RH* | 43 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/08/99 | 0 | Walker,Vernette | 43 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/12/99 | 0 | Walker,Vernette *bakst* | 89 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/12/99 | 0 | Walker,Vernette | 89 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/12/99 | 0 | Walker,Vernette *RH* | 89 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/12/99 | 0 | Walker,Vernette | 89 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/12/99 | 0 | Walker,Vernette | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 04/12/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98943 | Chiro Manip extraspi | | 724.2 | 1.00 | 44.00 |
| | 04/14/99 | 0 | Walker,Vernette *RH* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 04/14/99 | 0 | Walker,Vernette | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/14/99 | 0 | Walker,Vernette *Sternberg* | 92 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/14/99 | 0 | Walker,Vernette *RH* | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/14/99 | 0 | Walker,Vernette | 92 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/15/99 | 0 | Walker,Vernette *RH* | 22 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/15/99 | 0 | Walker,Vernette | 22 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/15/99 | 0 | Walker,Vernette *Beneck* | 22 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/15/99 | 0 | Walker,Vernette *RH* | 22 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 04/19/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 04/19/99 | 0 | Walker,Vernette | 89 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 04/19/99 | 0 | Walker,Vernette *bakst* | 89 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 04/19/99 | 0 | Walker,Vernette *RH* | 89 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 04/19/99 | 0 | Walker,Vernette | 89 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |

*RH = Riverside Hosp* (handwritten)

*#06.138 MPT*

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE

REHABILITATION ASSOCIATES, P.A.

Page   2

| Acct Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amount |
|-----------|-------|------|-----|-----------|--------|------|-------|--------|
| 04/21/99 | 0 | Walker,Vernette *Steruberg* | 8 | 99213 | | Est Pt Intermediate | 734.2 | 1.00 | 95.00 |
| 04/21/99 | 0 | Walker,Vernette | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 04/21/99 | 0 | Walker,Vernette | 92 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 04/21/99 | 0 | Walker,Vernette | 92 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 04/21/99 | 0 | Walker,Vernette *Kennedy* | 92 | 97110 | | Treat 1 area ther. E | 734.2 | 1.00 | 47.50 |
| 04/21/99 | 0 | Walker,Vernette | 92 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 04/22/99 | | Check Payment | | | Ins #1135   04/22/99 | | | | -249.50 |
| 04/23/99 | 0 | Walker,Vernette | 89 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 04/23/99 | 0 | Walker,Vernette | 89 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 04/23/99 | 0 | Walker,Vernette *Bakst* | 89 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 04/23/99 | 0 | Walker,Vernette | 89 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 04/26/99 | 0 | Walker,Vernette | 89 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 04/26/99 | 0 | Walker,Vernette | 89 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 04/26/99 | 0 | Walker,Vernette | 89 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 04/26/99 | 0 | Walker,Vernette | 89 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 04/26/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 04/28/99 | 0 | Walker,Vernette | 92 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 04/28/99 | 0 | Walker,Vernette *Steruberg* | 92 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 04/28/99 | 0 | Walker,Vernette | 92 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 04/28/99 | 0 | Walker,Vernette | 92 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 04/28/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 04/29/99 | 0 | Walker,Vernette | 22 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 04/29/99 | 0 | Walker,Vernette *Benedk* | 22 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 04/29/99 | 0 | Walker,Vernette | 22 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 04/29/99 | 0 | Walker,Vernette | 22 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/04/99 | 0 | Walker,Vernette | 29 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 05/04/99 | 0 | Walker,Vernette *Mack* | 29 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 05/04/99 | 0 | Walker,Vernette | 29 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/04/99 | 0 | Walker,Vernette | 29 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/05/99 | 0 | Walker,Vernette | 92 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 05/05/99 | 0 | Walker,Vernette *Steruberg* | 92 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 05/05/99 | 0 | Walker,Vernette | 92 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/05/99 | 0 | Walker,Vernette | 92 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/06/99 | 0 | Walker,Vernette | 43 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 05/06/99 | 0 | Walker,Vernette *glassman* | 43 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 05/06/99 | 0 | Walker,Vernette | 43 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/06/99 | 0 | Walker,Vernette | 43 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/06/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 05/10/99 | 0 | Walker,Vernette *Bakst* | 89 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/10/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 05/10/99 | | Check Payment | | | Ins #1135   05/10/99 | | | | -353.50 |
| 05/10/99 | | Check Payment | | | Ins #1135   05/10/99 | | | | 375.22 |
| 05/12/99 | 0 | Walker,Vernette *Steruberg* | 92 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 05/12/99 | 0 | Walker,Vernette | 92 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 05/12/99 | 0 | Walker,Vernette | 92 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/12/99 | 0 | Walker,Vernette | 92 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/13/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 05/13/99 | 0 | Walker,Vernette | 22 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |
| 05/13/99 | 0 | Walker,Vernette *Benedk* | 22 | 97014 | | Elec. Stim; Tens; in | 724.2 | 1.00 | 32.00 |
| 05/13/99 | 0 | Walker,Vernette | 22 | 97110 | | Treat 1 area ther. E | 724.2 | 1.00 | 47.50 |
| 05/13/99 | 0 | Walker,Vernette | 22 | 97112 | | Neuromuscular Re-Ed | 724.2 | 1.00 | 35.00 |
| 05/13/99 | 0 | Walker,Vernette | 22 | 97530 | | Ther. activ.; direct | 724.2 | 1.00 | 35.00 |
| 05/13/99 | 0 | Walker,Vernette | 22 | 99070 | | Rx Supplies | 724.2 | 1.00 | 10.00 |
| 05/17/99 | 0 | Walker,Vernette *Baar* | 150 | 98940 | | Chiro. manip. One-tw | 724.2 | 1.00 | 52.00 |
| 05/17/99 | 0 | Walker,Vernette *Bakst* | 89 | 97010 | | Phys Med;1 or more a | 724.2 | 1.00 | 17.00 |

*all Riverside*

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE
REHABILITATION ASSOCIATES, P.A.

Page   3

| Acct Date | Dep # | Name | Dr# | Procedure | | Ref Dt | Diag | Units | Amount |
|-----------|-------|------|-----|-----------|--|--------|------|-------|--------|
| 05/17/99 | 0 | Walker,Vernette | 89 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| 05/17/99 | 0 | Walker,Vernette BAKST | 89 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 05/17/99 | 0 | Walker,Vernette | 89 | 97112 | Neuromuscular Re-Ed | | 724.2 | 1.00 | 35.00 |
| 05/17/99 | 0 | Walker,Vernette | 89 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 05/18/99 | | Check Payment | | | Ins #1135 | 05/18/99 | | | -542.50 |
| 05/19/99 | 0 | Walker,Vernette | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| 05/19/99 | 0 | Walker,Vernette HERNBERG | 92 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| 05/19/99 | 0 | Walker,Vernette | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 05/19/99 | 0 | Walker,Vernette | 92 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 05/19/99 | 0 | Walker,Vernette KENNEDY | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 05/19/99 | 0 | Walker,Vernette STERNBERG | | 99212 | Est Pt Intermediate | | 724.2 | 1.00 | 99.00 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -46.80 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -46.80 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -15.30 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -28.80 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -42.75 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -31.50 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -15.30 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -28.80 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -15.30 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -28.80 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -42.75 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -31.50 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -31.50 |
| 05/19/99 | | Check Payment | | | Ins #1135 | 05/19/99 | | | -42.75 |
| 05/20/99 | 0 | Walker,Vernette | 22 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| 05/20/99 | 0 | Walker,Vernette BENECK | 22 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| 05/20/99 | 0 | Walker,Vernette | 22 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 05/20/99 | 0 | Walker,Vernette | 22 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 05/20/99 | 0 | Walker,Vernette | 22 | 99070 | Dx Supplies | | 724.2 | 1.00 | 10.00 |
| 05/25/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| 05/25/99 | 0 | Walker,Vernette MACK | 29 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| 05/25/99 | 0 | Walker,Vernette | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 05/25/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 05/26/99 | | Check Payment | | | Ins #1135 | 05/26/99 | | | -82.80 |
| 05/27/99 | 0 | Walker,Vernette KENNEDY | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 05/27/99 | 0 | Walker,Vernette | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| 05/27/99 | 0 | Walker,Vernette GLASSMAN | 43 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| 05/27/99 | 0 | Walker,Vernette | 43 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 05/27/99 | 0 | Walker,Vernette | 43 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 05/28/99 | | Check Payment | | | Ins #1135 | 05/28/99 | | | -46.80 |
| 05/28/99 | | Check Payment | | | Ins #1135 | 05/28/99 | | | -46.80 |
| 06/01/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| 06/01/99 | 0 | Walker,Vernette MACK | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| 06/01/99 | 0 | Walker,Vernette | 29 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| 06/01/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -15.30 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -28.80 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -42.75 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -31.50 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -15.30 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -28.80 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -42.75 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -31.50 |
| 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -446.50 |

all Reversed

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE
REHABILITATION ASSOCIATES, P.A.

Page   4

| Acct | Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amount |
|------|------|-------|------|-----|-----------|--------|------|-------|--------|
| | 06/02/99 | | Check Payment | | | Ins #1135 | 06/02/99 | | | -131.50 |
| | 06/03/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 67.00 |
| | 06/03/99 | 0 | Walker,Vernette | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/03/99 | 0 | Walker,Vernette *Lassman* | 43 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/03/99 | 0 | Walker,Vernette | 43 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| | 06/03/99 | 0 | Walker,Vernette | 43 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/08/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/08/99 | 0 | Walker,Vernette | 29 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 06/08/99 | 0 | Walker,Vernette *mack* | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/08/99 | 0 | Walker,Vernette | 29 | 97112 | Neuromuscular Re-Ed | | 724.2 | 1.00 | 35.00 |
| | 06/08/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/10/99 | 0 | Walker,Vernette | 181 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/10/99 | 0 | Walker,Vernette *Kennedy* | 181 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/10/99 | 0 | Walker,Vernette | 181 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 06/10/99 | 0 | Walker,Vernette | 181 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/10/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 06/10/99 | 0 | Walker,Vernette | 180 | 97112 | Neuromuscular Re-Ed | | 724.2 | 1.00 | 35.00 |
| | 06/15/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/15/99 | 0 | Walker,Vernette | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/15/99 | 0 | Walker,Vernette | 29 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 06/15/99 | 0 | Walker,Vernette *mack* | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/15/99 | 0 | Walker,Vernette | 29 | 97535 | Home mangmt/adaptive | | 724.2 | 1.00 | 25.00 |
| | 06/15/99 | 0 | Walker,Vernette | 29 | 97112 | Neuromuscular Re-Ed | | 724.2 | 1.00 | 35.00 |
| | 06/16/99 | 0 | Walker,Vernette *Stenberg* | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 99.00 |
| | 06/17/99 | 0 | Walker,Vernette | 181 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/17/99 | 0 | Walker,Vernette *Kennedy* | 181 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 32.00 |
| | 06/17/99 | 0 | Walker,Vernette | 181 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/17/99 | 0 | Walker,Vernette | 181 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/17/99 | 0 | Walker,Vernette | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 06/17/99 | 0 | Walker,Vernette *Kennedy* | 180 | 97112 | Neuromuscular Re-Ed | | 724.2 | 1.00 | 35.00 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -1102.00 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -25.20 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -42.75 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -31.50 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -15.30 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -25.20 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -42.75 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -31.50 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -15.30 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -42.75 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -31.50 |
| | 06/22/99 | | Check Payment | | | Ins #1135 | 06/22/99 | | | -60.30 |
| | 06/22/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/22/99 | 0 | Walker,Vernette *mack* | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/22/99 | 0 | Walker,Vernette | 29 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| | 06/22/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/24/99 | 0 | Walker,Vernette | 181 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/24/99 | 0 | Walker,Vernette *Kennedy* | 181 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 06/24/99 | 0 | Walker,Vernette | 181 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| | 06/24/99 | 0 | Walker,Vernette | 181 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/24/99 | 0 | Walker,Vernette *Kennedy* | 180 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 06/24/99 | 0 | Walker,Vernette | 180 | 98943 | Chiro Manip extraspi | | 724.2 | 1.00 | 46.00 |
| | 06/29/99 | 0 | Walker,Vernette *Polar* | 150 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 67.00 |
| | 06/29/99 | 0 | Walker,Vernette *mack* | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 06/29/99 | 0 | Walker,Vernette | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |

*all Riverside*

PATIENT FINANCIAL HISTORY BY DT SERVICE
REHABILITATION ASSOCIATES, P.A.

| Acct | Date | Dep # | Name | Dr# | Procedure | | Ref Dt | Diag | Units | Amount |
|------|------|-------|------|-----|-----------|--|--------|------|-------|--------|
| | 06/29/99 | 0 | Walker,Vernette | 29 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 06/29/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -15.30 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -28.80 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -42.75 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -31.50 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -15.30 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -28.80 |
| | 06/30/99 | | Check Payment | | | Ins #1195 | 06/30/99 | | | -42.75 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -31.50 |
| | 06/30/99 | | Check Payment | | | Ins #1135 | 06/30/99 | | | -46.80 |
| | 07/01/99 | 0 | Walker,Vernette | 180 | 99940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 07/01/99 | 0 | Walker,Vernette | 181 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 07/01/99 | 0 | Walker,Vernette | 181 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 07/01/99 | 0 | Walker,Vernette | 181 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 07/01/99 | 0 | Walker,Vernette | 181 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 07/06/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 07/06/99 | 0 | Walker,Vernette | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 07/06/99 | 0 | Walker,Vernette | 29 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 07/06/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 07/08/99 | 0 | Walker,Vernette | 181 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 07/08/99 | 0 | Walker,Vernette | 181 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 07/08/99 | 0 | Walker,Vernette | 181 | 97124 | Massage to one area | | 724.2 | 1.00 | 40.00 |
| | 07/08/99 | 0 | Walker,Vernette | 181 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 07/08/99 | 0 | Walker,Vernette | 180 | 97124 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 07/08/99 | 0 | Walker,Vernette | 180 | 97140 | Man Ther 1 or more a | | 724.2 | 2.00 | 59.00 |
| | 07/13/99 | | Check Payment | | | Ins #1135 | 07/13/99 | | | -723.00 |
| | 07/13/99 | | Check Payment | | | Ins #1135 | 07/13/99 | | | -46.80 |
| | 07/13/99 | | Check Payment | | | Ins #1135 | 07/13/99 | | | -31.50 |
| | 07/13/99 | 0 | Walker,Vernette | 29 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 07/13/99 | 0 | Walker,Vernette | 29 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 07/13/99 | 0 | Walker,Vernette | 29 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| | 07/13/99 | 0 | Walker,Vernette | 29 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 07/14/99 | 0 | Walker,Vernette | 98 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 99.00 |
| | 07/14/99 | 0 | Walker,Vernette | 92 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 17.00 |
| | 07/14/99 | 0 | Walker,Vernette | 92 | 97110 | Treat 1 area ther. E | | 724.2 | 1.00 | 47.50 |
| | 07/14/99 | 0 | Walker,Vernette | 92 | 97032 | Elec Stim 1 or more | | 724.2 | 1.00 | 32.00 |
| | 07/14/99 | 0 | Walker,Vernette | 92 | 97530 | Ther. activ.; direct | | 724.2 | 1.00 | 35.00 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -15.30 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -42.75 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -36.00 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -31.50 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -22.50 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -31.50 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -15.30 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -26.80 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -42.75 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -31.50 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -52.00 |
| | 07/20/99 | | Check Payment | | | Ins #1135 | 07/20/99 | | | -44.00 |
| | 07/21/99 | | Check Payment | | | Ins #1135 | 07/21/99 | | | -362.00 |
| | 07/30/99 | 0 | Walker,Vernette | 184 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 07/30/99 | 0 | Walker,Vernette | 184 | 97140 | Man Ther 1 or more a | | 724.2 | 2.00 | 59.00 |
| | 08/03/99 | 0 | Walker,Vernette | 184 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/10/99 | 0 | Walker,Vernette | 184 | 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE
REHABILITATION ASSOCIATES, P.A.

Page   6

| Acct | Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amoun |
|------|------|-------|------|-----|-----------|--------|------|-------|-------|
| | 08/11/99 | | Check Payment | | Ins #1135 | 08/11/99 | | | -1366.50 |
| | 08/12/99 | | Check Payment | | Ins #1135 | 08/12/99 | | | -1107.50 |
| | 08/13/99 | 0 | Walker,Vernette | 150 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/18/99 | 0 | Walker,Vernette | 150 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/18/99 | 0 | Walker,Vernette Baer | 150 97140 | Man Ther 1 or more a | | 724.2 | 2.00 | 59.00 |
| | 08/20/99 | 0 | Walker,Vernette RH | 150 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/20/99 | 0 | Walker,Vernette | 150 97140 | Man Ther 1 or more a | | 724.2 | 2.00 | 59.00 |
| | 08/24/99 | 0 | Walker,Vernette | 150 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/27/99 | 0 | Walker,Vernette | 150 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/31/99 | 0 | Walker,Vernette Kennedy | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 08/31/99 | | Check Payment Omega | | Ins #1135 | 08/31/99 | | | -46.80 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -5.20 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 5.20 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -52.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 52.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -59.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 59.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -52.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 52.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -59.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 09/31/99 | | | 59.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -52.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 52.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 150 | 08/31/99 | | | -52.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 150 From 22 | 08/31/99 | | | 52.00 |
| | 08/31/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 184 | 08/31/99 | | | -52.00 |
| | 08/31/99 | | Ref (98) from Unapplied | | Cross-Alloc To 184 From 22 | 08/31/99 | | | 52.00 |
| | 09/03/99 | 0 | Walker,Vernette Kennedy | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 09/07/99 | 0 | Walker,Vernette Omega | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 09/09/99 | | Check Payment | | Ins #1135 | 09/09/99 | | | -46.80 |
| | 09/09/99 | | Ref (99) from Unapplied | | Cross-Alloc From 22 To 184 | 09/09/99 | | | -5.20 |
| | 09/09/99 | | Ref (98) from Unapplied | | Cross-Alloc To 184 From 22 | 09/09/99 | | | 5.20 |
| | 09/10/99 | 0 | Walker,Vernette Kennedy | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 09/14/99 | 0 | Walker,Vernette Omega | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| | 09/17/99 | 0 | Walker,Vernette Stephens | 2 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| | 09/17/99 | 0 | Walker,Vernette Baer | 150 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| | 09/22/99 | | Check Payment RH | | Ins #1135 | 09/22/99 | | | -326.00 |

*# -06 138-mpt*

| Date | Dep # | Name | Dr# Procedure | | Ref Dt | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|
| 09/30/99 | 0 | Walker,Vernette *KENNEDY RH* | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 10/13/99 | 0 | Walker,Vernette *BOOR RH* | 150 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| 10/13/99 | | Check Payment | | Ins #1135 | 10/13/99 | | | -148.86 |
| 10/27/99 | 0 | Walker,Vernette | 150 NS | No Show | | NS | 1.00 | 0.00 |
| 10/29/99 | | Check Payment | | Ins #1135 | 10/29/99 | | | -319.00 |
| 10/29/99 | | Check Payment | | Ins #1135 | 10/29/99 | | | -146.80 |
| 11/04/99 | 0 | Walker,Vernette *KENNEDY OM* | 184 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 11/10/99 | 0 | Walker,Vernette *Sternberg au* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| 11/10/99 | 0 | Walker,Vernette | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 11/17/99 | 0 | Walker,Vernette *KENNEDY* | 180 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| 11/24/99 | 0 | Walker,Vernette *RH* | 180 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| 11/24/99 | 0 | Walker,Vernette | 180 97140 | Man Ther 1 or more a | | 723.1 | 2.00 | 59.00 |
| 11/29/99 | | Check Payment | | Ins #1135 | 11/29/99 | | | -60.30 |
| 12/01/99 | 0 | Walker,Vernette *KENNEDY RH* | 180 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| 12/08/99 | 0 | Walker,Vernette *Sternberg au* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| 12/08/99 | 0 | Walker,Vernette *Sternberg* | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 12/29/99 | 0 | Walker,Vernette *RH* | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 01/04/00 | | Check Payment | | Ins #1135 | 01/04/00 | | | -88.56 |

7/21/06                                PATIENT FINANCIAL HISTORY BY DT SERVICE                                Page   7

REHABILITATION ASSOCIATES, P.A.

| cct Date | Dep # | Name | Dr# Procedure | | Ref Dt | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|
| 01/04/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 8 | | 01/04/00 | | | -10.44 |
| 01/04/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 8 From 22 | | 01/04/00 | | | 10.44 |
| 01/12/00 | 0 | Walker,Vernette | 180 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 67.00 |
| 01/17/00 | | Check Payment | | Ins #1135 | 01/17/00 | | | -46.80 |
| 01/17/00 | | Check Payment | | Ins #1135 | 01/17/00 | | | -93.60 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -67.00 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 67.00 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -29.86 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 29.86 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -22.14 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 22.14 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -67.00 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 67.00 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -59.00 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 59.00 |
| 01/17/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 8 To 180 | | 01/17/00 | | | -67.00 |
| 01/17/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 8 | | 01/17/00 | | | 67.00 |
| 01/26/00 | 0 | Walker,Vernette *KENNEDY RH* | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 01/26/00 | 0 | Walker,Vernette *Stern RH 8* | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 99.00 |
| 01/26/00 | 0 | Walker,Vernette *KENNEDY* | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 02/09/00 | 0 | Walker,Vernette *RH* | 180 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 02/11/00 | | Check Payment | | Ins #1135 | 02/11/00 | | | -49.01 |
| 02/15/00 | | Check Payment | | Ins #1135 | 02/15/00 | | | -98.02 |

*OM = omega*

| 02/15/00 | | Check Payment | | Ins #1135 | 02/15/00 | | | -88.56 |
|---|---|---|---|---|---|---|---|---|
| 02/15/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 02/15/00 | | | -5.98 |
| 02/15/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 02/15/00 | | | 5.98 |
| 02/15/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 8 | | 02/15/00 | | | -10.44 |
| 02/15/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 8 From 22 | | 02/15/00 | | | 10.44 |
| 02/15/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 02/15/00 | | | -67.00 |
| 02/15/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 02/15/00 | | | 67.00 |
| 02/15/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 02/15/00 | | | -52.00 |
| 02/15/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 02/15/00 | | | 52.00 |
| 02/15/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 02/15/00 | | | -52.00 |
| 02/15/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 02/15/00 | | | 52.00 |
| 02/15/00 | 0 | Walker,Vernette KENNEDY | 184 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 02/15/00 | 0 | Walker,Vernette OMEGA | 184 97140 | Man Ther 1 or more a | | 724.2 | 2.00 | 59.00 |
| 02/23/00 | 0 | Walker,Vernette KENNEDY RH | 180 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 02/28/00 | | Check Payment | | Ins #1135 | 02/28/00 | | | -46.80 |
| 02/28/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 184 | | 02/28/00 | | | -5.20 |
| 02/28/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 184 From 22 | | 02/28/00 | | | 5.20 |
| 02/28/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 184 | | 02/28/00 | | | -59.00 |
| 02/28/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 184 From 22 | | 02/28/00 | | | 59.00 |
| 02/28/00 | | Check Payment | | Ins #1135 | 02/28/00 | | | -60.30 |
| 03/08/00 | 0 | Walker,Vernette KENNEDY RH | 180 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 03/20/00 | | Check Payment | | Ins #1135 | 03/20/00 | | | -87.91 |
| 03/20/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 03/20/00 | | | -52.00 |
| 03/20/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 03/20/00 | | | 52.00 |
| 03/20/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 03/20/00 | | | -52.00 |
| 03/20/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 03/20/00 | | | 52.00 |
| 03/22/00 | | Check Payment | | Ins #1135 | 03/22/00 | | | -49.50 |
| 03/22/00 | 0 | Walker,Vernette KENNEDY RH | 180 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 04/04/00 | | Check Payment | | Ins #1135 | 04/04/00 | | | -49.50 |
| 04/04/00 | | Ref (99) from Unapplied | | | | | | |
| | | | Cross-Alloc From 22 To 180 | | 04/04/00 | | | -2.50 |
| 04/04/00 | | Ref (98) from Unapplied | | | | | | |
| | | | Cross-Alloc To 180 From 22 | | 04/04/00 | | | 2.50 |
| 04/04/00 | | Check Payment | | Ins #1135 | 04/04/00 | | | -180.90 |

07/21/06                        PATIENT FINANCIAL HISTORY BY DT SERVICE                        Page   8
                                   REHABILITATION ASSOCIATES, P.A.

| Acct Date | Dep # | Name | Dr# Procedure | | Ref Dc | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|
| 04/05/00 | 0 | Walker,Vernette KENNEDY RH | 180 98940 | Chiro. manip. One-tw | | 724.2 | 1.00 | 52.00 |
| 04/11/00 | | Check Payment | | Ins #1135 | 04/12/00 | | | -49.50 |
| 04/19/00 | 0 | Walker,Vernette STERID RH | 8 99213 | Esr Pt Intermediate | | 723.1 | 1.00 | 99.00 |

Kennedy

| Date | | Patient | | | Code | Description | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/19/00 | 0 | Walker,Vernette R H | | 180 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 52.00 |
| 04/25/00 | | Check Payment | | | Ins #1135 | 04/25/00 | | | -49.50 |
| 05/11/00 | | Check Payment | | | Ins #1135 | 05/11/00 | | | -46.80 |
| 05/31/00 | | Check Payment | | | Ins #1135 | 05/31/00 | | | -46.80 |
| 05/31/00 | | Adjustment (16) | | | Preferred Provider | 05/31/00 | | | -5.20 |
| 05/31/00 | 0 | Walker,Vernette Stern R H | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| 05/31/00 | | Check Payment | | | Ins #1135 | 05/31/00 | | | -134.71 |
| 05/31/00 | | Adjustment (16) | | | Preferred Provider | 05/31/00 | | | -11.09 |
| 05/31/00 | | Adjustment (16) | | | Preferred Provider | 05/31/00 | | | -5.20 |
| 06/21/00 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 180 | | | | 06/21/00 | | | -5.20 |
| 06/21/00 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 180 From 22 | | | | 06/21/00 | | | 5.20 |
| 07/26/00 | 0 | Walker,Vernette Stern R H | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| 08/08/00 | | Check Payment | | | Ins #1135 | 08/08/00 | | | -87.91 |
| 08/08/00 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 8 | | | | 08/08/00 | | | -4.00 |
| 08/08/00 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 8 From 22 | | | | 08/08/00 | | | 4.00 |
| 08/08/00 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 8 | | | | 08/08/00 | | | -7.09 |
| 08/08/00 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 8 From 22 | | | | 08/08/00 | | | 7.09 |
| 09/20/00 | 0 | Walker,Vernette Stern R H | 8 | 99212 | Est Pt Brief OV | | 723.1 | 1.00 | 75.00 |
| 11/15/00 | 0 | Walker,Vernette | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 99.00 |
| 11/27/00 | | Check Payment | | | Ins #1135 | 11/27/00 | | | -75.00 |
| 12/06/00 | 0 | Walker,Vernette Stern | 8 | 99212 | Est Pt Brief OV | | 723.1 | 1.00 | 75.00 |
| 12/13/00 | 0 | Walker,Vernette R H | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 99.00 |
| 01/29/01 | | Check Payment | | | Ins #1135 | 01/29/01 | | | -166.50 |
| 01/29/01 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 8 | | | | 01/29/01 | | | -99.00 |
| 01/29/01 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 8 From 22 | | | | 01/29/01 | | | 99.00 |
| 01/29/01 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 8 | | | | 01/29/01 | | | -7.50 |
| 01/29/01 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 8 From 22 | | | | 01/29/01 | | | 7.50 |
| 01/29/01 | | Ref (99) from Unapplied | | | | | | | |
| | | Cross-Alloc From 22 To 8 | | | | 01/29/01 | | | -16.75 |
| 01/29/01 | | Ref (98) from Unapplied | | | | | | | |
| | | Cross-Alloc To 8 From 22 | | | | 01/29/01 | | | 16.75 |
| 02/21/01 | 0 | Walker,Vernette Stern R H | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 103.95 |
| 03/08/01 | | Check Payment | | | Ins #1286 | 03/08/01 | | | -89.10 |
| 03/08/01 | | Ref (2) from 1286 Overpayment Refund | | | | 03/08/01 | | | 89.10 |
| 03/16/01 | | Ref (2) from 1135 Overpayment Refund | | | | 03/16/01 | | | 577.73 |
| 04/09/01 | | Check Payment | | | Ins #1286 | 04/09/01 | | | -93.46 |
| 04/09/01 | | Adjustment (16) | | | Preferred Provider | 04/09/01 | | | -10.49 |
| 05/16/01 | 0 | Walker,Vernette Sternberg | 8 | 99212 | Est Pt Brief OV | | 723.1 | 1.00 | 78.75 |
| 06/06/01 | 0 | Walker,Vernette R H | 8 | 99212 | Est Pt Brief OV | | 723.1 | 1.00 | 78.75 |
| 07/10/01 | | Check Payment | | | Ins #1286 | 07/10/01 | | | -70.36 |
| 07/10/01 | | Adjustment (16) | | | Preferred Provider | 07/10/01 | | | -8.39 |
| 08/21/01 | | Check Payment | | | Ins #1286 | 08/21/01 | | | -70.36 |
| 08/21/01 | | Adjustment (16) | | | Preferred Provider | 08/21/01 | | | -8.39 |
| 10/17/01 | 0 | Walker,Vernette Stern | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 103.95 |
| 11/14/01 | 0 | Walker,Vernette | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| 12/12/01 | 0 | Walker,Vernette R H | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| 12/27/01 | | Check Payment | | | Ins #1286 | 12/27/01 | | | -103.95 |
| 01/01/02 | | Check Payment | | | Ins #1286 | 01/01/02 | | | -97.12 |
| 02/12/02 | | Check Payment | | | Ins #1286 | 02/12/02 | | | -109.15 |
| 03/06/02 | 0 | Walker,Vernette Stern R H | 8 | 95213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |

| | 03/26/02 | 0 | Walker,Vernette *OR ZHOU 7K* | | 255 99243 | Office Consult Inter | | 723.1 | 1.00 | -303.1 |
| 04/08/02 | 0 | Walker,Vernette *ZHOU GW* | | 256 99214 | Est Pt Extended OV | | 723.1 | 1.00 | -198.4 |
| 04/10/02 | 0 | Walker,Vernette *SFH@ RH 8* | | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| 04/17/02 | 0 | Walker,Vernette *ZHOU* | | 261 62310 | Inj. Single Cerv/Tho | | 723.1 | 1.00 | 892.80 |

07/21/06    *St Francis*    PATIENT FINANCIAL HISTORY BY DT SERVICE                                    Page    9

REHABILITATION ASSOCIATES, P.A.

| Acct | Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amoun |
|---|---|---|---|---|---|---|---|---|---|
| | 04/17/02 | 0 | Walker,Vernette *ZHOU* | 261 76005-26 | Fluoro guidance need | | 723.1 | 1.00 | 100.00 |
| | 04/17/02 | 0 | Walker,Vernette *SFH* | 261 99141 | Conscious Sedation | | 723.1 | 1.00 | 197.41 |
| | 05/07/02 | 0 | Walker,Vernette *ZHOU 7K* | 255 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 05/14/02 | | Check Payment | 17891802 | Ins #1286 | 05/14/02 | | | -303.19 |
| | 05/14/02 | | Check Payment | 17891811 | Ins #1286 | 05/14/02 | | | -98.24 |
| | 05/14/02 | | Adjustment (16) | 17891811 | Preferred Provider | 05/14/02 | | | -10.91 |
| | 05/21/02 | | Check Payment | 18090018 | Ins #1286 | 05/21/02 | | | -98.24 |
| | 05/21/02 | | Adjustment (16) | 18090018 | Preferred Provider | 05/21/02 | | | -10.91 |
| | 05/22/02 | 0 | Walker,Vernette *SHUN RH 8* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 05/28/02 | | Check Payment | 18314271 | Ins #1286 | 05/28/02 | | | -1190.21 |
| | 06/18/02 | 0 | Walker,Vernette *ZHOU* | 261 62310 | Inj. Single Cerv/Tho | | 723.1 | 1.00 | 1195.00 |
| | 06/18/02 | 0 | Walker,Vernette *SFH* | 261 76005-26 | Fluoro guidance need | | 723.1 | 1.00 | 100.00 |
| | 06/18/02 | 0 | Walker,Vernette | 261 99141 | Conscious Sedation | | 723.1 | 1.00 | 197.41 |
| | 06/25/02 | 0 | Walker,Vernette | 255 NS | No Show | | 723.1 | 1.00 | 0.00 |
| | 06/26/02 | 0 | Walker,Vernette *SEAB RH 8* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 07/16/02 | | Check Payment | 19691613 | Ins #1286 | 07/16/02 | | | -109.15 |
| | 07/23/02 | | Check Payment | 19900233 | Ins #1286 | 07/23/02 | | | -109.15 |
| | 07/30/02 | | Check Payment | 20106513 | Ins #1286 | 07/30/02 | | | -1229.74 |
| | 07/30/02 | | Adjustment (16) | 20106513 | Preferred Provider | 07/30/02 | | | -10.00 |
| | 08/20/02 | | Check Payment | 20722455 | Ins #1286 | 08/20/02 | | | -98.24 |
| | 08/20/02 | | Adjustment (16) | 20722455 | Preferred Provider | 08/20/02 | | | -10.91 |
| | 09/18/02 | 0 | Walker,Vernette *SEAB RH 8* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 09/24/02 | 0 | Walker,Vernette *DENOHA 7K* | 256 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 10/30/02 | 0 | Walker,Vernette *SEAB RH 8* | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 11/04/02 | 0 | Walker,Vernette *COLDED RH* 180 | 98941 | Chirn. manip. three- | | 723.1 | 1.00 | 73.87 |
| | 11/07/02 | 0 | Walker,Vernette *WARD RH* 203 | 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 73.87 |
| | 11/11/02 | 0 | Walker,Vernette *KENNEDY RH* 180 | 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 73.87 |
| | 11/12/02 | | Check Payment *DEVOHTA* | 23208759 | Ins #1296 | 11/12/02 | | | -98.24 |
| | 11/12/02 | | Adjustment *LIMESTOSE* | 23208759 | Preferred Provider | 11/12/02 | | | -10.91 |
| | 11/12/02 | 0 | Walker,Vernette | 294 62310 | Inj. Single Cerv/Tho | | 723.1 | 1.00 | 1195.00 |
| | 11/12/02 | 0 | Walker,Vernette *LimeStone* | 294 76005-26 | Fluoro guidance need | | 723.1 | 1.00 | 100.00 |
| | 11/12/02 | 0 | Walker,Vernette | 294 99141 | Conscious Sedation | | 723.1 | 1.00 | 201.09 |
| | 11/14/02 | 0 | Walker,Vernette *WARD RH* | 203 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 73.87 |
| | 11/18/02 | 0 | Walker,Vernette *KENNEDY RH* | 180 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 73.87 |
| | 11/21/02 | 0 | Walker,Vernette | 203 Cancel | Cancelled Appt | | 724.2 | 1.00 | 0.00 |
| | 11/27/02 | 0 | Walker,Vernette | 8 R8 | Rescheduled | | 724.2 | 1.00 | 0.00 |
| | 12/11/02 | 0 | Walker,Vernette *SEAB RH* | 8 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 109.15 |
| | 01/07/03 | | Check Payment | 24814908 | Ins #1286 | | | | -73.87 |
| | 01/07/03 | | Check Payment | 24814935 | Ins #1286 | 01/07/03 | | | -109.15 |
| | 01/07/03 | | Check Payment | 24814926 | Ins #1286 | 01/07/03 | | | -73.87 |
| | 01/07/03 | | Check Payment | 24814944 | Ins #1286 | 01/07/03 | | | -73.87 |
| | 01/21/03 | | Check Payment | 25266132 | Ins #1286 | 01/21/03 | | | -109.15 |
| | 01/21/03 | | Check Payment | 25266141 | Ins #1286 | 01/21/03 | | | -1265.93 |
| | 01/21/03 | | Adjustment (16) | 25266141 | Preferred Provider | 01/21/03 | | | -10.00 |
| | 01/21/03 | | Adjustment (16) | 25266141 | Preferred Provider | 01/21/03 | | | -20.10 |
| | 02/05/03 | 0 | Walker,Vernette *SEAB RH* | 8 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 03/19/03 | | Check Payment | 27055404 | Ins #1286 | 03/18/03 | | | -114.00 |
| | 04/15/03 | | Check Payment | 27924849 | Ins #1286 | 04/15/03 | | | -109.15 |
| | 04/30/03 | 0 | Walker,Vernette *SEAB RH* | 8 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 05/08/03 | 0 | Walker,Vernette | 184 NS | No Show | | 723.1 | 1.00 | 0.00 |
| | 05/08/03 | 0 | Walker,Vernette *WARD RH* | 203 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |

7K = 70ULK   GW = gLasgow   SfH = St. Francis

| | 05/15/03 | 0 | Walker,Vernette | *Ward* | 203 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 05/29/03 | 0 | Walker,Vernette | *RH* | 203 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 06/05/03 | 0 | Walker,Vernette | | 203 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 06/10/03 | | Check Payment | | 29586805 | Ins #1286 | 06/10/03 | | | -114.00 |

07/21/06

PATIENT FINANCIAL HISTORY BY DT SERVICE
REHABILITATION ASSOCIATES, P.A.

Page 10

| Acct | Date | Dep # | Name | | Dr# | Procedure | Ref Dt | Diag | Units | Amount |
|------|------|-------|------|---|-----|-----------|--------|------|-------|--------|
| | 06/11/03 | 0 | Walker,Vernette *Stepp RH* | 8 | 99212 | Est Pt Brief OV | | 723.1 | 1.00 | 86.00 |
| | 06/12/03 | 0 | Walker,Vernette | | 203 NS | No Show | | 723.1 | 1.00 | 0.00 |
| | 06/19/03 | 0 | Walker,Vernette *Ward RH* | 203 | 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 07/16/03 | 0 | Walker,Vernette *Stepp RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 07/22/03 | | Check Payment | | 30814839 | Ins #1286 | 07/22/03 | | | -77.40 |
| | 07/22/03 | | Adjustment (16) | | 30814839 | Preferred Provider | 07/22/03 | | | -8.60 |
| | 07/22/03 | | Check Payment | | 30814821 | Ins #1286 | 07/22/03 | | | -54.00 |
| | 07/22/03 | | Adjustment (16) | | 30814821 | Preferred Provider | 07/22/03 | | | -6.00 |
| | 07/31/03 | 0 | Walker,Vernette *Glassman* | 89 | 95860 | EMG/One Extremity | | 782.0 | 1.00 | 344.00 |
| | 07/31/03 | 0 | Walker,Vernette *RH* | 17 | 95900 | NCV/Motor | | 723.1 | 2.00 | 174.00 |
| | 07/31/03 | 0 | Walker,Vernette | 17 | 95904 | NCV/Sensory | | 723.1 | 3.00 | 255.00 |
| | 08/20/03 | 0 | Walker,Vernette *Stepp* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 08/25/03 | | Check Payment | | 31734135 | Ins #1135 | 08/25/03 | | | -180.00 |
| | 08/26/03 | | Check Payment | | 31839813 | Ins #1135 | 08/26/03 | | | -114.00 |
| | 09/02/03 | | Check Payment | | 32049288 | Ins #1286 | 09/02/03 | | | -773.00 |
| | 09/23/03 | | Check Payment | | 32595426 | Ins #1286 | 09/23/03 | | | -114.00 |
| | 10/15/03 | 0 | Walker,Vernette *Stepp RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 10/20/03 | 0 | Walker,Vernette | 180 | NS | No Show | | 723.1 | 1.00 | 0.00 |
| | 10/23/03 | 0 | Walker,Vernette *Ward RH* | 203 | 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 10/27/03 | 0 | Walker,Vernette *Kennedy RH* | 180 | 98940 | Chiro. manip. One-tw | | 739.2 | 1.00 | 60.00 |
| | 10/30/03 | 0 | Walker,Vernette | | 203 Cancel | Cancelled Appt | | 739.2 | 1.00 | 0.00 |
| | 11/06/03 | 0 | Walker,Vernette *Ward RH* | 203 | 95940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 11/10/03 | 0 | Walker,Vernette *Kennedy RH* | 180 | 98940 | Chiro. manip. One-tw | | 724.1 | 1.00 | 60.00 |
| | 11/10/03 | 0 | Walker,Vernette *RH* | 180 | 97010 | Phys Med;1 or more a | | 724.1 | 1.00 | 13.00 |
| | 11/12/03 | 0 | Walker,Vernette *Stepp RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 114.00 |
| | 11/13/03 | 0 | Walker,Vernette *Ward RH* | 203 | 98940 | Chiro. manip. One-tw | | 723.1 | 1.00 | 60.00 |
| | 11/18/03 | | Check Payment | | 34221654 | Ins #1286 | 11/18/03 | | | -54.00 |
| | 11/18/03 | | Adjustment (16) | | | Preferred Provider | 11/18/03 | | | -6.00 |
| | 12/09/03 | | Check Payment | | 34777926 | Ins #1286 | 12/09/03 | | | -120.00 |
| | 12/16/03 | | Check Payment | | 34987977 | Ins #1286 | 12/16/03 | | | -139.00 |
| | 12/16/03 | | Check Payment | | 34987986 | Ins #1286 | 12/16/03 | | | -114.00 |
| | 12/23/03 | | Check Payment | | 35200395 | Ins #1286 | 12/23/03 | | | -114.00 |
| | 01/21/04 | 0 | Walker,Vernette *Stepp RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 03/09/04 | | Check Payment | | 37364841 | Ins #1286 | 03/09/04 | | | -118.00 |
| | 03/11/04 | 0 | Walker,Vernette | 12 | RS | Rescheduled | | 723.1 | 1.00 | 0.00 |
| | 03/17/04 | 0 | Walker,Vernette *Stepperg RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 04/14/04 | 0 | Walker,Vernette | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 118.00 |
| | 04/27/04 | | Check Payment | | 38824704 | Ins #1286 | 04/27/04 | | | -118.00 |
| | 05/05/04 | 0 | Walker,Vernette *Stepp RH* | 8 | 99214 | Est Pt Extended OV | | 723.1 | 1.00 | 214.00 |
| | 05/07/04 | 0 | Walker,Vernette *Glassman* | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 20.00 |
| | 05/07/04 | 0 | Walker,Vernette *RH* | 43 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 38.00 |
| | 05/07/04 | 0 | Walker,Vernette | 43 | 97150-52 | Therapeutic Procedur | | 724.2 | 1.00 | 56.00 |
| | 05/07/04 | 0 | Walker,Vernette | 43 | 97535 | Home mangmt/adaptive | | 724.2 | 1.00 | 31.00 |
| | 05/07/04 | 0 | Walker,Vernette | 43 | 99070 | Rx Supplies | | 724.2 | 1.00 | 12.00 |
| | 05/07/04 | 0 | Walker,Vernette *Ward RH* | 203 | 99212 | Est Pt Brief OV | | 724.2 | 1.00 | 90.00 |
| | 05/10/04 | 0 | Walker,Vernette *Kennedy RH* | 180 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 80.00 |
| | 05/10/04 | 0 | Walker,Vernette *Rokst RH* | 89 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 20.00 |
| | 05/10/04 | 0 | Walker,Vernette | 89 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 38.00 |
| | 05/10/04 | 0 | Walker,Vernette | 89 | 97150-52 | Therapeutic Procedur | | 724.2 | 1.00 | 56.00 |
| | 05/11/04 | 0 | Walker,Vernette *Kennedy RH* | 180 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 80.00 |
| | 05/11/04 | 0 | Walker,Vernette *Mack RH* | 29 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |

06-138 MPT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 05/11/04 | 0 | Walker,Vernette *MacH* | 29 | 97014 | Elec. Stim; Tens; in | 723.1 | 1.00 | 38.00 |
| 05/11/04 | 0 | Walker,Vernette *RH* | 29 | 97150-52 | Therapeutic Procedur | 723.1 | 1.00 | 56.00 |
| 05/12/04 | 0 | Walker,Vernette *KeDDeDy RH* | 180 | 98941 | Chiro. manip. three- | 723.1 | 1.00 | 80.00 |
| 05/12/04 | 0 | Walker,Vernette *SterD* | 92 | 97010 | Phys Med;1 or more a | 723.1 | 1.00 | 20.00 |

07/21/06        PATIENT FINANCIAL HISTORY BY DT SERVICE       Page  11
REHABILITATION ASSOCIATES, P.A.

| Acct Date | Dep # | Name | Dr# | Procedure | Ref Dt | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|
| 05/12/04 | 0 | Walker,Vernette *SterD* | 92 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/12/04 | 0 | Walker,Vernette *RH* | 92 | 97150-52 | Therapeutic Procedur | | 723.1 | 1.00 | 56.00 |
| 05/13/04 | 0 | Walker,Vernette *BeweCk* | 22 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/13/04 | 0 | Walker,Vernette *RH* | 22 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/13/04 | 0 | Walker,Vernette | 22 | 97150-52 | Therapeutic Procedur | | 723.1 | 1.00 | 56.00 |
| 05/13/04 | 0 | Walker,Vernette *KeDDeDy RH* | 180 | 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 80.00 |
| 05/14/04 | 0 | Walker,Vernette *GlassmaD* | 43 | 97010 | Phys Med;1 or more a | | 724.2 | 1.00 | 20.00 |
| 05/14/04 | 0 | Walker,Vernette *RH* | 43 | 97014 | Elec. Stim; Tens; in | | 724.2 | 1.00 | 38.00 |
| 05/14/04 | 0 | Walker,Vernette | 41 | 97150 | Treat 1 area; thera | | 724.2 | 1.00 | 98.00 |
| 05/18/04 | 0 | Walker,Vernette *KeDDeDy RH* | 180 | 98941 | Chiro. manip. three- | | 784.0 | 1.00 | 80.00 |
| 05/18/04 | 0 | Walker,Vernette *mack* | 29 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/18/04 | 0 | Walker,Vernette *RH* | 29 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/18/04 | 0 | Walker,Vernette | 29 | 97150 | Treat 1 area; thera | | 723.1 | 1.00 | 98.00 |
| 05/19/04 | 0 | Walker,Vernette *KeDDeDy RH* | 180 | 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 80.00 |
| 05/19/04 | 0 | Walker,Vernette *SterD* | 92 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/19/04 | 0 | Walker,Vernette *RH* | 92 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/19/04 | 0 | Walker,Vernette | 92 | 97150 | Treat 1 area; thera | | 723.1 | 1.00 | 98.00 |
| 05/20/04 | 0 | Walker,Vernette *BeweCk* | 22 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/20/04 | 0 | Walker,Vernette *RH* | 22 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/20/04 | 0 | Walker,Vernette | 22 | 97150 | Treat 1 area; thera | | 723.1 | 1.00 | 98.00 |
| 05/20/04 | 0 | Walker,Vernette *KeDDeDy RH* | 80 | 98941 | Chiro. manip. three- | | 723.1 | 1.00 | 80.00 |
| 05/24/04 | | Check Payment | | 12682357 | Ins #5 | 05/24/04 | | | -157.00 |
| 05/25/04 | 0 | Walker,Vernette *MacK* | 29 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/25/04 | 0 | Walker,Vernette *RH* | 29 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/25/04 | 0 | Walker,Vernette | 29 | 97150-52 | Therapeutic Procedur | | 723.1 | 1.00 | 56.00 |
| 05/25/04 | 0 | Walker,Vernette *KeDDeDy RH* | 180 | 98941 | Chiro. manip. three- | | 724.2 | 1.00 | 80.00 |
| 05/26/04 | 0 | Walker,Vernette *SterD* | 92 | 97010 | Phys Med;1 or more a | | 723.1 | 1.00 | 20.00 |
| 05/26/04 | 0 | Walker,Vernette *RH* | 92 | 97014 | Elec. Stim; Tens; in | | 723.1 | 1.00 | 38.00 |
| 05/26/04 | 0 | Walker,Vernette | 92 | 97150 | Treat 1 area; thera | | 723.1 | 1.00 | 98.00 |
| 05/26/04 | 0 | Walker,Vernette *SterD RH* | | 99213 | Est Pt Intermediate | | 847.0 | 1.00 | 118.00 |
| 06/01/04 | 0 | Walker,Vernette *worD DV* | 220 | 90801 | Psychological Interv | | 307.89 | 1.00 | 227.00 |
| 06/01/04 | | Check Payment | | 121233392 | Ins #5 | 06/01/04 | | | -80.00 |
| 06/01/04 | | Check Payment | | 33851199 | Ins #1286 | 06/01/04 | | | -118.00 |
| 06/06/04 | 0 | Walker,Vernette *worD DV* | 220 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 06/15/04 | 0 | Walker,Vernette *DV* | 220 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 06/21/04 | 0 | Walker,Vernette *FisheR OM* | 86 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 06/23/04 | 0 | Walker,Vernette *SterD RH* | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 118.00 |
| 06/28/04 | 0 | Walker,Vernette *FisheR OM* | 86 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 07/02/04 | 0 | Walker,Vernette *CHiaNG OM* | 800 | 59214-25 | Est. Pts. | | 723.1 | 1.00 | 386.00 |
| 07/08/04 | 0 | Walker,Vernette | 302 | Cancel | Cancelled Appt | | 723.1 | 1.00 | 0.00 |
| 07/09/04 | 0 | Walker,Vernette *FisheR OM* | 86 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 07/14/04 | 0 | Walker,Vernette *SterD RH* | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| 07/15/04 | 0 | Walker,Vernette *FisheR OM* | 86 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 07/19/04 | 0 | Walker,Vernette *CHiaNG GW* | 302 | 62310 | Inj. Single Cerv/Tho | | 723.1 | 1.00 | 1243.00 |
| 07/19/04 | 0 | Walker,Vernette *GW* | 302 | 76005-26 | Fluoro guidance need | | 723.1 | 1.00 | 104.00 |
| 07/19/04 | 0 | Walker,Vernette | 302 | 99141 | Conscious Sedation | | 723.1 | 1.00 | 209.00 |
| 07/22/04 | 0 | Walker,Vernette *FisheR OM* | 86 | 90804 | Individual Psychothe | | 307.89 | 1.00 | 83.00 |
| 07/28/04 | | Check Payment | | 121775221 | Ins #5 | 07/28/04 | | | -249.00 |
| 07/28/04 | | Check Payment | | 121775203 | Ins #5 | 07/28/04 | | | -118.00 |
| 07/28/04 | | Check Payment | | 121775149 | Ins #5 | 07/28/04 | | | -214.00 |
| 07/28/04 | | Check Payment | | 121775148 | Ins #5 | 07/28/04 | | | -80.00 |

GW = GLASGOW      DV = DOVER ?      OM = omega

#06-138-MPT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 07/28/04 | | Check Payment | 121775146 | Ins #5 | 07/28/04 | | | -270.00 |
| 07/28/04 | | Check Payment | 121775117 | Ins #5 | 07/28/04 | | | -228.00 |
| 07/28/04 | | Check Payment | 121775119 | Ins #5 | 07/28/04 | | | -80.00 |
| 07/28/04 | | Check Payment | 121775121 | Ins #5 | 07/28/04 | | | -60.00 |

07/21/06                    PATIENT FINANCIAL HISTORY BY DT SERVICE                    Page 12
                              REHABILITATION ASSOCIATES, P.A.

| Acct | Date | Dep # | Name | Dr# | Procedure | | Ref Dt | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | 07/28/04 | | Check Payment | 121775125 | Ins #5 | | 07/28/04 | | | -156.00 |
| | 07/28/04 | | Check Payment | 121775124 | Ins #5 | | 07/28/04 | | | -80.00 |
| | 07/28/04 | | Check Payment | 121775131 | Ins #5 | | 07/28/04 | | | -384.00 |
| | 07/28/04 | | Check Payment | 121775337 | Ins #5 | | 07/28/04 | | | -160.00 |
| | 07/28/04 | | Check Payment | 121775139 | Ins #5 | | 07/28/04 | | | -312.00 |
| | 07/29/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 08/03/04 | | Check Payment | 121776387 | Ins #5 | | 08/03/04 | | | -201.00 |
| | 08/05/04 | | Check Payment | 121777361 | Ins #5 | | 08/05/04 | | | -388.00 |
| | 08/05/04 | 0 | Walker,Vernette *CHIQ DQ* 302 | 62310 | Inj. Single Cerv/Tho | | | 723.1 | 1.00 | 1243.00 |
| | 08/05/04 | 0 | Walker,Vernette | 302 | 76005-26 | Fluoro guidance need | | | 723.1 | 1.00 | 104.00 |
| | 08/05/04 | 0 | Walker,Vernette *GW* | 302 | 99141 | Conscious Sedation | | | 723.1 | 1.00 | 209.00 |
| | 08/09/04 | | Check Payment | 121778003 | Ins #5 | | 08/09/04 | | | -83.00 |
| | 08/09/04 | 0 | Walker,Vernette *Fisher* 88 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 08/10/04 | | Check Payment | 121778546 | Ins #5 | | 08/10/04 | | | -1556.00 |
| | 08/11/04 | 0 | Walker,Vernette *STERR RH* 8 | 99213 | Est Pt Intermediate | | | 307.89 | 1.00 | 118.00 |
| | 08/17/04 | 0 | Walker,Vernette *WARD DV* 220 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 08/17/04 | 0 | Walker,Vernette *CHIQ FK* 299 | 99213 | Est Pt Intermediate | | | 724.2 | 1.00 | 118.00 |
| | 08/20/04 | | Check Payment | 121781296 | Ins #5 | | 08/20/04 | | | -166.00 |
| | 08/28/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 08/30/04 | 0 | Walker,Vernette *CHIQ DQ* 301 | 62311 | Inj. Sing Lumb/Sacra | | | 724.2 | 1.00 | 754.00 |
| | 08/30/04 | 0 | Walker,Vernette *CHIQ* 301 | 76005-26 | Fluoro guidance need | | | 724.2 | 1.00 | 104.00 |
| | 08/30/04 | 0 | Walker,Vernette *GW* 301 | 99141 | Conscious Sedation | | | 724.2 | 1.00 | 209.00 |
| | 09/02/04 | 0 | Walker,Vernette | 86 | NS | No Show → *Fisher to 9/30/04* | | | 307.89 | 1.00 | 0.00 |
| | 09/03/04 | | Check Payment | 121784887 | Ins #5 | | 08/03/04 | | | -1639.00 |
| | 09/03/04 | 0 | Walker,Vernette *STERR OM* 2 | 99213 | Est Pt Intermediate | | | 724.2 | 1.00 | 118.00 |
| | 09/03/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 09/07/04 | 0 | Walker,Vernette | 2 | Cancel | Cancelled Appt | | | 307.89 | 1.00 | 0.00 |
| | 09/09/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 09/13/04 | | Check Payment | 121606821 | Ins #5 | | 09/13/04 | | | -201.00 |
| | 09/15/04 | 0 | Walker,Vernette *STERR RH* 8 | 95860 | EMG/One Extremity | | | 724.2 | 1.00 | 358.00 |
| | 09/15/04 | 0 | Walker,Vernette | 8 | 95904 | NCV/Sensory | | | 724.2 | 1.00 | 88.00 |
| | 09/15/04 | 0 | Walker,Vernette | 8 | 99070 | Dx Supplies | | | 724.2 | 1.00 | 12.00 |
| | 09/15/04 | 0 | Walker,Vernette | 8 | 95900 | NCV/Motor | | | 307.89 | 2.00 | 180.00 |
| | 09/15/04 | 0 | Walker,Vernette | 8 | 95934 | H-reflex Study | | | 307.89 | 2.00 | 182.00 |
| | 09/22/04 | | Check Payment | 121603467 | Ins #5 | | 09/22/04 | | | -83.00 |
| | 09/23/04 | 0 | Walker,Vernette *CHIQ DQ* 302 | 62311 | Inj. Sing Lumb/Sacra | | | 724.2 | 1.00 | 754.00 |
| | 09/23/04 | 0 | Walker,Vernette *GW* 302 | 76005-26 | Fluoro guidance need | | | 724.2 | 1.00 | 104.00 |
| | 09/23/04 | 0 | Walker,Vernette | 302 | 99141 | Conscious Sedation | | | 724.2 | 1.00 | 209.00 |
| | 09/27/04 | 0 | Walker,Vernette *Fisher* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 09/29/04 | | Check Payment | 121536129 | Ins #5 | | 09/29/04 | | | -201.00 |
| | 10/04/04 | 0 | Walker,Vernette | 86 | Cancel | Cancelled Appt | | | 307.89 | 1.00 | 0.00 |
| | 10/05/04 | | Check Payment | 121537831 | Ins #5 | | 10/05/04 | | | -83.00 |
| | 10/06/04 | 0 | Walker,Vernette *STERR RH* 8 | 99213 | Est Pt Intermediate | | | 723.1 | 1.00 | 118.00 |
| | 10/08/04 | 0 | Walker,Vernette *CHIQ DQ* 300 | 99213 | Est Pt Intermediate | | | 847.0 | 1.00 | 118.00 |
| | 10/08/04 | 0 | Walker,Vernette *GW* | 300 | 20550 | Trigger Point Inj. | | | 723.1 | 3.00 | 627.00 |
| | 10/08/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 10/12/04 | 0 | Walker,Vernette | 299 | Cancel | Cancelled Appt | | | 307.89 | 1.00 | 0.00 |
| | 10/14/04 | | Check Payment | 121505156 | Ins #5 | | 10/14/04 | | | -1067.00 |
| | 10/14/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |
| | 10/21/04 | 0 | Walker,Vernette | 302 | Cancel | Cancelled Appt | | | 307.89 | 1.00 | 0.00 |
| | 10/25/04 | 0 | Walker,Vernette *Fisher OM* 86 | 90804 | Individual Psychothe | | | 307.89 | 1.00 | 83.00 |

7K = 700LK

| 11/08/04 | 0 | Walker,Vernette Fisher OM | 86 | 90804 | Individual Psychothe | | 107.89 | 1.00 | 81.00 |
|---|---|---|---|---|---|---|---|---|---|
| 11/10/04 | 0 | Walker,Vernette Stern RH | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| 11/15/04 | 0 | Walker,Vernette | | 302 | Cancel | Cancelled Appt | | 723.1 | 1.00 | 0.00 |
| 11/23/04 | 0 | Walker,Vernette | | 299 | RS | Rescheduled | | 723.1 | 1.00 | 0.00 |

07/21/06                          PATIENT FINANCIAL HISTORY BY DT SERVICE                         Page  13

REHABILITATION ASSOCIATES, P.A.

| Acct | Date | Dep # | Name | Dr# | Procedure | | Ref Dt | Diag | Units | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | 11/30/04 | 0 | Walker,Vernette Othaisa FK | 299 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 12/08/04 | 0 | Walker,Vernette Stern RH | 8 | 99213 | Est Pt Intermediate | | 724.2 | 1.00 | 118.00 |
| | 01/05/05 | 0 | Walker,Vernette | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 01/25/05 | 0 | Walker,Vernette Fisher FK | 220 | 90804 | Individual Psychothe | | 107.89 | 1.00 | 83.00 |
| | 03/02/05 | 0 | Walker,Vernette Stern RH | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 03/09/05 | 0 | Walker,Vernette | 8 | Cancel | Cancelled Appt | | 723.1 | 1.00 | 0.00 |
| | 03/23/05 | 0 | Walker,Vernette Stern | 8 | 99213 | Est Pt Intermediate | | 723.1 | 1.00 | 118.00 |
| | 04/27/05 | 0 | Walker,Vernette | 8 | RS | Rescheduled | | 723.1 | 1.00 | 0.00 |
| | 05/04/05 | 0 | Walker,Vernette | 8 | Cancel | Cancelled Appt | | 723.1 | 1.00 | 0.00 |

TOTALS FOR ACCOUNT 25408    PAYMENTS :    27926.03    ADJUSTS :    153.10    CHARGES :    32955.16    436.00    5542.86
                            REFUNDS:        -666.83

                                          27259.20                  153.10                32955.16              5542.86



#06 138 mpT

**GANNETT**

Gannett Co., Inc.
7950 Jones Branch Drive
McLean, VA 22107-0720

**Cynthia Hale Coffelt**
*Counsel/EEO and Labor Relations*

**Office:** 703.854.6937
**Fax:** 703.854.2029
**Email:** ccoffelt@gannett.com

December 1, 2004

Ms. Julie Cutler
Supervisor/Administrator
Office of Labor Law Enforcement
State of Delaware Department of Labor
4425 North Market Street
Wilmington, DE  19802

      Re:    Vernette Walker v. The News Journal
            <u>Case Number:  04100780/17CA500028</u>

Dear Ms. Cutler:

I represent the Respondent, The News Journal, in the above-referenced matter.

Enclosed for filing please find a Verified Answer, filed on behalf of Respondent.  A notarized oath is also attached.

A copy of this correspondence, including the Verified Answer and all attachments, has been sent via certified mail to Charging Party.  A Certificate of Mailing is attached.

If you have any questions, please do not hesitate to contact me directly at 703/854-6937.

              Very truly yours,

              Cynthia Hale Coffelt

Enclosures

Cc:    Charging Party Vernette Walker
       Ann Hines/The News Journal



STATE OF DELAWARE
DEPARTMENT OF LABOR
OFFICE OF LABOR LAW ENFORCEMENT

Vernette Walker,
        Charging Party

vs.                                             Case Number: 04100780
                                                EEOC Number: 17CA500028

The News Journal,
        Respondent

## **VERIFIED ANSWER**

Charging Party alleges she was subjected to discrimination on the basis of a disability in violation of the Americans with Disabilities Act and the Delaware Handicapped Persons Employment Protections Act. The Company denies the allegation, and a copy of the Company's Equal Employment Opportunity policy is attached. (See Attachment 1)

Respondent (or the "Company") offers the following Answers to the particulars set forth in the Charge of Discrimination filed by Charging Party in the above-styled case:

Charging Party was hired by the Company as a part-time telephone sales representative on December 7, 1987. She was subsequently promoted to the position of credit clerk, the position she held at the time her employment was terminated for failure to return to work following Family and Medical Leave (FMLA). A chronology of Charging Party's employment history is attached, as well as a copy of her position description. (See Attachments 2 & 3) Charging Party's termination documentation, denoting that her position was eliminated effective August 30, 2004 is also attached. (See Attachment 4)



Charging Party was involved in a motor vehicle accident on April 27, 2004, off Company property, when she was returning from lunch. The Company was notified that Charging Party had been taken to the emergency room as a result of the accident. Three days later, Ann Hines, Benefits Manager, sent Charging Party notification of her benefits entitlement under the Company's Income Protection Plan (Short-term Disability benefits) and under the Company's FMLA policy. A copy of the letter Ms. Hines sent Charging Party, as well as copies of the Income Protection Plan and FMLA policy, is



attached. (See Attachment 5) It should be noted that the FMLA policy clearly stipulates that employees are eligible for up to 12 weeks of benefits. These forms are sent in the normal course of business to employees to enable the Company to obtain information regarding an employee's medical status.

On May 13, 2004, Ms. Hines sent Charging Party a claim for disability benefits form. A copy of the letter, and completed claim form, is attached. (See Attachment 6) Charging Party was determined to be completely disabled and "indeterminate" was indicated as the time when she would be able to return to work.

On July 1, 2004, Ms. Hines sent Charging Party two letters. The first letter included a certification of health care provider form that Charging Party was requested to submit. A copy of the letter and the completed form are attached. (See Attachment 7) Again, Charging Party's doctor stated her return to work date was "indeterminate." The second letter advised Charging Party that her 12-week entitlement to FMLA benefits would end July 20, 2004. A copy of the letter is attached. (See Attachment 8) Charging Party was specifically advised, *"If you remain unable to return to work as of July 20, 2004, business necessity requires us to fill your position as Credit Clerk."*

By the middle of August, Charging Party had still not returned to work. In an effort to gauge whether she could, in fact, return to work, the Company arranged for the Concentra Medical Center to perform an independent medical examination. It was noted that Charging Party's position was a "light duty" position, and the doctor was advised the Company could accommodate physical restrictions/limitations accordingly. (See Attachment 9) The return-to-work examination released Charging Party to return to work effective that date, August 23, 2004, without restrictions. A copy of the examination report is attached. (See Attachment 10) 

Based on the examination report, Ms. Hines contacted Charging Party on August 24, 2004, to determine when and/or whether she would be returning to work. Charging Party advised Ms. Hines she could not return to work due to "pending doctor's visits," although the examination report clearly stated Charging Party could, in fact, return to work. By August 30, 2004, Charging Party still had not returned to work, though she had been released to do so for a full week. As a result, Ms. Hines sent her notification that her FMLA benefits had been exhausted July 20, 2004, and based on her failure to return to work by August 30, 2004, her position had been eliminated based on business needs. Charging Party was advised that when she did decide to return to work, available openings would be assessed to determine whether a position for which she was qualified was available. A copy of the letter is attached. (See Attachment 11) 

Charging Party now alleges she has been unfairly treated, and subjected to discrimination on the basis of a disability. Further, she claims Ms. Hines harassed her with "frequent telephone calls" and requests for medical documentation. These allegations are completely false.

The Americans with Disabilities Act (ADA) protects qualified disabled individuals who can perform the essential functions of their job with or without reasonable accommodation. It is the Company's position that Charging Party has failed to establish that she is, in fact, a qualified disabled individual

2



under the ADA. To have a disability under the ADA, an employee must show an impairment that restricts him [or her] from activities of central importance to most people's daily lives. *See Toyota Motor Mfg. Ky. Inc. v. Williams, 534 U.S. 184, 12 AD Cases 993 (2002).* If that threshold is met, the Company must make reasonable accommodation if the same would enable the employee to perform the essential functions of the job. Charging Party has made no showing that she has a disability that restricts her from activities that are of central importance to most people's daily lives. Therefore, she is not a qualified disabled individual under the law. Further, Charging Party never requested an accommodation of any kind, reasonable or otherwise, in an effort to return to work. She was cleared to return to work, and she simply failed to do so. Based on the foregoing, the Company would posit, similarly, that Charging Party has failed to make a showing that she is an individual with a handicap entitled to protection under Delaware's Handicapped Persons Employment Protections Act. Again, she was cleared to return to work without restriction and she failed to do so.



The Company kept Charging Party's position open for her longer than it was required to do so under the precepts of FMLA. In fact, on or about the time Charging Party was sent for the independent medical examination, the Company decided to reduce staff in the finance department. Initially, a temporary clerk position was targeted for elimination. However, when Charging Party had failed to return to work by August 30, 2004, the Company decided to eliminate the credit clerk position that Charging Party had held instead.



Charging Party's allegation that Ms. Hines harassed her is false. Statements from both Ms. Hines and Charging Party's immediate supervisor, Shelly Rumpf, are attached. (See Attachments 12 & 13) Ms. Hines states that all phone calls made to Charging Party were within the scope of her position as Benefits Manager. (Refer to Attachment 12) Ms. Rumpf states Charging Party was her "strongest employee" and highly thought of in her position. (Refer to Attachment 13) The Company is not in the habit of terminating the employment of its strongest employees. Had Charging Party requested accommodation for a disability, the Company would have gone out of its way to grant such an accommodation. However, Charging Party never requested an accommodation of any kind, for a disability of any kind, nor did an accommodation appear necessary to return Charging Party to work since the return-to-work examination form stated she could return <u>without restrictions</u>.



The Company would like to reiterate that Charging Party should contact the Company when she is ready to return to work, so that an assessment of available positions may be conducted, to see if there are any openings for which she is qualified.

It appears clear that this is not, in fact, a disability case at all. This is a case regarding an employee's failure to return to work when her 12 weeks of FMLA job reinstatement entitlement had been exhausted. Charging Party was given more than an additional month to return to work before her position was eliminated due to business needs. The Company has treated Charging Party more than fairly at all times. There is simply no evidence to suggest Charging Party has been subjected to any form of discrimination or harassment, and the Company should be without legal culpability.



3

#06 138 mPJ

Based on the foregoing, and the complete lack of evidence to suggest Charging Party's employment was terminated on the basis of any discriminatory factors, and having fully answered all counts of this Charge, Respondent respectfully moves that this case be dismissed in its entirety.

Respectfully submitted,

Cynthia Hale Coffelt
Counsel/EEO & Labor Relations
Gannett Co., Inc.
7950 Jones Branch Drive
McLean, VA  22107

December 1, 2004

4

#06-138 mp1

## OATH

Commonwealth of Virginia
County of Fairfax

Personally appeared <u>Ms. Cynthia Hale Coffelt</u> on <u>December 1, 2004</u> and made oath to the truth of the matter contained in the foregoing Verified Answer before me.

Cynthia Hale Coffelt

Notary Public

My Comm. Exps. 1/30, 2007

5

#66 138 mp7

RESPONDENT'S CERTIFICATE OF MAILING FORM

Case No.
04100780/17CA500028

I hereby certify that I served a copy of the enclosed Verified Answer, with accompanying
attachments, by certified U.S. Mail on the Charging Party named below:

Ms. Vernette Walker
29 Richard Road
New Castle, DE  19720

_____
Signature

12-01-04
_____
Date

6

#06 138 mDT    **ATTACHMENT 1**

#06 138 mPT

advertised by The News Journal. Employees who participate in such contests may be subject to discipline up to and including dismissal.

### AFFIRMATIVE ACTION GUIDE
### FOR EQUAL EMPLOYMENT OPPORTUNITY

The News Journal Company is committed to equal opportunity for all. We are committed to building a company that reflects the true diversity of our community.    News Journal employees are hired, promoted and rewarded on the basis of talent, performance and dedication. We cannot afford to deprive the company of capable people and will not allow discrimination based on race, creed, color, religion, national origin, sex, age, sexual orientation, marital status, ancestry, disability or veteran status.

To ensure that we accomplish our goals, we have programs - called Partners In Progress - in place. Our Publisher is responsible for administration of these programs. The News Journal management, as part of our management-by-objective program, is pledged to accomplish equal opportunity progress.

A company in the information business cannot continue to be successful if it ignores or neglects any segment of its audiences. By encouraging and expecting a mix of opinions, backgrounds, sexes, races and ideas, The News Journal improves results. Workplace diversity is strength and it makes sense. It broadens our reach and it puts our company in a strong position for the competitive years ahead.

For The News Journal and for Gannett, equal opportunity is not just the right thing to do - it is the smart thing to do if we are to be as successful in the future as we have been in the past.

# 06  138 mPT

**ATTACHMENT 2**

#06 138 MPT

**VERNETTE WALKER**
**EMPLOYMENT HISTORY**

❖ December 7, 1987 – Hired part-time as a Voluntary Phone Sales Rep @$$8.00 per hour.

❖ June 13, 1988 – Hired as a full-time Input/Outside Sales Rep @$275.00 per week.

❖ December , 1992 – Merit Increase to $373 per week as Classified Contract Sales Rep.

❖ February, 1994 – Merrit increase to $385 per week as Classified Contract Sales Rep.

❖ December 5, 1994 – Merit increase to $399 per week as Classified Contract Sales Rep.

❖ December 4, 1995 – Merit increase to $411 per week as Classified Contract Sales Rep

❖ December 2, 1996 – Merit increase to $431 per week as Classified Contract Sales Rep

❖ December 1, 1997 – Merit increase to $447 per week as Classified Contract Sales Rep.

❖ November 30, 1998  – Merit increase to $462 per week as Classified Contract Sales Rep.

❖ November 29, 1999 – Merit increase to $481 per week as Classified Contract Sales Rep.

❖ February 12, 2001 – Transferred to Finance Department to fill Credit Assistant Position

❖ February 4, 2002 – Merit increase to $588.46 per week as Credit Clerk.

❖ February 3, 2003 – Merit increase to $606.12 per week as Credit Clerk,

❖ August 30, 2004 – Job eliminated.

Ach
11/05/04

#66 138 mpT

**ATTACHMENT 3**

#06138 MPT    Attmnt 3

**⊙ GANNETT**    **POSITION DESCRIPTION**

**MP/5**    **DATE:** 8/94

Job Title: Credit Representative

Incumbent: Cheryl Blackiston

Department: Accounting

Supervisor's Name/Title: Credit Manager

Employment Status:
Regular ☒
Temporary ☐
Full-Time ☒
Part-Time ☐
Intern ☐
Reg. Hours Worked: 35.0/wk.
Exempt ☒    Non-Exempt ☐

A position description is written to describe work currently organized and performed by a fully qualified employee (who possesses knowledge, skills and experience required by the position). One should be on file for each regular full- and part-time position. Attach a copy of the last position description prepared for this position.

When was the last time this position description was updated? Date: 7/94
What is the overall purpose and objective of this position (why does the position exist)?____
Collection of retail display advertising accounts receivable.

List in order of importance the major responsibilities of the job, and estimate the percentage of time spent on each responsibility (the main function of the job may or may not be the one where the most time is spent).

(90%)    1. Collection of retail display Advertising Accounts receivable    60 % (
        aged greater than 30 days.
(50%)    2. Interaction with retail sales people to resolve billing discrepancies 20 %
        and exchange information
(50%)    3. Follow up collection calls with correspondence to customers    10 %
        supply tear sheets and duplicate invoices.
(60%)    4. Researches short payments and unidentified check    5 %
        remittances.
        5. Mails 30 day statements and restatement stop credit    5 %
        letters, assists in monthly billing mailing
        6. _____    __%

        7. Able to react to change productively and handle other essential tasks
        as assigned.

                                            **TOTAL    100%**

Is this position closely, moderately, or minimally supervised? Moderately
Please explain: Individual Contributor - refers unusual issues to the
Credit Manager. Works under general guide lines.

Does this position have supervisory responsibility (i.e., responsible for hiring, firing, performance appraisals, etc.)? Yes ___ No X  If yes, list the number and title for positions that directly or indirectly report to this position (i.e., three secretaries, four programmers, etc.): _____
_____
_____

Does this position have access to confidential information? Yes ✓ No ___ If yes, please explain: Trial Balances and customer files, Credit Applications and Customer Financial Statements.

Does this position have access to or handle company funds? Yes ✓ No ___ If yes, please explain: Customer Check Remittances
_____

Is it important to this position that the incumbent be able to communicate fluently in English?
Yes ✓ No ___ If yes, please explain: High volume telephone contact with customers and correspondence in writing.

What kind of work experience (including length of time), training, and/or level of education is necessary for this position? High School diploma with emphasis on Good Communication Skills, Experience Preferred to Minimize training.

List any required technical skills (typing, computer skills, etc.): Auto meter System. PC Experience helpful.

What other special training and/or abilities are necessary to qualify for this position? N/A
_____

Check any of the following factors that are important to successful performance in this position:

| | | | |
|---|---|---|---|
| Problem Solving | ☒ | Bilingual | ☐ |
| Analytical Ability | ☒ | Interpersonal Skills | ☒ |
| Communications Skills | ☒ | Dexterity | ☐ |

Describe the requirements of this position that make these factors important: _____
Above Skills Necessary to effectively Communicate and Execute
Credit responsibilities.

*foi* *Credit Rep Position #06-138-MPT* *Attmnt 3*

**WORKING CONDITIONS**

*Updated*
*June 17, 2004*

Are there particular working conditions associated with this position which should be noted (i.e., working environment, hours of work, travel, workspace, etc.)? Yes____ No __X__ If yes, please explain:_____

_____
_____
_____
_____

## ANALYSIS OF PHYSICAL DEMANDS OF POSITION

Check physical demands that apply.

Describe job responsibilities that require physical demands checked.

1. Strength
   a. Standing ☐   _5_ % of time
      Walking ☐   _5_ % of time
      Sitting ☐   _90_ % of time          *computer/desk work*

   b. Lifting ☐   ___ lbs.
      Carrying ☐   ___ lbs.
      Pushing ☐   ___ lbs.
      Pulling ☐   ___ lbs.

2. Climbing ☐
   Balancing ☐

3. Stooping ☐
   Kneeling ☐
   Crouching ☐
   Crawling ☐

4. Reaching ☑         *normal office work*
   Handling ☑         *paper + report handling*

5. Speaking ☑         *deals with people*
   Hearing ☑          *all day long*

6. Seeing ☑
   Depth perception ☐
   Color vision ☑

*AWKruml 6/17/04*

# 06- 138 MPT

**ATTACHMENT 4**

# 06-138-MPJ

Htmnt 4

## The NewsJournal

09/07/0

### EMPLOYEE PROFILE

**VERNETTE WALKER**  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

**CREDIT CLERK**

| | | | | |
|---|---|---|---|---|
| DEPARTMENT: | Business Office | NEXT REVIEW DATE: | 2/1/2004 | G/L NO.: 5200 |
| JOB CODE/EXT: | 10350 1000 | JOB DATE: | 2/5/2001 | 2200 |
| POSITION CODE: | | ORIGINAL HIRE DATE: | 2/18/1988 | |

### Personal

ADDRESS: 29 RICHARD RD

NEW CASTLE, DE    19720

PHONE: (302) 656-4870

BIRTH DATE: 09/14/58

### Job History

| DATE | TITLE |
|---|---|
| 02/05/01 | CREDIT CLERK |
| 02/05/01 | |

### Current Salary & Performance Information

| DATE | HOURLY | PER PERIOD | ANNUAL |
|---|---|---|---|
| 02/03/03 | $17.32 | $1,212.23 | $31,518 |

| GRADE | | | % OF RANGE |
|---|---|---|---|
| 07 | MINIMUM | $22,600 | |
| | MIDPOINT | $28,300 | 78.23 |
| | MAXIMUM | $34,000 | |

LAST RATING    LAST % CHANGE    LAST AMOUNT CHANGE

3.5 Commendable +    3.00    $918

### Salary History

| DATE | SALARY | REASON | CHG % |
|---|---|---|---|
| 02/03/03 | $31,518 | Increase-Merit | 3.00 |
| 02/04/02 | $30,600 | Increase-Merit | 2.00 |
| 02/12/01 | $30,000 | Increase-Promotion | 19.94 |
| 11/29/99 | $25,012 | Increase-Merit | 4.11 |
| 11/30/98 | $24,024 | Increase-Merit | 3.36 |
| 12/01/97 | $23,244 | Increase-Merit | 3.71 |
| 12/02/96 | $22,412 | Increase-Merit | 4.87 |
| 02/18/96 | $21,372 | | 0.00 |

9/3/04

### Change Information

**8-30-04**

**EFFECTIVE DATE**

HOURLY ☐
BIWEEKLY ☐
ANNUAL ☐

| CHANGE REASON | NEW SALARY | % CHANGE | % BUDGETED |
|---|---|---|---|

| PERFORMANCE RATING | NEXT REVIEW DATE | NEW TITLE | |
|---|---|---|---|

| NEW DEPARTMENT | NEW SUBDEP/SHIFT | PT/FT STATUS | REPORTS TO |
|---|---|---|---|

**TERMINATION DATE**  August 30, 2004

**REASON**  Job Elimination

**ANNUAL LEAVE DUE**

**COMMENTS**

Shelly Rumpf  9/7/04    X

9/24/04

# 06-138-mpt

**ATTACHMENT 5**

A t t m n t 5
#06·138· MPT

**The News Journal** Worth every minute.
www.delawareonline.com

**CERTIFIED MAIL - SIGNATURE REQUESTED**
April 30, 2004

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE  19720

Re:  Income Protection Plan

Dear Ms. Walker:

Attached is a copy of our Income Protection Plan
that covers sick pay, short-and long-term disability
benefits.

There is a 5-day elimination period before STD
benefits are available.  Sick, vacation pay or leave
without pay can be used to cover these days.  STD
benefits begin on the 6th day of absence.  **Based on
your service year of 1988, you are eligible to
receive up to 25 weeks of STD at 100% of pay..**  The
duration of benefits, of course, is solely based on
medical information, and periodic updates will be
requested.

STD benefits are considered salary continuation and
subject to all withholdings and deductions.  Payroll
would need written notification from you to stop any
deductions.

Please note that sick days and short-term disability
will be counted toward your 12-week Family and
Medical Leave (FMLA) entitlement from the first day
of continuous absence.  I have enclosed a FMLA
Certification of Health Care Provider Form and FMLA
brochure.

If you have any questions, please contact me at
(302) 324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518



**GANNETT**

Attmnt 5
#06 138 MPT

## INCOME PROTECTION PLAN

Gannett's Income Protection Plan is a three-part program designed to provide you with a continuing income if you are unable to work for medical reasons. The program's three components are:

- Sick pay
- Short-Term Disability
- Long-Term Disability

### ABOUT THE COST

Gannett pays the entire cost of the Income Protection Plan.

### WHEN YOU ARE ELIGIBLE

As a regular, full-time employee, you are covered under the Sick Pay component as of your date of hire. Participation in the Short-Term Disability component commences the first of the month following six months of continuous employment. Coverage under the Long-Term Disability Plan is effective the January 1 following six months of employment.

### HOW THE INCOME PROTECTION PLAN WORKS IF YOU ARE SICK

Your income Protection Plan benefits are based on your salary and length of service.

- Sick Pay. During your first year of employment (from date of hire to your first January 1) you will earn one sick day for every twenty days worked, up to seven days. Then on each January 1, you will be granted seven sick days for that calendar year. Sick pay will pay 100% of your base salary for up to seven sick days each calendar year. This is intended for occasional illnesses. Absences exceeding five consecutive working days will be covered under the Short-Term Disability program after the fifth day absent. Unused sick days do not carry over from one year to the next. Earned sick days may also be used to care for ill or injured family members.

OCT-09-2004  16:11        THE NEWS JOURNAL                          302 324 2578        P.08/11

Attmnt 5 #06 138 MPT

- **Short-Term Disability** benefits commence after a one week waiting period (five working days). During this waiting period, you will be covered by your sick pay benefits. (If you have used all seven sick days, available vacation days may be used.)

  If your illness is expected to last longer than five consecutive working days, you will need to complete a Claim for Disability Benefits (available from the Corporate benefits office). The claim form includes a section to completed by your physician indicating the nature of your condition, illness or injury and the length of time you are expected to be absent from work. Since short-term disability continues until you are medically fit to return to work, a physical examination or periodic reports from your attending physician may be requested in order to commence or continue payment of benefits. After the five day waiting period and approval of your claim, your short-term disability benefits will be paid by the following schedule:

|  | First:<br>Weeks at 100% of Salary | Then:<br>Weeks at 60% of Salary* |
|---|---|---|
| Service: | | |
| Hire to 1st January | None | None |
| 1-2   calendar years | None | 25 weeks |
| 3-5   calendar years | 5 weeks | 20 weeks |
| 6-8   calendar years | 10 weeks | 15 weeks |
| 9-11  calendar years | 15 weeks | 10 weeks |
| 12-14 calendar years | 20 weeks | 5 weeks |
| 15    calendar years | 25 weeks | 0 weeks |

  *      Benefits are determined using base pay and sales commissions, if applicable.

Note: Short-term disability payments are reduced by any other disability benefits payable to you through worker's compensation and/or state disability laws. Maternity-related disabilities are paid in accordance with any other medical condition.

At its discretion, the Company may require proof of illness either in written form from your personal physician or through an examination by a company-selected physician, before payments under this plan are authorized.

- **Long-Term Disability.** Protection is effective the January following six months of employment. The Long-Term Disability Plan pays a benefit of 60 percent of your total compensation (including commissions and executive incentive bonuses, if applicable) commencing 26 weeks after the onset of your illness or injury. This coincides with the end of your short-term disability coverage. A complete description of this plan is contained in the Gannett Long-Term Disability brochure.

A thm nt 5

# 06 138 - MPT



**The News Journal**
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**April 30, 2004  CERTIFIED MAIL – SIGNATURE REQUESTED**

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE   19720

Re:  Family and Medical Leave

Dear Ms. Walker:

We have been informed of your need for Family and Medical Leave.  Under the
Family and Medical Leave Policy, you are eligible to take up to 12 weeks of
unpaid leave per year for your own serious health condition. I have taken the
liberty of forwarding information on the News Journal's Family and Medical
for your review.  Also enclosed is a Physician's Certification Form.  Please
have your doctor complete the enclosed Certification Form and **return it to me
on or before May 15, 2004.**

During your approved family leave, your benefits will continue uninterrupted
on the same basis as those available to you as an active employee.  You may
elect to continue your health insurance and supplemental life coverage, at the
current level and subject to all current provisions of the plans, while on leave.
If you choose to do so, you must remit to the Company each month your
current monthly premium contributions.  If you decide not to continue your
coverage during your leave, coverage will be discontinued and you will be able
to reinstate your coverage upon return from leave.  Any medical and life claims
incurred during the period that coverage as been discontinued, however, will
not be reimbursable from the Company's plans.

**If you elect to continue your health insurance coverage during your leave,
but do not return to work at the conclusion of your leave, you will be
obligated to repay the Company for premium contributions we made in
order to continue your coverage during the leave period.** (This repayment
obligation will not apply if your leave was to care for a seriously ill spouse,
parent, child or yourself, if you are unable to return to work because of the
continuation, recurrence or onset of a serious medical condition of your spouse,
parent, child or yourself, or because of other reasons beyond your control.  In
those cases, you may be required to provide verifying medical information).

ax Numbers:
ccounting: 324-2554
irculation: 324-2945
lassified: 324-5511
uman Resources: 324-2578
fo Systems: 324-2969
larketing: 324-2557
ews: 324-5509
etail: 324-5518





Attmnt 5
#06-138- MPT


**The News Journal** Worth every minute.
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

Ms. Vernette Walker
Page 2
April 30, 2004

Your participation in the Gannett 401(k) Savings Plan and Gannett Spending
Account will be suspended during your leave, and will resume when you return
to work (if applicable).

Please disregard any of the above benefits that do not pertain to you.
Otherwise, you should remit payments to my attention: c/o The News Journal
Company, 950 West Basin Road, New Castle, DE 19720.

Upon return from an approved family leave absence, you will be restored to
your original or equivalent position with equivalent pay, benefits, and other
employment terms.

If you have any questions regarding the above information, please do not
hesitate to contact me at (302) 324-2505. Please acknowledge that you have
received and reviewed this information by signing below and returning a copy
to me.

Sincerely,

*Ann C. Hines*

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518

_____          _____
Employee's Signature                          Date

Case 1:06-cv-00138-MPT    Document 47-3    Filed 08/03/2007    Page 17 of 26



Attmnt 5

#06-138-MPT



Attmt 5
#06·138 mPT

The Gannett Family and Medical Leave policy was implemented January 1, 1993 to allow eligible employees to take up to 12 weeks of unpaid leave per year for their own serious health condition or to provide care for the employee's newborn child, newly-adopted child or child, spouse or parent with a serious health condition.

The following questions and answers provide information about the major provisions of the policy. Please read the brochure carefully and keep it for future reference. Detailed information and Request for Family and Medical Leave forms are available from your Personnel Representative.

## Who is eligible?

If you are a full-time employee, you are eligible for family and medical leave following completion of 90 days of employment. If you are a part-time employee scheduled to work 1,250 hours a year or more (an average of 24 hours per week), you are eligible to participate following completion of one year of service.

## What is family and medical leave?

"Medical Leave" is defined as leave that is taken by the employee who is unable to perform the functions of his or her position because of a serious health condition or by the employee to care for a spouse, child or parent who has a serious health condition.

"Family Leave" is defined as leave that is taken to care for your newborn child or a child recently placed with you for adoption or foster care.

## When can I take family and medical leave?

You may use family and medical leave for one or more of the following reasons:

- The birth of a child;

- To care for a newborn child;

- To care for a newly-adopted child or child placed in your home for foster care;

- To care for a spouse, child or parent (but not parent-in-law) who has a serious health condition; or

- Your own serious health condition. (See also "How do family and medical leave and short-term disability coverage work together?")

Family leave to care for a newborn child or for adoption or foster care placement of a child must be completed within 12 months of the birth, adoption or placement.

## How much leave is available under the Family and Medical Leave policy?

Eligible employees may take up to 12 weeks of family and medical leave in any 12-month period. If you and your spouse are both employed by Gannett, you may take up to a combined total of 12 weeks of family leave to care for your newborn child or a child recently placed with you for adoption or foster care. This limitation

#06-138-MPT     Attmnt 5

dust *not* apply to the care of a spouse, child or parent with a serious health condition, or to the employee's own serious health condition. For example, if you and your spouse each take two weeks of family leave to care for a newborn child, you will each have 10 weeks remaining within the 12-month period to use for other family medical leave, if necessary.

## What if my state has a more generous policy (than Gannett) for family and medical leave?

State or local laws that provide greater family or medical leave rights than either Gannett's policy or the Family Medical Leave Act (FMLA) take precedence. Information is available from your Personnel Representative.

## What happens to my pay and benefits while on leave?

During the leave period your basic life insurance and health insurance continue uninterrupted. You must, however, arrange to continue your contributions to health insurance and supplemental life insurance programs if applicable. If you wish to continue coverage. Participation in the 401(k) Savings Plan and Gannett Spending Accounts (if eligible) is suspended during unpaid leave, but may be resumed without penalty when you return to active employment. Service is considered uninterrupted for purposes of calculating pension and vacation and sick leave eligibility upon your return from family and medical leave. However, you do not accrue any vacation or sick days during the period you are out on family and medical leave.

## What happens upon return?

When you return from family and medical leave, you will be reinstated in your prior job or to an equivalent position with equivalent pay, employment benefits and other terms and conditions of employment. If you fail to return to work after your leave has expired (and have not received approval for continuation of leave under Gannett's personal leave of absence policy), you will be considered to have voluntarily resigned.

In addition, if you don't return to work after your family and medical leave has expired for reasons other than the onset, continuation or recurrence of a serious health condition of yourself or your parent, child or spouse or other circumstance beyond your control, Gannett will require repayment of the company contribution to your medical insurance premiums paid during the leave.

## Must family and medical leave be taken all at once, or can it be used intermittently?

Medical leave or absence necessitated by a serious health condition or the treatment of a serious health condition may be taken intermittently or on a reduced-time basis (e.g. separate blocks of time, by working fewer days in a week or by working fewer hours in a day), but only if such a schedule is needed for medical reasons (including care of and psychological comfort to immediate family members suffering serious health conditions or treatment

thereof). In the case of caring for a new-born, adopted or foster child, intermittent family leave or a reduced time schedule requires approval by the company. Our consideration of such requests will include several factors, such as length of the requested leave, the nature of your job, your work schedule and our business needs.

## What is a "serious health condition"?

A "serious health condition" is an illness, injury, impairment or physical or mental condition requiring either in-patient care or continuing treatment by a health care provider.

By way of example, "continuing treatment by a health care provider," includes any of the following:

• inability to perform regular daily activities due to the serious health condition of *more than three consecutive calendar days* plus continuing treatment by a health care provider including pregnancy, leave, or therapy;

• any period of incapacity due to pregnancy or for pre-natal care;

• any period of incapacity or treatment for a chronic serious health condition (such as cancer and diabetes).

Unless complications arise, the common cold, flu, upset stomachs, headaches, routine dental problems and cosmetic treatments *do not* meet the definition of "serious health condition."

## How do family and medical leave and short-term disability coverage work together?

For your own illness or disability you may be eligible for both family/medical leave and sick pay or short-term disability. Absences which qualify for both sick pay/short-term disability and family/ medical leave will be counted toward both benefits and the family/medical leave will run concurrent with any sick leave or short-term disability benefit that may be available to you. For example, if there are 12-month period you are eligible for and take five consecutive days sick leave and 10 days of short-term disability benefits, you will be considered to have used three weeks of family/medical leave and will be eligible only for an additional nine weeks of family/medical leave.

Effective January 1, 2001, maternity and maternity-related disability will run concurrently with Family and Medical Leave from the first day of absence, the same as any other disability.

If your length of service or employment status does not entitle you to sufficient sick days or short-term disability to cover the full duration of an illness or injury, you may take whatever paid sick days or short-term disability you have available and then take additional unpaid family leave under the FMLA policy up to a total of 12 weeks.

#06.138 MPT          Attmt - 5

## How to request family and medical leave

Contact your Personnel Representative for a Family and Medical Leave Request form. The form includes the reason for the leave and the date you expect to return to work.

If your leave is for health reasons, you may be required to provide certification from a health care provider of the health condition involved and, if applicable, verification that you are needed to care for the family member and for how long. At its discretion, the Company may require, at its own expense, such certification from a health care provider of its own choosing.

## When should notice of family and medical leave be given?

While not all situations regarding family and medical leave are foreseeable, you should give at least 30 days notice of your intent to use family and medical leave when possible (i.e., for birth of a child, adoption, foster placement, or planned medical treatment of yourself or a family member). When need for leave is unexpected, provide notice as soon as possible.

---

If you request family and medical leave, you are not required to use any paid vacation or personal leave as part or all of the 12-week period. For example:

You may want to use 12 weeks unpaid family leave to care for a sick parent and, upon return to employment, may subsequently use earned vacation time for some other purpose. Employees on family and medical leave have the flexibility of using some or all of their earned vacation to reduce the period of unpaid leave, if they wish. However, total time away may not exceed 12 weeks and arrangements to take earned vacation as part of the requested family and medical leave must be made at the time the leave is requested.

## Does time away from work for a work-related illness or injury payable under workers' compensation count toward family and medical leave?

Yes, if the illness or injury qualifies as a "serious medical condition." Just as any sick leave or short-term disability days taken count toward the 12-week family and medical leave benefit, any time away from the job for a work-related illness or injury payable under Workers' Compensation will reduce the amount of family and medical leave available within a 12-month period.

---

NOTE: Issues or questions not covered by this policy statement will be administered consistent with applicable state and federal law.

#06- 138 MPT

**ATTACHMENT 6**

Attmnt 6 5 poses
total

# 06-138-MPT



**The News Journal**
www.delawareonline.com
Worth every minute.

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**CERTIFIED MAIL - SIGNATURE REQUESTED**
May 13, 2004


Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE  19720

Re:  Claim for Disability Benefits


Dear Ms. Walker:

Attached is a Claim for Disability Benefits form.
Please have your physician complete the doctor's
statement and return the form on or before May 28,
2004.

If you have any questions, please contact me (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Enclosure(s)   (2)

$35 charge

D-necns

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518

**GANNETT**

#06 138- MPT        Attmnt 6

 **GANNETT**

# CLAIM FOR DISABILITY BENEFITS

**Return to:**  **The News Journal**
Attn: Ann C. Hines
950 West Basin Road
New Castle, DE   19720

## EMPLOYEE'S STATEMENT

Name: Vernette Walker
*(FIRST, M.I., LAST)*

Address: 29 Richard Rd                     Apt. No.:

City: New Castle                 State: DE  19720 Zip:

Phone: (302) 324-9175    SSN: 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    Age: 45

My disability was caused by or arose from the use or operation of a motor vehicle:.............................. ☐ Yes ⊘ No

My disability is (If injury, also state how, when, and where it occurred)
Leg neck back left

I was first absent from work because of my disability on 4/27/04

Since that date, I have worked for wages: ☐ Yes ☒ No If yes, give date(s):

Vernette Walker                  5/18/04
**EMPLOYEE'S SIGNATURE**                  **DATE**

## DOCTOR'S STATEMENT

**1. HISTORY:**

a. When did symptoms first appear or accident happen?.................................................Date: 4
4/27/04

b. Date patient ceased work because of disability...................................................Date:
4/27/04

c. Has patient ever had same or similar condition? ...........................................☒Yes ☐ No
If "Yes", state when and describe     previous injury

d. Is condition due to injury or sickness arising out of patient's employment?...............☐ Yes ☒No    ☐ Unknown
                                              new MVA

**2. DIAGNOSIS** *(including any complications):*

# 06-138 MPT          Attmnt 6

Cervical & Lumbosacral Strain & sprain

b. Subjective symptoms: _neck & back pain_

c. Objective findings (including X-rays, EKG's, laboratory data and any clinical findings):

_Muscle spasm_

## 3. DATES OF TREATMENT

a. Date of first visit.................................................................. _5/5/04_

b. Dates of last visit.................................................................. _5/5/04 - present_

c. Frequency of Treatment ...................☐ Weekly  ☐ Monthly  ☐ Other (specify): _3 wh flu_

## 4. NATURE OF TREATMENT (including surgery and medications prescribed, if any):

_Therapy and daily 3 xwh thm 3 xwh for wh_

## 5. PROGRESS

a. Has Patient:  ☐ Recovered  ☐ Improved  ☒ Unchanged  ☐ Retrogressed

b. Is Patient:  ☒ Ambulatory  ☐ House Confined  ☐ Bed Confined  ☐ Hospital Confined

c. Has patient been hospital confined?    ☐ Yes  ☒ No

If "Yes", give name and address of hospital:

_____

_____

Confined From: ___/___/___          Through: ___/___/___

## 6. PROGNOSIS (all questions must be answered):

|  | Patient's Job | Any Other Work |
|---|---|---|
| a. Is patient now totally disabled? | ☒ Yes ☐ No | ☒ Yes ☐ No. |

b. What duties of patient's job is he/she incapable of performing?

_____ all _____

c. Do you expect a fundamental or marked change in the future?    ☒ Yes ☐ No      ☒ Yes ☐ No

1. If yes, when will patient recover sufficiently to perform duties?

Patient's Job:      Date ___/___/___    _Indeterminate_

Any Other Work: Date ___/___/___    _Indeterminate_

2. If no, please explain:

#06-138- MPT

Attmnt 6

**7. REMARKS:** Well reevaluate on 5-26-04

Physician's Name *(please print):* Craig D. Sturberg mD    Phone: 302-764-4271

Address: 700 LeaBlvd, Suite 102    Suite No. 102

City: Wilmington    State: NE    Zip: 19802

PHYSICIAN'S SIGNATURE    DATE 5-19-04

Attmnt 6

DEA #

BARRY L. BAKST, D.O.
ARNOLD B. GLASSMAN, D.O.
ANNE C. MACK, M.D.
RACHEL SMITH, D.O.
□ 700 LEA BOULEVARD • SUITE 102 • WILMINGTON, DE 19713 • 302-762-0660
□ 87 OMEGA DRIVE • BUILDING B • SUITE 210 • NEWARK, DE 19713 • 302-633-6783
□ 2300 GLASGOW AVENUE • SUITE B • WILMINGTON, DE 19810 • 302-730-9846
□ 2005 FOULK ROAD • SUITE 1-11 • DOVER, DE 19977 • 302-399-2224
□ 600 WALKER ROAD • SUITE 1-11 • SMYRNA, DE 19977 • 302-399-2224
□ 29 N. EAST STREET • SMYRNA, DE 19977

CRAIG D. STERNBERG, M.D.
STEPHEN M. BENECK, M.D.
ASST. P. UPADHYAY, D.O.
GINGER CHIANG, M.D.

NAME: Vernette Walker

DATE: 5-26-04

ADDRESS:

R (Please Print)

On total body for next
4 wks will reevaluate
at the t time's
next visit 6/23/04

ON APPROVED

REFILL NO TIMES

SUBSTITUTION PERMITTED
IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, PRESCRIBER M
BRAND NECESSARY OR BRAND MEDICALLY NECESSARY IN THE SPACE B

TRM00073, 10/77

# 06-138-MPT

#06-138-mpT   **ATTACHMENT 7**

# 06-138-MPT          Attmnt 7



**Delaware
Back Pain
& Sports
Rehabilitation Centers**

*Depend on us to
get you better faster.*

**Depend on teamwork
for better health:**
- Physical medicine
  & rehabilitation
- Interventional pain
  management/
  injections
- EMG
- Chiropractic care
- Rehabilitation
  therapy
- Exercise physiology
- Psychology/pain
  management
  counseling
- Massage therapy
- Wellness/nutrition
  programs
- QFCEs

**Nonsurgical solutions:**
- Auto, work & sports
  injuries
- Back & neck pain
- Shoulder pain
- Leg, ankle &
  foot pain
- Hand & wrist pain
  (carpal tunnel
  syndrome)
- Arm pain
- Arthritis, neuritis
  & bursitis pain
- Headaches

**Effective rehabilitation:**
- Musculoskeletal
  injury
- Nerve injury
- Postsurgical
  rehabilitation
- Sciatica
- Stroke
- Postpolio syndrome
- Spinal cord
  & brain injury
- Joint replacement

## FAX COVER SHEET

**Date:** 7 / 15 / 04

**To:** Human Resources

**Fax No.:** 324-2578

**From:** Vernett Walker
from Dr. Sternberg

**Our Phone Number:** (302) 733-0980
**Our Fax Number:** (302) 733-7495

**Number of pages including this cover sheet:** 7

**Special Message:** _____

_____

_____

_____

This message is confidential, intended only for the named recipient(s) and
may contain information that is privileged or exempt from disclosure under
applicable law. If you are not the intended recipient(s), you are notified that
the dissemination, distribution or copying of this message is strictly
prohibited. If you receive this message in error, or are not the named
recipient(s), please notify the sender by either fax address or telephone
number above and discard this fax.
Thank you.

RA03-5OM

Five convenient locations:

Faulk Road Office Park Plaza: (302) 529-8783 • 2006 Foulk Road, Suite B, Wilmington, DE 19810 • Fax: (302) 529-7470
Medical Arts Complex: (302) 764-0271 • 700 Lea Boulevard, Suite 102, Wilmington, DE 19802 • Fax: (302) 762-4076
Omega Professional Center: (302) 733-0980 • 87-B Omega Drive, Newark, DE 19713 • Fax: (302) 733-7495
Glasgow Medical Center: (302) 832-8894 • 2600 Glasgow Avenue, Suite 210, Newark, DE 19702 • Fax: (302) 832-8897
Walker Square: (302) 730-8848 • 830 Walker Road, Suite 11-1, Dover, DE 19901 • Fax: (302) 730-8846
www.delawarebackpain.com


#06-138 MPT

Attm] 7



**The News Journal**

www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

CERTIFIED MAIL - SIGNATURE REQUESTED
July 1, 2004

Ms. Vernette Walker
29 Ricvhard Road
Chelsea Estates
New Castle, DE    19720

Re:   Family and Medical Leave Recertification

Dear Ms. Walker:

Enclosed you will find a Certification of Health Care
Provider Form that must be completed by your treating
physician.   Please have the physician complete the
form and return it to me in the enclosed, self-
addressed envelope.

The completed Physician Certification Form must be
**returned to me on or before July 16, 2004.**

Please contact me at (302) 324-2505 if you have any
questions.

Sincerely,

Ann C. Hines
Benefits Manager

Enclosure (2)

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518



#06-138-MPT

Attmnt 7

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



| *(When completed, this form goes to the employee, **Not to the Department of Labor**.)* | OMB No.: 1215-0181<br>Expires:     07/31/04 |
|---|---|

1. Employee's Name

Vernette Walker

2. Patient's Name *(If different from employee)*

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) _____  (2) __X__  (3) _____  (4) _____  (5) _____  (6) _X_ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Severe neck & back pain subsequent to
motor vehicle accident on 4-27-04

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

4-27-04

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

Unable to work

If yes, give the probable duration: Indeterminate

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

---

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1999

#06-138- MPT

A4mnt 7

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

Indeterminate

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent or part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

Indeterminate

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

~~np~~

c. If a **regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

Medication, injection

7. a. If medical leave is required for the employee's **absence from work** because of **the employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

Unable to work

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

# 66-138 MPT

A Hmn 7

8. a. If leave is required to care for a **family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

Signature of Health Care Provider

Address 7cc Lea Blvd, Suite 102

Wilmington, DE 19802

$P M_5 R / M D$

Type of Practice

$302-764-261$ 027

Telephone Number

7-14-c4

Date

---

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature                                      Date

# 06-138 MPT                                    Attmnt 7

A **"Serious Health Condition"** means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   **Inpatient care** (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

       (1) **Treatment[3] two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

       (2) **Treatment** by a health care provider on **at least one occasion** which results in a **regimen of continuing treatment[4]** under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to **pregnancy**, or for **prenatal care.**

4. Chronic Conditions Requiring Treatments

   A **chronic condition** which: 

       (1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

       (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

       (3) May cause **episodic** rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

   A period of **Incapacity[2]** which **is permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that **would likely result in a period of Incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment**, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

---

### Public Burden Statement

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.**

# 06-138-MPT

Attmnt 7



BARRY L. BAKST, D.O.
CRAIG D. STERNBERG, M.D.
ARNOLD B. GLASSMAN, D.O.
ANNE C. MACK, M.D.
STEPHEN M. BENECK, M.D.
GINGER CHIANG, M.D.

2006 FOULK ROAD, SUITE B                (302) 529-8783
WILMINGTON, DE 19810-3644

700 LEA BOULEVARD, SUITE 102            (302) 764-0271
WILMINGTON, DE 19802-2541

NAME  Vernette Walker  AGE
DATE  7-14-04

ADDRESS

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

R

Out of work for
next month will
re evaluate at that
time. Wed July 11, 2004
✗ CO

Refill _____ times

Substitution Permitted

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, THE
PRESCRIBER MUST HAND WRITE "BRAND NECESSARY" OR
"BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

4DGP0271183

#06 138 mPT

**ATTACHMENT 8**

# 06-138 MPT



The News Journal
Worth every minute.
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**CERTIFIED MAIL - SIGNATURE REQUESTED**
July 1, 2004

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, De    19720

Re:  Family and Medical Leave Entitlement

Dear Ms. Walker:

Please be advised that your twelve (12) week
entitlement under the Family and Medical Leave Act of
1993 will end as of July 20, 2004.  It is our
understanding that you remain unable to return to
work.  If you remain unable to return to work as of
July 20, 2004, business necessity requires us to fill
your position as Credit Clerk.

If you have any questions, please contact me at (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Mail: 324-5518

#06 138-MPT          attm7   8

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vernette Walker
29 Richard Rd.
Chelsea Estates
New Castle, DE
19720

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7002 0510 0000 3770 1474

PS Form 3811, August 2001          Domestic Return Receipt          102595-01-M-0381

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

7002 0510 0000 3770 1474

7002 0510 0000 3770 1474

**O F F I C I A L   U S E**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To  Vernette Walker
Street, Apt. No.;  29 Richard Rd.
or PO Box No.
City, State, ZIP+4  New Castle, DE 19720

PS Form 3800, January 2001          See Reverse for Instructions

#06-138-MPT

**ATTACHMENT 9**

# 06 -138- MPT



**The News Journal**
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

August 18, 2004


Concentra Medical Center
4110 Stanton-Ogletown Road
Newark, DE   19713
Attn:  Linda Surdo, MD

Re:  Vernette Walker - SSN 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


Dear Dr. Surdo:

We have scheduled an appointment at Concetra Medical
Center for News Journal employee Vernette Walker. The
appointment is 1:00 P.M. on Friday, August 20, 2004.

The purpose of this appointment is to determine
Vernette's fitness for duty.   Patient's vehicle was
rear-ended by another vehicle on April 27, 2004.
There has been no significant improvement since the
accident.  Attached are copies of her medical records
for your review and her job description.  Please note
that her job is a ``light'' duty position and we can
accommodate physical restrictions/limitations.

Please provide us with a diagnosis, prognosis and a
return to work plan including any physical
restrictions/limitations.

Please contact me at (302) 324-2505 if you have any
questions.

Sincerely,

Ann C. Hines
Benefits Manager

Ach
Enclosure

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518



#06-138-MPT

Attmt 9

**UPS Next Day Air**
**UPS Worldwide Express**
Shipping Document

See instructions on back. Call 1-800-PICK-UPS (800-742-5877) for additional information.

TRACKING NUMBER  1Z 199 421 22 1005 097 8

**1 SHIPMENT FROM**

SHIPPER'S UPS ACCOUNT NO.   UPS ACCOUNT NO.   199421

REFERENCE NUMBER

NAME  Ann C. Hines   TELEPHONE  302-324-2900  2525

COMPANY  THE NEWS JOURNAL CO

STREET ADDRESS  950 W BASIN RD

CITY AND STATE  NEW CASTLE   DE   ZIP CODE  19720-1008

*PLEASE PRESS HARD WHEN MAKING 3 COPIES*

**2 EXTREMELY URGENT DELIVERY TO**

NAME  LINDA SURDO   TELEPHONE  302 738 0103

COMPANY  CONCENTRA MED. CENTER

STREET ADDRESS  4110 STANTON · OGLETOWN ROAD   DEPT./FLR.

CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)  NEWARK   DE   ZIP CODE  19713

**3 WEIGHT**   ENTER "LTR" IF LETTER

DIMENSIONAL WEIGHT If Applicable

**4 TYPE OF SERVICE**
[X] NEXT DAY AIR
[ ] EXPRESS (INTL)
For WORLDWIDE EXPRESS shipments. Mark an "X" in this box if shipment only contains documents of no commercial value.
[ ] DOCUMENTS ONLY

[ ] SATURDAY PICKUP  See Instructions.
[ ] SATURDAY DELIVERY  See Instructions.

**5 OPTIONAL SERVICES**
[ ] INSURED VALUE  Contents are automatically protected up to $100. For insured value over $100, see instructions.  AMOUNT
[ ] C.O.D.  If C.O.D. enter amount to be collected and attach completed UPS C.O.D. tag to package.  AMOUNT

**6 ADDITIONAL HANDLING CHARGE**  An Additional Handling Charge applies for certain items. See instructions.

TOTAL CHARGES  $

**7 METHOD OF PAYMENT**
[ ] BILL SHIPPER
[ ] BILL RECEIVER  Domestic Only
[ ] BILL THIRD PARTY  Record Account No. In Section 8.
[ ] CREDIT CARD  American Express Diner's Club Discover MasterCard Visa
[ ] CHECK

**8 RECEIVER'S / THIRD PARTY'S UPS ACCT. OR MAJOR CREDIT CARD NO.**   EXPIRATION DATE

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE   ZIP CODE

**SHIPPER'S 1**
**COPY 1**

CHARGES
$
$
$
$
$

**9 SHIPPER'S SIGNATURE**  X Ann C Hines

DATE OF SHIPMENT

0101911202609   8/00   S

#06- 138- mPT          **ATTACHMENT 10**

UCT-09-2004  16:12     THE NEWS JOURNAL                                      302 324 2578     P.10/11

#06-138-mpT

THE NEWS JOURNAL
4110 Stanton-Ogletown Rd NEWARK, DE 19713
Phone: (302) 738-0103     Fax: (302) 738-6612

A+mn+ 10

**Return to Work Evaluation**

| | | | |
|---|---|---|---|
| ent: Vernette Walker | Address: 29 Richard Rd | Employer: News Journal | Contact: Ann Heinz |
| :N: 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 | | Address: 950 W Basin Rd | Role: HR Manager |
| JOB: 09/14/1958 | NEW CASTLE, DE 19720 | NEW CASTLE, DE 19720 | Phone: (302) 324-2505  Ext.: |
| Gender: F | Phone: (302) 324-9175 | Auth. by: | Fax: (302) 324-2578 |

Race:   ASIAN   BLACK   HISPANIC   INDIAN   WHITE   OTHER

Reason for evaluation:  auto accident 4/27/04

☐ Occupational with other provider          ☐ Non-Occupational

Requested by:  The news Journal

Special attention to:  Craig Steinberg

Treating provider:  Craig Steinberg

---

**Authorization for Examination**

Permission is hereby granted to the authorities of Concentra Medical Centers (DE) for any examination deemed necessary by the physician. In addition, I authorize the release of any information acquired in the course of this examination.

Vernette Walker
Patient Signature

8/23/04
Date

---

**Examination**

Temp: 97.8    Blood Pressure: 118/70    Pulse: 84    Ht: 58"    Wt: 151

Other:  job, financial dist, collection, suit, keys, plexes, (r) hand c
job description available to review.
no MRI reports available to review.

Medical History:  45 y/o ♀ s/p MVA 4-27-04. Pt was belted driver, rear
ended. she states rehun was totalled? she was taken to ER
no fx's found. she that time pt was never tested for
neck and back injuries c PT/meds/ s/p 2 week repetion. she states
MRI's were done. she also states she had work related injury
1999 where a work related injury fell onto her and she (?) should, neck
requiring surgery. she also states she became depressed as a result
Present Complaint:  of this injury requiring antidepressant meds. Currently she
c/o difficulty with ambual pain, now radiating t part to (r) leg
but not to arms. she now numbers/weakness. she has not
returned to work.   Meds - Skelaxin, Bextra, T+3, Lexapro, Ambia
Findings/Recommendations:   P= ? initially pleasant, then tearful
lungs) clear, cor - S.S.,    affect - slightly depressed
neck) diffuse supraspuf tenderness, c FROM
back) diffuse supraspuf tenderness, slight ↓ flexion, went
all ext full, Str ⊖? reps - WNL  motor/sensory
ou 4 extremity - intact.    a/t to the + neu way resn s/t

₹ (1)  cervical + lumbar strain          P.) May RTW
Evaluation - Non-Work-Related Injury/Illness          Page 1 of 1          without restriction   Revision Date: 11/05/2002
(3) cervical + lumbar          © 1998 - 2004 Concentra's Health Services, Inc. All Rights Reserved.
  radiculopathy
(4) depression

**CONCENTRA**

# 06-138-mpt

Attmnt 10

## RETURN TO WORK EVALUATION

PATIENT  Venette Walker

EMPLOYER  News Journal

DATE  5/23/04

Recommendations

Patient may return to work

_____ on regular activity without any restrictions.

_____ with the following restrictions:

_____ is not medically able to return to work at this time.

Remarks:

Signature

Printed Name

4110 STANTON-OGLETOWN ROAD, NEWARK, DE 19713, (302) 738-0103, FAX (302) 738-6612

# 06- 138- MPT

**ATTACHMENT 11**


www.delawareonline.com

*Attmnt 11*
*# 06-138 MPT*

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**UPS - NEXT DAY DELIVERY**
August 30, 2004

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE    19720

Re:  Expiration of Family & Medical Leave Entitlement

Dear Ms. Walker:

Please be advised that your Family and Medical Leave
entitlement expired on July 20, 2004.  On August 23,
2004, you underwent a fitness for duty exam that
determined you are able to return to work, full duty,
without any physical restrictions/limitations.
Effective August 30, 2004, due to business necessity,
The News Journal no longer has a job available for
you and your short-term disability benefits will
cease as of August 30, 2004.

When you feel you are able to return to work full-
time, we will review our openings to see if there is
an appropriate job available.  It is important that
you understand that **this is not a guarantee of a job.**

If you have any questions, please contact me at (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
News: 324-5509
Retail: 324-5518

GANNETT

**ATTACHMENT 12**

# 06- 138 MPT

Attmnt 12
#06-138-MPT

I deny making any harassing phone calls to Vernette Walker.  All phone calls were made within the scope of my job.

_11/12/2004_
(Date)

_Ann C Hines_
(Signature)

Notarization

State of _Delaware_

County of _New Castle_

On this _12th_ day of _December_ in the year _2004_ , before me

_Ann Hines_ personally appeared.

_Ann Hines_ personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose names(s) are subscribed to this instrument and acknowledge that they executed it.

_Susan J Klimaszewski_
Notary Public

**ATTACHMENT 13**

#06-138-MPT

Attmnt 13
#06-138-MPT

Response to charge of discrimination from Vernette Walker

I did call Vernette on 2 different occasions, once returning her call and the 2nd time to get an update on how she was doing. (do not recall the exact dates)
Vernette had also called me on 2 different occasions, and on the most recent occasion had indicated she was doing much better and was hopeful to return to work after her next scheduled appointment which was in mid July. After that date had passed, I called Vernette to see how things were and to get an update since she had been so optimistic in our previous conversation. She said she was not doing well. At that point she had shared some experience she had with regard to her condition (told me she was getting shots that were causing her significant pain) and went on to ask me for advice asking me what I thought she should do next. I told her I was the wrong person to be asking, but strongly recommended she see a specialist since she had indicated she had not gone to one. She ended the conversation by stating she was getting a headache just talking about it all and we ended the call. Never spoke with her again.

We always had an open line of communication. She was my strongest employee, and in line for a raise when she returned to work. She was thought of highly in her position.

Shelly Rumpf 11/9/04

## COMMUNITY LEGAL AID SOCIETY, INC.
## ("CLASI")
## CERTIFICATION AND RETAINER

1. I certify that I am eligible for the services of CLASI because of (circle one)

   Income, Age, (Disability) Other_____

2. I authorize CLASI to assist me with this: (describe case)

   *(84) investigate short-term disability denial*

3. I understand that I will be kept informed of the progress of this case.

4. I agree to cooperate with CLASI, and to keep the agency informed of any changes in my income, changes of address, telephone number or developments in this case.

5. I understand that CLASI takes only cases which it considers to have merit, and that representation may be withdrawn if facts develop which show this case to be without merit or if I fail to cooperate.

6. I understand that CLASI periodically consults with experts and/or independent contractors in the course of case evaluation or representation. I authorize CLASI to share information and documentation concerning my case with such persons.

**CERTIFICATION AND RETAINER FORM** – This form describes the work that my office will be doing for you. It also outlines your rights and responsibilities as our client. The retainer says that my office will be providing you with an investigation only without litigation services. I have enclosed two copies of this form. Please read them carefully, and sign them where indicated on the reverse side. Return one copy to me in the enclosed self-addressed stamped envelope. Keep the second copy for your records.

**AUTHORIZATION FOR HEALTH INFORMATION DISCLOSURE AND AUTHORIZATION FOR RELEASE OF INFORMATION FORM** – These forms authorize my office to contact other agencies to obtain information on your behalf if necessary for your case. Please sign these forms on the signature line at the bottom and return them to me in the enclosed envelope.

**NOTICE OF GRIEVANCE PROCEDURE FORM** – Please read this form carefully. Sign one copy, and return it to me. Keep the second copy for your records.

Enclosed please find several helpful publications about the Americans with Disabilities Act. I'm sorry that the Disabilities Law Program is unable to offer you any further assistance with litigating this claim. If you have any questions, please call me. Thank you.

Sincerely,

Melissa Boyd Freeman
Paralegal, extension 218

Enclosures

#06-138- MPT

# NOTICE OF GRIEVANCE PROCEDURE

If you believe that legal assistance has been improperly denied to you or you are dissatisfied with the legal assistance provided in your case, you have the right to use the grievance procedure of Community Legal Aid Society, Inc.

You may ask to speak to Olga Ramirez, who is the grievance officer in this office. She can be reached by telephone at (302) 575-0660, extension 238. She will explain the grievance procedure and help you file a complaint if you need assistance.

KEEP THIS COPY FOR YOUR RECORDS.

REV. 05/02/00



**DISABILITIES LAW PROGRAM**  $# 06-138- mp7

COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690    (TTY) (302) 575-0696    Fax (302) 575-0840

September 30, 2004

BY REGULAR MAIL AND FAX (324-2578)

News Journal
950 West Basin Rd.
New Castle, DE 19720
Attn: Ann C. Hines, Benefits Manager

      RE:    **Vernette Walker**
             D.O.B. 9/14/1958

Dear Ms. Hines:

    This office has been retained to investigate Ms. Walker's short-term disability denial. Please send a copy of her records relating to the denial to me at the above address within 10 days. Please include all of these records, including but not limited to the following:

    Short-term disability insurance plan, including information on appeal rights and procedures,
    August 23, 2004 medical report referred to in your August 30, 2004 letter to our client,
    All medical records; and
    Notices you sent to our client regarding her right to appeal the short-term disability denial.

    I have enclosed a copy of a release form signed by Vernette Walker, which authorizes you to provide me with this information. I have enclosed a second HIPAA-compliant release signed by our client that authorizes you to provide me with medical information.

    My office represents individuals with disabilities at no cost to them, and we would appreciate it if you would waive all costs associated with this request. Please note that we receive no monetary compensation or fees for representing Ms. Walker. If you have any questions, please contact me at 575-0660, ext. 218. Thank you.

                                      Sincerely,

                                        Melissa Boyd Freeman
                                        Paralegal

Enclosure

pc: Vernette Walker

**KENT COUNTY**    840 Walker Road, Dover, DE 19901           (302) 674-8500
**SUSSEX COUNTY**   144 E. Market Street, Georgetown, DE 19947    (302) 856-3742

DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES



# DISABILITIES LAW PROGRAM

#06-138 MPT

COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690    (TTY) (302) 575-0696    Fax (302) 575-0840

September 30, 2004

Dr. Arnold Glassman
87-B Omega Dr.
Newark, DE 19713
Attn: Jessica, Medical Records

      RE:   **Vernette Walker**
             D.O.B. 9/14/1958

Dear Jessica:

Please send a copy of Vernette's medical records to me at the above address as soon as possible. Please include all of her records, including but not limited to the following:

· All treatment notes/summaries
  Consultations
  Evaluations
  Prescriptions
  Operative notes
  Inpatient and outpatient notes
  Progress notes
  X-ray interpretations
  Pulmonary/FEV test results
  Emergency room records, and
  Discharge summaries.

In particular, we are interested in records regarding her medical treatment for injuries sustained in a car accident in April 2004. I have enclosed a copy of a release form signed by Vernette Walker.

My office represents individuals with disabilities at no cost to them, and we would appreciate it if you would waive all costs associated with this request. Please note that we receive no monetary compensation or fees for representing Ms. Walker. If you have any questions, please contact me at 575-0660, ext. 218. Thank you.

                                    Sincerely,

                                    Melissa Boyd Freeman
                                    Paralegal

Enclosure

pc: Vernette Walker



# DISABILITIES LAW PROGRAM   #06·138· MPT

### COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690   (TTY) (302) 575-0696   Fax (302) 575-0840

October 13, 2004

BY REGULAR MAIL AND FAX (324-2578)

News Journal
950 West Basin Rd.
New Castle, DE 19720
Attn: Ann C. Hines, Benefits Manager

      RE:   **Vernette Walker**
             D.O.B. 9/14/1958

Dear Ms. Hines:

This letter is to confirm the conversation we had this morning concerning the records request we faxed to you on September 30, 2004. Per that request, we asked you to produce certain records within 10 days of the receipt of our request. You say that you are working on the request and will send the records to us within a few days.

This office has agreed to conduct an investigation into our client's short-term disability denial. Because the law gives Ms. Walker a certain amount of time to bring an employment discrimination charge, we would like to conclude our investigation as quickly as possible. If you have any questions, please contact me at 575-0660, ext. 218. Thank you.

               Sincerely,

               Melissa Boyd Freeman
               Paralegal

pc: Vernette Walker

**KENT COUNTY**   840 Walker Road, Dover, DE 19901   (302) 674-8500
**SUSSEX COUNTY**   144 E. Market Street, Georgetown, DE 19947   (302) 856-3742

DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES

#06-138 MPT



# DISABILITIES LAW PROGRAM

**COMMUNITY LEGAL AID SOCIETY, INC.**

100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690   (TTY) (302) 575-0696   Fax (302) 575-0840

November 4, 2004

BY REGULAR MAIL AND FAX (324-2578)
News Journal
950 West Basin Rd.
New Castle, DE 19720
Attn: Delores Pinto, VP of Human Resources

    RE:   **Vernette Walker**
             D.O.B. 9/14/1958

Dear Ms. Pinto:

This letter constitutes our third written request to the News Journal for records that our client, Vernette Walker, is entitled to have. Please send the records we requested by no later than November 10, 2004.

Per your conversation today with Melissa Freeman of this office, you say that you will not provide us with records because Ms. Walker has filed a charge with the Department of Labor against the News Journal. We are aware that there has been a charge filed regarding wrongful discharge while on an approved medical leave. The Disabilities Law Program is investigating whether you have complied with State law or 29 CFR § 2560.503-1 of ERISA in terminating Ms. Walker' short-term disability benefits. In addition to the records we requested, please advise who is the Third Party Adjuster or the Plan Sponsor, and whether your Plan is funded or unfunded. If unfunded, please give me the name of the insurance company.

Let me emphasize that Vernette Walker is entitled to have all the records and information that we have requested. Per 29 USCA § 1132, any administrator that fails to comply with a request for information required to be furnished under that subchapter by mailing the material requested within 30 days after the request may in the court's discretion be liable to the beneficiary for up to $100 a day from the date of failure or refusal, and the court may in its discretion order such other relief as it deems proper. Please find enclosed our original request for records that was faxed and mailed to the News Journal on September 30, 2004.

If there is some legal reason why you will not release the information requested, please supply us with that reason, or have your attorney call me.

Sincerely,

Laura J. Waterland
Senior Attorney, ext. 231

Enclosure
pc: Vernette Walker

**KENT COUNTY**     840 Walker Road, Dover, DE 19901                               (302) 674-8500
**SUSSEX COUNTY**    144 E. Market Street, Georgetown, DE 19947                (302) 856-3742

DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES



**DISABILITIES LAW PROGRAM**  #06-138-mp

COMMUNITY LEGAL AID SOCIETY, INC.

100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690    (TTY) (302) 575-0696    Fax (302) 575-0840

December 20, 2004

Vernette Walker
29 Richard Road
New Castle, DE 19720

        RE:   Request for Assistance with Employment Discrimination/ERISA Case

Dear Ms. Walker:

     I have tried unsuccessfully to reach you by phone. Therefore, please call me as soon as possible so that we can discuss your case

     You previously called this office concerning an employment discrimination/ERISA case. This office agreed to investigate the short-term disability denial without litigation services, and you decided to file an employment discrimination charge with the Department of Labor on your own. I have spoke with a private attorney, Kevin Fasic, Esq., who has reviewed your case. He feels that your ERISA case may be stronger than your employment discrimination claim. He has asked us to gather information concerning whether the News Journal had any dispute resolution policy, so that he can further review the strength of your ERISA case.

     You recently called us to say that a letter from the Department of Labor requires you to respond to the News Journal's answer to your employment discrimination charge. You are unsure about what allegations you are responding to, but say that the News Journal claimed to have called you on August 24, 2004. The Disabilities Law Program has not agreed to represent you concerning the employment discrimination charge; however, Mr. Fasic has offered some advice concerning this matter. A new provision requires the employer to submit the answer it files with the Department of Labor to you. If you did not receive this answer from the News Journal, you should request that the Department of Labor grant you an extension to respond on this basis. You should then request that the News Journal provide you with this information, which will allow you to form a response to their answer. If you need further help with responding, we encourage you to call a private attorney from the list we previously mailed to you.

     I look forward to hearing from you shortly. Thank you.

                             Sincerely,

                             Melissa Boyd Freeman
                             Paralegal, extension 218

**KENT COUNTY**   840 Walker Road, Dover, DE 19901          (302) 674-8500
**SUSSEX COUNTY**   144 E. Market Street, Georgetown, DE 19947         (302) 856-3742

DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES



**DISABILITIES LAW PROGRAM**
COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0690    (TTY) (302) 575-0696    Fax (302) 575-0840

#06 1 38 mßT

December 29, 2004

BY REGULAR MAIL AND FAX (324-2578)
News Journal
950 West Basin Rd.
New Castle, DE 19720
Attn: Ann C. Hines, Benefits Manager

     RE:   **Vernette Walker**
            D.O.B. 9/14/1958

Dear Ms. Hines:

This office has been retained to investigate Ms. Walker's short-term disability denial. The News Journal previously provided us with two pages from the Gannett Income Protection Plan that briefly discuss how the income protection plan works. Please send a copy of the following records to me at the above address within 10 days:

Any and all documents relating to short- and long-term disability benefits except the two pages you previously provided to us,
Any and all documents relating to a dispute resolution process available to News Journal employees at the time of our client's termination,
Any and all notices to client informing her of her right to engage in this dispute resolution process,
Notices to client informing her of her right to engage in this dispute resolution process for the purpose of resolving the dispute over the termination of her short-term disability benefits.

I have enclosed a copy of a release form signed by Vernette Walker, which authorizes you to provide me with this information.

My office represents individuals with disabilities at no cost to them, and we would appreciate it if you would waive all costs associated with this request. Please note that we receive no monetary compensation or fees for representing Ms. Walker. If you have any questions, please contact me at 575-0660, ext. 218. Thank you.

Sincerely,

Melissa Boyd Freeman
Paralegal

Enclosure
pc: Vernette Walker

**KENT COUNTY**    840 Walker Road, Dover, DE 19901    (302) 674-8500
**SUSSEX COUNTY**    144 E. Market Street, Georgetown, DE 19947    (302) 856-3742

DELAWARE'S PROTECTION AND ADVOCACY SYSTEM FOR PERSONS WITH DISABILITIES

#06-136-MPL

does not apply to the care of a spouse, child or parent with a serious health condition, or to the employee's own serious health condition. For example, if you and your spouse each take two weeks of family and medical leave to care for a newborn child, you will each have 10 weeks remaining within the 12-month period to use for other family and medical leave, if necessary.

## What if my state has a more generous policy (than Gannett's) for family and medical leave?

Some state or local laws that provide greater family or medical leave rights than either Gannett's policy or the Family Medical Leave Act (FMLA) take precedence.

Information is available from your Personnel Representative.

## What happens to my pay and benefits while on leave?

During the leave period your basic life insurance and health insurance continue uninterrupted. You must, however, arrange to continue your contributions to health insurance and supplemental life insurance programs (if applicable) if you wish to continue coverage. Participation in the 401(K) Savings Plan and Gannett Spending Accounts (if eligible) is suspended during unpaid leave, but may be resumed without penalty when you return to active employment. Service is considered uninterrupted for purposes of calculating pension and vacation and sick leave eligibility upon your return from family and medical leave. However, you do not accrue any vacation or sick days during the period you are out on family and medical leave.

## What happens upon return?

When you return from family and medical leave, you will be reinstated in your prior job or to an equivalent position with comparable pay, employment benefits and other terms and conditions of employment. If you fail to return to work after your leave has expired (and have not received approval for continuation of leave under Gannett's personal leave of absence policy), you will be considered to have voluntarily resigned.

In addition, if you don't return to work after your family and medical leave has expired for reasons other than the onset, continuation or recurrence of a serious health condition of yourself or your parent, child or spouse or other circumstances beyond your control, Gannett will require repayment of the company contribution to your medical insurance premiums paid during the leave.

## Must family and medical leave be taken all at once, or can it be used intermittently?

Medical leaves for absence necessitated by a serious health condition or the treatment of a serious health condition may be taken intermittently or on a reduced-time basis (e.g. separate blocks of time, by working fewer days in a week or by working fewer hours in a day), but only if such a schedule is needed for medical reasons (including care of and psychological comfort to immediate family members suffering serious health conditions or treatment

thereof). In the case of caring for a new-born, adopted or foster child, intermittent family leave or a reduced time schedule requires approval by the company. Our consideration of such requests will include several factors, such as length of the requested leave, the nature of your job, your work schedule and our business needs.

## What is a "serious health condition?"

A "serious health condition" is an illness, injury, impairment or physical or mental condition requiring either in-patient care or continuing treatment by a health care provider.

By way of example, "continuing treatment by a health care provider," includes any of the following:

• inability to perform regular daily activities due to the serious health condition of *more than three consecutive calendar days* plus continuing treatment by a health care provider including prescription drugs or therapy;

• any period of incapacity due to pregnancy or for pre-natal care;

• any period of incapacity or treatment for a chronic serious health condition (such as cancer and diabetes).

Unless complications arise, the common cold, flu, upset stomachs, headaches, routine dental problems and cosmetic treatments *do not* meet the definition of "serious health condition."

## How do family and medical leave and short-term disability coverage work together?

For your own illness or disability you may be eligible for both family/medical leave and sick pay or short-term disability. Absences which qualify for both sick pay/short-term disability and family/medical leave will be counted toward both benefits and the family/medical leave will run concurrent with any sick leave or short-term disability benefits that may be available to you. For example: If during a 12-month period you are eligible for and take five consecutive days sick leave and 10 days of short-term disability benefits, you will be considered to have used these three weeks of family/medical leave and will be eligible only for an additional nine weeks of family/medical leave.

For childbirth, you would be eligible for up to 12 weeks unpaid family leave to provide care for the newborn child, in addition to any paid sick or short-term disability leave to which you are entitled.

If your length of service or employment status does not entitle you to sufficient sick days or short-term disability to cover the full duration of an illness or injury, you may take whatever paid sick days or short-term disability you have available and then take additional unpaid leave under the FMLA policy up to a total of 12 weeks.



#06-138·mpt

2nd left
behinda McDonald
on front
on left

aug. 23
MM
10.30 A

Concentra Med

4110 Stanton
Osler
new 19713
302 738·0103
Dr. Linda
Surdo
per
ann
tone
8/18/04

MAYG, Fenny Fridkin EE PC
21 south 12 street 8th flr
Phila PA 19107

Evelyn (see)
1-63-2-
0 994
287

Directions from Ann
line to Concentra
Med Ctr.