## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VERNETTE WALKER,    )
           )
   Plaintiff,     )
           )
   v.        )   Civil Action No. 06-138-MPT
           )
THE NEWS JOURNAL and ANN HINES )
           )
   Defendants.    )

### AFFIDAVIT OF ANN C. HINES

STATE OF DELAWARE  )
         ) SS.
NEW CASTLE COUNTY  )

   ANN C. HINES, does swear and affirm as follows:

   1.  I am an employee and the Benefits Manager for The News Journal ("News Journal" or "Company"). As Benefits Manager, my job duties include, but are not limited to, contacting employees in writing and on the telephone about their benefits. A copy of my job description as Benefits Manager is attached. (See Exhibit A).

   2.  On or about Tuesday, April 27, 2004, I was informed that Vernette Walker ("Ms. Walker") was involved in a car accident, off company property, when she was returning from lunch. It was communicated to me that Ms. Walker would be out of work for an extended period of time.

   3.  On April 30, 2004, three days later, I sent Ms. Walker two (2) letters via certified mail, notifying Ms. Walker of her benefits entitlement under the Company's Income Protection Plan (Short-term Disability benefits) and under the Company's FMLA policy.[1] I also enclosed

---

[1] The FMLA policy clearly states that employees are eligible for up to 12 weeks of benefits.

copies of the aforementioned benefits plans for Ms. Walker's review. Additionally, in the FMLA letter, I enclosed a Certification of Healthcare Provider Form ("Certification Form"). Copies of the letters are attached. (See Exhibit B).

4.      In my letter of April 30, 2004, I requested that Ms. Walker have her doctor complete the Certification Form and return it to me on or before May 15, 2004.

5.      The FMLA and short-term disability forms are sent in the normal course of business to employees to enable the Company to obtain information regarding an employee's medical status.

6.      On May 13, 2004, I sent Ms. Walker a claim for disability benefits form and requested that she have her physician complete the doctor's statement on or before May 28, 2004. A copy of the letter is attached. (See Exhibit C).

7.      The Company did not receive a completed Certification Form from Ms. Walker in order to determine her eligibility for FMLA on or before May 15, 2004, as I requested.

8.      The Company received a completed copy of Ms. Walker's claim for disability benefits form on or about May 19, 2004 wherein Ms. Walker's physician determined that she was "completely disabled" for an "indeterminate" period of time. Ms. Walker's doctor's note dated May 26, 2004 indicated that she would be out of work for the next four weeks and would be reevaluated at that time. Copies of Ms. Walker's claim for disability benefits form and her doctor's note are attached. (See Exhibit D). Ms. Walker was approved for short term disability ("STD") benefits.

9.      As standard Company procedure, I would often update relevant managers and my supervisor, Dolores Pinto ("Ms. Pinto"), Vice President of Human Resources, on the status of employees who were on a leave of absence from work.

10.    On May 5, 2004, I sent an e-mail to Shelly Rumpf ("Ms. Rumpf"), Credit Manager and Ms. Walker's direct supervisor, as well as Ms. Pinto and Erich Walburn ("Mr. Walburn"), Vice President of Finance, informing them that Ms. Walker would be out of work for the next three weeks. A copy of the email is attached. (See Exhibit E).

11.    On May 28, 2004, I sent another email to Ms. Rumpf, Ms. Pinto and Mr. Walburn informing them that Ms. Walker would be out of work for an additional four (4) weeks and that her next doctor's appointment was scheduled for June 23, 2004. A copy of the email is attached. (See Exhibit F).

12.    On June 1, 2004, I sent another email to Ms. Rumpf, Ms. Pinto and Mr. Walburn advising them that "Due to severe neck and back pain and muscle spasms, Vernette is unable to sit or stand for prolonged periods." (See Exhibit G).

13.    On June 23, 2004, Ms. Walker provided the Company with a doctor's note that she would be out of work until July 21, 2004. Ms. Walker's doctor's note is attached. (See Exhibit H).

14.    The doctor's notes provided by Ms. Walker failed to detail the nature of the injury, the period of expected recovery or if Ms. Walker could return to work on an intermittent basis with appropriate treatment.

15.    Due to Ms. Walker's failure to provide the Company with a Certification Form as requested by May 15, 2004, I sent another letter to Ms. Walker via certified mail on July 1, 2004 enclosing a copy of the Certification Form and requesting that she have her doctor complete the form and return it to me on or before July 16, 2004. (See Exhibit I).

16.    Under separate cover, I sent Ms. Walker another letter dated July 1, 2004, advising her that her 12-week entitlement to FMLA benefits would end on July 20, 2004. Ms.

Walker was specifically advised, *"If you remain unable to return to work as of July 20, 2004, business necessity requires us to fill your position as Credit Clerk."* A copy of the letter is attached. (See Exhibit J).

17.     It is my normal practice to send a letter to an employee on FMLA leave to advise of the date on which their FMLA benefits will be exhausted and to inform the employee that the Company may not have an available position for them upon their return. As a courtesy, I generally contact employees prior to their receipt of this letter to advise that the Company, as applicable, has not made any decisions concerning the termination of their employment at that time, but I make no promises as to how long this will last. Similarly, I contacted Ms. Walker on or about July 1, 2004.

18.     On July 15, 2004, the Company received a copy of Ms. Walker's completed Certification Form via fax. The information provided by Ms. Walker's doctor was vague and the description of her medical facts read, *"involving a motor vehicle accident on 4/27/04 injuring neck and low back."* The form did not identify the nature of the actual injury nor did it identify the period of expected recovery and whether or not Ms. Walker could return to work on an intermittent basis. Additionally, the Company received a copy of her doctor's note dated July 14, 2004, without detail as to why she would continue to be out of work, only indicating that she would be out of work for a month and would be revaluated on August 11, 2004. Copies of Ms. Walker's completed Certification Form and her doctor's medical note are attached. (See Exhibit K).

19.     Generally, I did not initiate calls to Ms. Walker, except as described herein. However, I did return Ms. Walker's phone calls if she left a message on my voicemail. She

-4-

would generally contact me after purported doctor's appointments at which time she would indicate that she was still "disabled."

20.    With respect to a phone log, I do not make a written record of every call that I dial or receive during the course of a business day. However, on occasion, I may write down information concerning a particular phone call for possible follow-up on the subject matter of the call at a later time.

21.    Generally, Ms. Walker would contact me on a monthly basis to inform me that she could not return to work and that her daughter would be dropping off a doctor's note. There were some instances when Ms. Walker failed to provide a doctor's note, and I would remind her that I needed medical documentation. On one occasion, July 15, 2004, Ms. Walker contacted me and left a message on my voicemail requesting that I confirm my receipt of her medical records. In response, I contacted Ms. Walker to confirm my receipt of the Certification Form. During that conversation with Ms. Walker, I informed her that the information completed by her doctor on the Certification Form was vague and reminding her that particularly for STD purposes, we needed to know the diagnosis and the anticipated duration of recovery. I may have also told Ms. Walker on another occasion or two that her doctor's notes were vague and asked for more detail.

22.    On July 20, 2004, Ms. Walker exhausted her 12 weeks of FMLA.

23.    On August 12, 2004, Ms. Walker left a voicemail message for me stating that she would provide updated medical records by Tuesday, August 17, 2004.

24.    By the middle of August 2004, Ms. Walker had not returned to work. In or around Tuesday, August 17, 2004, Ms. Walker provided me with copies of various medical records from her treating physicians. Also, Ms. Walker provided a doctor's note, dated August

-5-

11, 2004, which only stated that Ms. Walker would be out of work for the next four weeks and that she would be reevaluated at that time. These medical records did not identify a prognosis or a long term recovery date.

25.     In an effort to gauge whether Ms. Walker could, in fact, return to work in any capacity, whether she was still eligible for STD benefits, and based upon the vagueness of the previous notes provided by Ms. Walker, the Company arranged for the Concentra Medical Center ("Concentra") to perform an independent medical examination ("IME").

26.     On August 17, 2004, I verbally notified Ms. Walker of the scheduled exam at Concentra which was originally scheduled for August 20, 2004, but was subsequently changed to August 23, 2004.

27.     In a letter to Dr. Linda Surdo at Concentra in advance of the IME, dated August 18, 2004, I noted that Ms. Walker's position was a "light duty" position, and that the Company could accommodate physical restrictions/limitations accordingly. I enclosed a copy of Ms. Walker's job description and medical records for Dr. Surdo's review. A copy of the letter is attached. (See Exhibit L).

28.     It is my understanding that on August 23, 2004, Dr. Surdo examined Ms. Walker. Dr. Surdo determined that Ms. Walker could return to work, "full duty" without any restrictions, effective that same date, August 23, 2004. A copy of Dr. Linda Surdo's examination report received in my office on August 26, 2004 is attached. (See Exhibit M).

29.     On August 24, 2004, one day after the IME, I contacted Ms. Walker and informed her of the results of the exam and the return to work date, August 23, 2004, provided by the IME doctor. In response, Ms. Walker stated that she could not return to work because she already had scheduled doctors' appointments and treatment, particularly injections. I then advised Ms.

Walker that we could accommodate physical restrictions/limitations and/or doctors' appointments, if any. She again declined to return to work due to appointments and treatment. I then informed her that she was expected to return to work the next day as we could discuss accommodations. Nevertheless, Ms. Walker did not agree to return to work, even in a limited or part-time capacity.

30.     Thereafter, I advised Ms. Pinto of the results of the IME and informed her of the conversation I had previously with Ms. Walker wherein she stated that she would not be returning to work.

31.     By August 30, 2004, Ms. Walker still had not returned to work, though she had been released to do so for a full week. Ms. Walker did not notify me that she was able to work and perform the essential functions of her position with or without restrictions nor did she request an accommodation for any alleged disability. Ms. Walker never requested a personal leave of absence.

32.     Throughout, I made Ms. Pinto aware of Ms. Walker's failure to return to work and her failure to request an accommodation or, alternatively, her lack of a request for a leave beyond August 23, 2004. Ms. Pinto had previously informed me that the Company needed to cut costs. A first step was to not fill vacant positions. Ms. Pinto also had informed me that a decision had been made in the middle of August, prior to Ms. Walker's IME, in an effort to further reduce costs that there would be a company-wide reduction in force. Specifically, according to Ms. Pinto, in the Finance Department, a temporary clerk's position was set to be eliminated. However, after the Company became aware of Ms. Walker's failure to return to work despite being released to work full-time regular duty, the decision of which position to eliminate was reconsidered. On or about August 30, 2004, I learned that it was determined that

-7-

instead of eliminating the clerk position which was filled by an active employee, Ms. Walker's position would be eliminated.

34.     Accordingly, on August 30, 2004, I advised Ms. Walker in a certified letter that due to business necessity, the Company no longer had a job available but that when she did decide to return to work, available openings would be assessed to determine whether a position for which she was qualified was available. A copy of the letter is attached. (See Exhibit N).

35.     As Benefits Manager, I had no role in the decision to reduce the job force at the Company nor did I have any input in the decision to eliminate Ms. Walker's position in the Finance Department.

36.     At no time did I harass Ms. Walker. Any telephone calls made to Ms. Walker were pursuant to my position as the Company's Benefits Manager.

37.     It is my understanding that the Company considered Ms. Walker a very good employee and had wanted her to return to work.

38.     To date, Ms. Walker has never contacted me or anyone else at the Company which I am aware of to discuss open positions for which she may be qualified.

_Ann C. Hines_

Ann C. Hines, Benefits Manager

SWORN TO AND SUBSCRIBED before me this 16th day of August, 2007.

_Anita F. Garvey_

Notary Public
My Commission Expires:_____

ANITA F. GARVEY
Notary Public - State of Delaware
My Comm. Expires Aug. 18, 2008

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2007, I electronically filed the foregoing Affidavit of

Ann C. Hines with the Clerk of Court using CM/ECF which will send notification of such filing

to the following and on October 4, 2007, hand delivered copies of the same to:

> Vernette Walker
> 29 Richard Road
> New Castle, Delaware  19720
> *Pro Se* Plaintiff

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Lori A. Brewington (#4522)
Brewington@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
(302) 651-7700
Attorneys for Defendants

# EXHIBIT A

POSITION DESCRIPTION

Job Title:  Benefits Manager

Incumbent:  Ann C. Hines

## Major Reponsibilities

> Manage medical, dental, vision and hearing benefits for
> active employees, contract haulers and retirees for The
> News Journal, Chambersburg and Salisbury.          50%

> Manage Workers' Compensation/Safety Program for The
> News Journal, Chambersburg and Salisbury.  Facilitate
> quarterly claims review including claims managers and
> workers' compensation attorney.  Attend hearings
> scheduled before Delaware Labor Board.          50%

> Prepare annual OSHA survey of Occupational Injuries.

> Perform ergonomic evaluations for entire site.

> Facilitate legal updates for department heads and
> staff.

> Handles benefit inquiries and complaints for active
> employees, contract haulers and retirees to ensure
> quick, equitable and courteous resolution. Assist with
> issues at Chambersburg and Salisbury.

> Keep managers informed of employees' disability/FMLA
> status.

> Complete quarterly Premium Statements (Unit Detail
> Report) required by Gannett Company.

> Manage Income Protection Plan (sick leave, short-term
> and long-term disability).

> Ensure Family and Medical Leave Act requirements are
> met.

> Prepare Gannett Retirement Calculation Requests for
> active and term-vested employees at The News Journal,
> Chambersburg and Salisbury.

Major Reponsibilities (Continued)

> Calculate annual premiums for retiree group medical and coordinate mailing of contributions letters.

> Calculate annual premiums for retiree group life insurance.

> Complete Gannett Company pension valuations for The News Journal, Chambersburg and Salisbury.

> Conduct pre-retirement counseling session with employees and their spouses.

> Prepare group medical contribution spreadsheet for contract haulers' tax forms.

> Process life insurance death claims for retirees.

> Conduct annual benefits reenrollment meetings for employees and contract haulers.

> Manage tuition reimbursement plan.

> Complete annual audit of Domestic Partnership Affidavits

> Complete Gannett monthly premiums statements.

> Coordinate monthly educational seminars in partnership with St. Francis Hospital, Christiana Care and local businesses.

> Coordinate annual health fair.

> Complete Blood Bank Report

> Publish quarterly Safety and Benefit Bulletins

# EXHIBIT B



The News Journal
www.delawareonline.com

**Street Address:**
950 West Basin Road
New Castle, DE 19720

**Mailing Address:**
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

CERTIFIED MAIL - SIGNATURE REQUESTED
April 30, 2004

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE  19720

Re:  Income Protection Plan

Dear Ms. Walker:

Attached is a copy of our Income Protection Plan
that covers sick pay, short-and long-term disability
benefits.

There is a 5-day elimination period before STD
benefits are available.  Sick, vacation pay or leave
without pay can be used to cover these days.  STD
benefits begin on the 6th day of absence.  **Based on
your service year of 1988, you are eligible to
receive up to 25 weeks of STD at 100% of pay..**  The
duration of benefits, of course, is solely based on
medical information, and periodic updates will be
requested.

STD benefits are considered salary continuation and
subject to all withholdings and deductions.  Payroll
would need written notification from you to stop any
deductions.

Please note that sick days and short-term disability
will be counted toward your 12-week Family and
Medical Leave (FMLA) entitlement from the first day
of continuous absence.  I have enclosed a FMLA
Certification of Health Care Provider Form and FMLA
brochure.

If you have any questions, please contact me at
(302) 324-2505.

Sincerely,


Ann C. Hines
Benefits Manager

**Fax Numbers:**
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Mc    ng: 324-2557
New.. 324-5509
Retail: 324-5518



**GANNETT**

## INCOME PROTECTION PLAN

Gannett's Income Protection Plan is a three-part program designed to provide you with a continuing income if you are unable to work for medical reasons. The program's three components are:

- Sick pay
- Short-Term Disability
- Long-Term Disability

## ABOUT THE COST

Gannett pays the entire cost of the Income Protection Plan.

## WHEN YOU ARE ELIGIBLE

As a regular, full-time employee, you are covered under the Sick Pay component as of your date of hire. Participation in the Short-Term Disability component commences the first of the month following six months of continuous employment. Coverage under the Long-Term Disability Plan is effective the January 1 following six months of employment.

## HOW THE INCOME PROTECTION PLAN WORKS IF YOU ARE SICK

Your Income Protection Plan benefits are based on your salary and length of service.

- Sick Pay. During your first year of employment (from date of hire to your first January 1) you will earn one sick day for every twenty days worked, up to seven days. Then on each January 1, you will be granted seven sick days for that calendar year. Sick pay will pay 100% of your base salary for up to seven sick days each calendar year. This is intended for occasional illnesses. Absences exceeding five consecutive working days will be covered under the Short-Term Disability program after the fifth day absent. Unused sick days do not carry over from one year to the next. Earned sick days may also be used to care for ill or injured family members.

- **Short-Term Disability** benefits commence after a one week waiting period (five working days). During this waiting period, you will be covered by your sick pay benefits. (If you have used all seven sick days, available vacation days may be used.)

  If your illness is expected to last longer than five consecutive working days, you will need to complete a Claim for Disability Benefits (available from the Corporate benefits office). The claim form includes a section to completed by your physician indicating the nature of your condition, illness or injury and the length of time you are expected to be absent from work. Since short-term disability continues until you are medically fit to return to work, a physical examination or periodic reports from your attending physician may be requested in order to commence or continue payment of benefits. After the five day waiting period and approval of your claim, your short-term disability benefits will be paid by the following schedule:

| Service: | First: <br> Weeks at 100% of Salary | Then: <br> Weeks at 60% of Salary* |
|---|---|---|
| Hire to 1st January | None | None |
| 1-2   calendar years | None | 25 weeks |
| 3-5   calendar years | 5 weeks | 20 weeks |
| 6-8   calendar years | 10 weeks | 15 weeks |
| 9-11  calendar years | 15 weeks | 10 weeks |
| 12-14 calendar years | 20 weeks | 5 weeks |
| 15    calendar years | 25 weeks | 0 weeks |

  \*      Benefits are determined using base pay and sales commissions, if applicable.

Note: Short-term disability payments are reduced by any other disability benefits payable to you through worker's compensation and/or state disability laws. Maternity-related disabilities are paid in accordance with any other medical condition.

At its discretion, the Company may require proof of illness either in written form from your personal physician or through an examination by a company-selected physician, before payments under this plan are authorized.

- **Long-Term Disability.** Protection is effective the January following six months of employment. The Long-Term Disability Plan pays a benefit of 60 percent of your total compensation (including commissions and executive incentive bonuses, if applicable) commencing 26 weeks after the onset of your illness or injury. This coincides with the end of your short-term disability coverage. A complete description of this plan is contained in the Gannett Long-Term Disability brochure.



**The News Journal**
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**April 30, 2004  CERTIFIED MAIL – SIGNATURE REQUESTED**

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE   19720

Re:  Family and Medical Leave

Dear Ms. Walker:

We have been informed of your need for Family and Medical Leave.  Under the Family and Medical Leave Policy, you are eligible to take up to 12 weeks of unpaid leave per year for your own serious health condition. I have taken the liberty of forwarding information on the News Journal's Family and Medical for your review.  Also enclosed is a Physician's Certification Form.  Please have your doctor complete the enclosed Certification Form and **return it to me on or before May 15, 2004.**

During your approved family leave, your benefits will continue uninterrupted on the same basis as those available to you as an active employee.  You may elect to continue your health insurance and supplemental life coverage, at the current level and subject to all current provisions of the plans, while on leave. If you choose to do so, you must remit to the Company each month your current monthly premium contributions.  If you decide not to continue your coverage during your leave, coverage will be discontinued and you will be able to reinstate your coverage upon return from leave.  Any medical and life claims incurred during the period that coverage as been discontinued, however, will not be reimbursable from the Company's plans.

**If you elect to continue your health insurance coverage during your leave, but do not return to work at the conclusion of your leave, you will be obligated to repay the Company for premium contributions we made in order to continue your coverage during the leave period.** (This repayment obligation will not apply if your leave was to care for a seriously ill spouse, parent, child or yourself, if you are unable to return to work because of the continuation, recurrence or onset of a serious medical condition of your spouse, parent, child or yourself, or because of other reasons beyond your control.  In those cases, you may be required to provide verifying medical information).

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Market g: 324-2557
News: 324-5509
Retail: 324-5518





**The News Journal** Worth every minute
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

Ms. Vernette Walker
Page 2
April 30, 2004

Your participation in the Gannett 401(k) Savings Plan and Gannett Spending Account will be suspended during your leave, and will resume when you return to work (if applicable).

Please disregard any of the above benefits that do not pertain to you. Otherwise, you should remit payments to my attention: c/o The News Journal Company, 950 West Basin Road, New Castle, DE 19720.

Upon return from an approved family leave absence, you will be restored to your original or equivalent position with equivalent pay, benefits, and other employment terms.

If you have any questions regarding the above information, please do not hesitate to contact me at (302) 324-2505. Please acknowledge that you have received and reviewed this information by signing below and returning a copy to me.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
M     ng: 324-2557
News: 324-5509
Retail: 324-5518

_____        _____
Employee's Signature                     Date


**GANNETT**



Your Gannett Benefits

FAMILY AND
MEDICAL LEAVE

The Gannett Family and Medical Leave policy was implemented January 1, 1993 to allow eligible employees to take up to 12 weeks of unpaid leave per year for their own serious health condition or to provide care for the employee's newborn child, newly-adopted child or child, spouse or parent with a serious health condition.

The following questions and answers provide information about the major provisions of the policy. Please read the brochure carefully and keep it for future reference. Detailed information and Request for Family and Medical Leave forms are available from your Personnel Representative.

## Who is eligible?

If you are a full-time employee, you are eligible for family and medical leave following completion of 90 days of employment. If you are a part-time employee scheduled to work 1,250 hours a year or more (an average of 24 hours per week), you are eligible to participate following completion of one year of service.

## What is family and medical leave?

"Medical Leave" is defined as leave that is taken by the employee who is unable to perform the functions of his or her position because of a serious health condition or by the employee to care for a spouse, child or parent who has a serious health condition.

"Family Leave" is defined as leave that is taken to care for your newborn child or a child recently placed with you for adoption or foster care.

## When can I take family and medical leave?

You may use family and medical leave for one or more of the following reasons:

- The birth of a child;
- To care for a newborn child;
- To care for a newly-adopted child or child placed in your home for foster care;
- To care for a spouse, child or parent (but not parent-in-law) who has a serious health condition; or
- Your own serious health condition. (See also "How do family and medical leave and short-term disability coverage work together?")

Family leave to care for a newborn child or for adoption or foster care placement of a child must be completed within 12 months of the birth, adoption or placement.

## How much leave is available under the Family and Medical Leave policy?

Eligible employees may take up to 12 weeks of family and medical leave in any 12-month period. If you and your spouse are both employed by Gannett, you may take up to a combined total of 12 weeks of family leave to care for your newborn child or a child recently placed with you for adoption or foster care. This limitation

does not apply to the care of a spouse, child or parent with a serious health condition, or to the employee's own serious health condition. For example, if you and your spouse each take two weeks of family leave to care for a newborn child, you will each have 10 weeks remaining within the 12-month period to use for other family medical leave, if necessary.

## What if my state has a more generous policy (than Gannett) for family and medical leave?

State or local laws that provide greater family or medical leave rights than either Gannett's policy or the Family Medical Leave Act (FMLA) take precedence. Information is available from your Personal Representative.

## What happens to my pay and benefits while on leave?

During the leave period your basic life insurance and health insurance continue uninterrupted. You must, however, arrange to continue your contributions to health insurance and supplemental life insurance programs if applicable if you wish to continue coverage. Participation in the 401(k) Savings Plan and Gannett Spending Account (if eligible is suspended during unpaid leave, but may be resumed without penalty when you return to active employment. Service is considered uninterrupted for purposes of calculating pension and vacation and sick leave eligibility upon your return from family and medical leave. However, you do not accrue any vacation or sick days during the period you are out on family and medical leave.

## What happens upon return?

When you return from family and medical leave, you will be reinstated in your prior job or to an equivalent position with equivalent pay, employment benefits and other terms and condition of employment. If you fail to return to work after your leave has expired (and have not received approval for continuation of leave under Gannett's personal leave of absence policy), you will be considered to have voluntarily resigned.

In addition, if you don't return to work after your family and medical leave has expired for reasons other than the onset, continuation or recurrence of a serious health condition of yourself or your parent, child or spouse or other circumstances beyond your control, Gannett will require repayment of the company contribution to your medical insurance premiums paid during the leave.

## Must family and medical leave be taken all at once, or can it be used intermittently?

Medical leave in essence necessitated by a serious health condition or the treatment of a serious health condition may be taken intermittently or on a reduced-time basis (e.g. separate blocks of time, by working fewer days in a week, or by working fewer hours in a day), but only if such a schedule is needed for medical reasons (including care of and psychological comfort to immediate family members suffering serious health conditions or treatment

thereof). In the case of caring for a new-born, adopted or foster child, intermittent family leave or a reduced time schedule requires approval by the company. Our consideration of such requests will include several factors, such as length of the requested leave, the nature of your job, your work schedule and our business needs.

## What is a "serious health condition?"

A "serious health condition" is an illness, injury, impairment or physical or mental condition requiring either in-patient care or continuing treatment by a health care provider.

By way of example, "continuing treatment by a health care provider," includes any of the following:

• inability to perform regular daily activities due to the serious health condition of more than three consecutive calendar days plus continuing treatment by a health care provider including prescription drugs or therapy;

• any period of incapacity due to pregnancy or for pre-natal care;

• any period of incapacity or treatment for a chronic serious health condition (such as cancer and diabetes).

Unless complications arise, the common cold, flu, upset stomach, headaches, routine dental problems and cosmetic treatments do not meet the definition of "serious health condition."

## How do family and medical leave and short-term disability coverage work together?

For your own illness or disability you may be eligible for both family/medical leave and sick pay or short-term disability. Absences which qualify for both sick pay/short-term disability and family/medical leave will be counted toward both benefits and the family/medical leave will run concurrent with any sick leave or short-term disability benefits that may be available to you. For example: If during a 12-month period you are eligible for and take five consecutive days sick leave and 10 days of short-term disability benefits, you will be considered to have used three weeks of family/medical leave and will be eligible only for an additional nine weeks of family/medical leave.

Effective January 1, 2001, maternity and maternity-related disability will run concurrently with Family and Medical Leave from the first day of absence; the same is any other disability.

If your length of service or employment status does not entitle you to sufficient sick days or short-term disability to cover the full duration of an illness or injury, you may take whatever paid sick days or short-term disability you have available and then take additional unpaid leave under the FMLA policy up to a total of 12 weeks.

If you request family and medical leave, you are not required to use any paid vacation or personal leave as part or all of the 12-week period. For example: You may want to use 12 weeks unpaid family leave to care for a sick parent and, upon return to employment, may subsequently use earned vacation time for some other purpose. Employees on family and medical leave have the flexibility of using some or all of their earned vacation to reduce the period of unpaid leave, if they wish. However, total time away may not exceed 12 weeks and arrangements to take earned vacation as part of the requested family and medical leave must be made at the time the leave is requested.

## Does time away from work for a work-related illness or injury payable under workers' compensation count toward family and medical leave?

Yes, if the illness or injury qualifies as a "serious medical condition." Just as any sick leave or short-term disability days taken count toward the 12-week family and medical leave benefit, any time away from the job for a work-related illness or injury payable under Workers' Compensation will reduce the amount of family and medical leave available within a 12-month period.

## How to request family and medical leave

Contact your Personnel Representative for a Family and Medical Leave Request form. The form includes the reason for the leave and the date you expect to return to work.

If your leave is for health reasons, you may be required to provide certification from a health care provider of the health condition involved and, if applicable, verification that you are needed to care for the family member and for how long. At its discretion, the Company may require, at its own expense, such certification from a health care provider of its own choosing.

## When should notice of family and medical leave be given?

While not all situations regarding family and medical leave are foreseeable, you should give at least 30 days notice of your intent to use family and medical leave when possible (i.e., for birth of a child, adoption, foster placement, or planned medical treatment of yourself or a family member). When need for leave is unexpected, provide notice as soon as possible.

NOTE: Issues or questions not covered by this policy statement will be administered consistent with applicable state and federal laws.

**ATTACHMENT 6**

# EXHIBIT C

Exhibit C





**Street Address:**
950 West Basin Road
New Castle, DE 19720

**Mailing Address:**
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

**CERTIFIED MAIL - SIGNATURE REQUESTED**
May 13, 2004

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE  19720

Re:  Claim for Disability Benefits

Dear Ms. Walker:

Attached is a Claim for Disability Benefits form.
Please have your physician complete the doctor's
statement and return the form on or before May 28,
2004.

If you have any questions, please contact me (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Enclosure(s)   (2)

$35 charge

Doncos

**Fax Numbers:**
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
New   324-5509
Refc.   24-5518



# EXHIBIT D

.



# CLAIM FOR DISABILITY BENEFITS

Return to:  The News Journal
Attn: Ann C. Hines
950 West Basin Road
New Castle, DE 19720

## EMPLOYEE'S STATEMENT

Name: Vernette Walker
*(FIRST, M.I., LAST)*

Address: 29 Richard Rd                          Apt. No.:

City: New Castle                    State: DE    Zip: 19720

Phone: (302) 324-9175    SSN: 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    Age: 45

My disability was caused by or arose from the use or operation of a motor vehicle.................... ⊙ Yes ☐
No

My disability is (If injury, also state how, when, and where it occurred)
Leg neck back left

I was first absent from work because of my disability on 4/27/04

Since that date, I have worked for wages: ☐ Yes ☒ No If yes, give date(s):

Vernette Walker                          5/18/04
EMPLOYEE'S SIGNATURE                     DATE

## DOCTOR'S STATEMENT

### I.   HISTORY:

a.   When did symptoms first appear or accident happen?...............................Date: 4
4/27/04

b.   Date patient ceased work because of disability...............................Date:
4/27/04

c.   Has patient ever had same or similar condition? ...............................☒ Yes ☐ No
If "Yes", state when and describe ___previous injury___

d   Is condition due to injury or sickness arising out of patient's employment?.............☐ Yes ☒ No    ☐
Unknown
new MVA

### 2.   DIAGNOSIS *(including any complications):*

a.   Diagnosis (including any complications):

Cervical & Lumbosacral Strain & Sprain

b. Subjective symptoms: _neck & back pain_

c. Objective findings (including X-rays, EKG's, laboratory data and any clinical findings):

_muscle spasm_

## 3. DATES OF TREATMENT

a. Date of first
visit............................................................................ 5 / 5 / 04

b. Dates of last
visit............................................................... 5 / 5 / 04 – sec # 4

c. Frequency of Treatment .....................☐ Weekly  ☐ Monthly  ☐ Other (specify): 3 wk Plg

## 4. NATURE OF TREATMENT *(including surgery and medications prescribed, if any):*

Therapy and daily 3 x wh thru 3 x wh for 1 wh

## 5. PROGRESS

a. Has Patient:    ☐ Recovered   ☐ Improved   ☒ Unchanged   ☐ Retrogressed

b. Is Patient:     ☒ Ambulatory   ☐ House Confined   ☐ Bed Confined   ☐ Hospital Confined

c. Has patient been hospital confined?      ☐ Yes  ☒ No

If "Yes", give name and address of hospital:

Confined From:  ____/____/____          Through: ____/____/____

## 6. PROGNOSIS *(all questions must be answered):*

|  | | Patient's Job | Any Other Work |
|---|---|---|---|
| a. | Is patient now totally disabled? | ☒ Yes ☐ No | ☒ Yes ☐ No. |
| b. | What duties of patient's job is he/she incapable of performing? | | |

_all_

c. Do you expect a fundamental or marked change in the future?    ☒ Yes ☐ No    ☐ Yes ☐ No

1. If yes, when will patient recover sufficiently to perform duties?

   Patient's Job:      Date ____/____/____   Indeterminate

   Any Other Work: Date ____/____/____   Indeterminate

2. If no, please explain: _____

7. **REMARKS:** Well reevaluate on 5-26-04

Physician's Name *(please print)*: Craig D. Sturburg MD    Phone: 302-764-0271

Address: 700 Lea Blud, Suite 102    Suite No. 102

City: Wilmington    State: DE    Zip: 19802

PHYSICIAN'S SIGNATURE    5-19-04    DATE

BARRY L. BAKST, D.O.
ARNOLD B. GLASSMAN, D.O.
ANNE C. MACK, M.D.
RACHAEL SMITH, D.O.
☐ 700 LEA BOULEVARD • SUITE 102 • WILMINGTON, DE 19802 • 302-753-0680
☐ 700 LEA BOULEVARD • SUITE B • NEWARK, DE 19713 • 302-832-8653
☐ 67 OMEGA DRIVE • BUILDING 210 • NEWARK, DE 19702 • 302-623-8783
☐ 2600 GLASGOW AVENUE • SUITE B • WILMINGTON, DE 19810 • 302-750-8848
☐ 2006 FOULK ROAD • SUITE 11-11 • DOVER, DE 19901
☐ 200 WHALER EAST STREET • SMYRNA, DE 19977 • 302-389-0225
☐ 29 N. EAST STREET • SMYRNA, DE 19977
☐ 29 N. EAST STREET

CRAIG D. STERNBERG, M.D.
STEPHEN M. BENECK, M.D.
ASIF P. UPADHYAY, D.O.
GINGER CHIANG, D.O.

NAME _Vernetta Walker_                          DATE _5-26-04_

℞ (Please Print)

On to work for next
4 whs will reevaluate
at the t time
next visit 6/23/04

REFILL _____ TIMES

SUBSTITUTION PERMITTED
IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, PRESCRIBER MUST
SPECIFY "DISPENSE AS WRITTEN" OR "BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

01-APR-04

# EXHIBIT E

ALL-STATE LEGAL 800-222-0510  E3468  RECYCLED

**Rumpf, Shelly**

| | |
|---|---|
| **From:** | Hines, Ann |
| **Sent:** | Wednesday, May 05, 2004 4:24 PM |
| **To:** | Rumpf, Shelly; Hines, Ann |
| **Cc:** | Walburn, Erich; Pinto, Dolores |
| **Subject:** | Vernette Walker |
| **Importance:** | High |

Vernette Walker will be out of work for the next three weeks (next doctor's appointment in 3 weeks).

# EXHIBIT F

ALL-STATE LEGAL® 800-222-0510 · FORM · RECYCLED

## Green, Kelly

| | |
|---|---|
| **From:** | Rumpf, Shelly [srumpf@wilmingt.gannett.com] |
| **Sent:** | Tuesday, August 01, 2006 1:58 PM |
| **To:** | Green, Kelly |
| **Subject:** | FW: Vernette Walker |
| **Importance:** | High |

Shelly Rumpf

Credit Manager

The News Journal (Wilmington Site)

New Castle, DE 19720

302-324-2519 ph

302-324-2554 fax

---

**From:** Hines, Ann
**Sent:** Friday, May 28, 2004 5:09 PM
**To:** Rumpf, Shelly; Walburn, Erich; Hines, Ann
**Cc:** Pinto, Dolores
**Subject:** RE: Vernette Walker
**Importance:** High

No. She's out for an additional four (4) weeks  Next doctor's visit 6/23/04

-----Original Message-----

**From:**  Rumpf, Shelly

**Sent:**  Friday, May 28, 2004 4:35 PM

**To:**   Hines, Ann

**Subject:**   RE: Vernette Walker

Hi Ann,

Is Vernette expected back Tuesday?

-----Original Message-----

# EXHIBIT G

## Copy Center

| | |
|---|---|
| **From:** | Hines, Ann [AHINES@wilmingt.gannett.com] |
| **Sent:** | Thursday, August 03, 2006 2:08 PM |
| **To:** | Green, Kelly |
| **Cc:** | Hines, Ann |
| **Subject:** | FW: Vernette Walker |
| **Importance:** | High |

-----Original Message-----
**From:** Hines, Ann
**Sent:** Thursday, July 27, 2006 6:42 PM
**To:** Pinto, Dolores
**Cc:** Hines, Ann
**Subject:** FW: Vernette Walker
**Importance:** High

-----Original Message-----
**From:** Hines, Ann
**Sent:** Tuesday, June 01, 2004 12:18 PM
**To:** Walburn, Erich; Rumpf, Shelly; Hines, Ann
**Cc:** Pinto, Dolores
**Subject:** RE: Vernette Walker
**Importance:** High

Due to severe neck and back pain and muscle spasms, Vernette is unable to sit or stand for prolonged periods

　　-----Original Message-----

　　**From:** Walburn, Erich

　　**Sent:** Monday, May 31, 2004 9:58 AM

　　**To:** Hines, Ann

　　**Cc:** Pinto, Dolores; Rumpf, Shelly

　　**Subject:** RE: Vernette Walker

　　Ann, Did you follow up on the doctor's info yet that you were going to check on? Thanks so much.

　　Erich

　　　　-----Original Message-----

　　　　**From:** Hines, Ann

# EXHIBIT H

DEA # _____

BARRY L. BAKST, D.O.          CRAIG D. S___BERG, M.D.
ARNOLD B. GLASSMAN, D.O.      STEPHEN M. BENECK, M.D.
ANNE C. MACK, M.D.            ASIT P. UPADHYAY, D.O.
SUSAN T. DEPOLITI, M.D.       YILI ZHOU, M.D.

700 LEA BOULEVARD • SUITE 102 • WILMINGTON, DE 19802 • 302-764-0271
87 OMEGA DRIVE • BUILDING B • NEWARK, DE 19713 • 302-733-0980
2600 GLASGOW AVENUE • SUITE 210 • NEWARK, DE 19702 • 302-832-8894
2006 FOULK ROAD • SUITE B • WILMINGTON, DE 19810 • 302-529-8783
830 WALKER ROAD • SUITE 11-1 • DOVER, DE 19901 • 302-730-8848

NAME _Vernette Walker_____

ADDRESS _____ DATE _6-23-c5_

℞ (Please Print)

Lexapro 10mg
Disp #60
Sig: i T PO bid

REFILL _2_ TIMES

SUBSTITUTION PERMITTED

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, PRESCRIBER MUST HANDWRITE
'BRAND NECESSARY' OR 'BRAND MEDICALLY NECESSARY' IN THE SPACE BELOW.

11-APR-03                TR0030411_100502320-4_00_31548_0002

---

DEA # _____

BARRY L. BAKST, D.O.          CRAIG D. STERNBERG, M.D.
ARNOLD B. GLASSMAN, D.O.      STEPHEN M. BENECK, M.D.
ANNE C. MACK, M.D.            ASIT P. UPADHYAY, D.O.
SUSAN T. DEPOLITI, M.D.       YILI ZHOU, M.D.

700 LEA BOULEVARD • SUITE 102 • WILMINGTON, DE 19802 • 302-764-0271
87 OMEGA DRIVE • BUILDING B • NEWARK, DE 19713 • 302-733-0980
2600 GLASGOW AVENUE • SUITE 210 • NEWARK, DE 19702 • 302-832-8894
2006 FOULK ROAD • SUITE B • WILMINGTON, DE 19810 • 302-529-8783
830 WALKER ROAD • SUITE 11-1 • DOVER, DE 19901 • 302-730-8848

NAME _Vernette Walker_____

ADDRESS _____ DATE _6-23-c7_

℞ (Please Print)

Out of med for next
1 mth. Will reevaluate
at that time,

REFILL _____ TIMES

SUBSTITUTION PERMITTED

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, PRESCRIBER MUST HANDWRITE
'BRAND NECESSARY' OR 'BRAND MEDICALLY NECESSARY' IN THE SPACE BELOW.

11-APR-03                TR0030411_100502320-4_00_31548_0002

---

DEA # _____

BARRY L. BAKST, D.O.          CRAIG D. STERNBERG, M.D.
ARNOLD B. GLASSMAN, D.O.      STEPHEN M. BENECK, M.D.
ANNE C. MACK, M.D.            ASIT P. UPADHYAY, D.O.
SUSAN T. DEPOLITI, M.D.       YILI ZHOU, M.D.

700 LEA BOULEVARD • SUITE 102 • WILMINGTON, DE 19802 • 302-764-0271
87 OMEGA DRIVE • BUILDING B • NEWARK, DE 19713 • 302-733-0980
2600 GLASGOW AVENUE • SUITE 210 • NEWARK, DE 19702 • 302-832-8894
2006 FOULK ROAD • SUITE B • WILMINGTON, DE 19810 • 302-529-8783
830 WALKER ROAD • SUITE 11-1 • DOVER, DE 19901 • 302-730-8848

NAME _Vernette Walker_____

ADDRESS _____ DATE _6-23-c7_

℞ (Please Print)

Skelaxin 800mg
Disp #90
Sig: i T PO tid

REFILL _2_ TIMES

SUBSTITUTION PERMITTED

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, PRESCRIBER MUST HANDWRITE
'BRAND NECESSARY' OR 'BRAND MEDICALLY NECESSARY' IN THE SPACE BELOW.

# EXHIBIT I



The News Journal
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

CERTIFIED MAIL - SIGNATURE REQUESTED
July 1, 2004


Ms. Vernette Walker
29 Ricvhard Road
Chelsea Estates
New Castle, DE    19720

Re:  Family and Medical Leave Recertification

Dear Ms. Walker:

Enclosed you will find a Certification of Health Care
Provider Form that must be completed by your treating
physician.  Please have the physician complete the
form and return it to me in the enclosed, self-
addressed envelope.

The completed Physician Certification Form must be
returned to me on or before July 16, 2004.

Please contact me at (302) 324-2505 if you have any
questions.

Sincerely,

Ann C. Hines
Benefits Manager

Enclosure (2)

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Marketing: 324-2557
Ne--: 324-5509
R.     324-5518



# EXHIBIT J



www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

CERTIFIED MAIL - SIGNATURE REQUESTED
July 1, 2004

Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, De    19720

Re:  Family and Medical Leave Entitlement

Dear Ms. Walker:

Please be advised that your twelve (12) week
entitlement under the Family and Medical Leave Act of
1993 will end as of July 20, 2004.  It is our
understanding that you remain unable to return to
work.  If you remain unable to return to work as of
July 20, 2004, business necessity requires us to fill
your position as Credit Clerk.

If you have any questions, please contact me at (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
N    ing: 324-2557
    News: 324-5509
    Mail: 324-5518

GANNETT

**SENDER: COMPLETE THIS SECTION**

- ☑ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☑ Print your name and address on the reverse so that we can return the card to you.
- ☑ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vernette Walker
29 Richard Rd.
Chelsea Estates
New Castle, DE
19720

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by ( Printed Name )        C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7002 0510 0000 3770 1474

PS Form 3811, August 2001        Domestic Return Receipt        102595-01-M-0381

---

CERTIFIED MAIL

7002 0510 0000 3770 1474

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Vernette Walker
Street, Apt. No.;  29 Richard Rd.
or PO Box No.
City, State, ZIP+4  New Castle DE 19720

PS Form 3800, January 2001        See Reverse for Instructions

# EXHIBIT K

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



*(When completed, this form goes to the employee, Not to the Department of Labor.)*

OMB No.: 1215-181
Expires:   07/31/04

1. Employee's Name

Vinette Walker

2. Patient's Name (*If different from employee*)

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) _____  (2) __X__  (3) _____  (4) _____  (5) _____  (6) _X_ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Severe neck & back pain subsequent to
motor vehicle accident on 4-27-04

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

4-27-04

 b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

Unable to work

If yes, give the probable duration: Indeterminate

 c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

---

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1999

6.  a.  If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

*Indeterminate*

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

*Indeterminate*

b.  If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

c.  If a **regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

*Medication, injection*

7.  a.  If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

*Unable to work*

b.  If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c.  If neither a. nor b. applies, is it necessary for the employee to be absent from **work for treatment**?

8.  a.  If leave is required to care for a **family member** of the employee with a serious health condition, **does the patient** require assistance for basic medical or personal needs or safety, or for transportation?

    b.  If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

    c.  If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

_____          $PM_6R/MD$
Signature of Health Care Provider                        Type of Practice
                                                                          027
7cc Len Blvd, Suite (02                             3c2-764-26(i)
Address                                                       Telephone Number
Wilmington, DE 19802                               7-14-04
                                                                     Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____          _____
Employee Signature                                        Date

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   **Inpatient care** (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

      (1) **Treatment[3] two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

      (2) **Treatment** by a health care provider on **at least one occasion** which results in a **regimen of continuing treatment[4]** under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4. Chronic Conditions Requiring Treatments 

   **A chronic condition** which:

      (1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

      (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

      (3) May cause **episodic** rather than a continuing period of incapacity[2] (*e.g*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

   A period of **Incapacity[2]** which is **permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for **restorative surgery** after an accident or other injury, **or** for a condition that would likely result in a **period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment**, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

---

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

*DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.*



BARRY L. BAKST, D.O.
CRAIG D. STERNBERG, M.D.
ARNOLD B. GLASSMAN, D.O.
ANNE C. MACK, M.D.
STEPHEN M. BENECK, M.D.
GINGER CHIANG, M.D.

2006 FOULK ROAD, SUITE B          (302) 529-8783
WILMINGTON, DE 19810-3544

700 LEA BOULEVARD, SUITE 102      (302) 764-0271
WILMINGTON, DE 19802-2541

NAME _Vernette Walker_          AGE ___
ADDRESS _____             DATE _7-14-04_

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

Our office will
see this patient will
reevaluate at that
time. Wed July 11, 2004
                        400

Refill _____ times _____

Substitution Permitted

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, THE
PRESCRIBER MUST HAND WRITE "BRAND NECESSARY" OR
"BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

4DGP0271183

# EXHIBIT L



**The News Journal**
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

August 18, 2004


Concentra Medical Center
4110 Stanton-Ogletown Road
Newark, DE  19713
Attn:  Linda Surdo, MD

Re:  Vernette Walker - SSN 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


Dear Dr. Surdo:

We have scheduled an appointment at Concetra Medical
Center for News Journal employee Vernette Walker. The
appointment is 1:00 P.M. on Friday, August 20, 2004.

The purpose of this appointment is to determine
Vernette's fitness for duty.  Patient's vehicle was
rear-ended by another vehicle on April 27, 2004.
There has been no significant improvement since the
accident.  Attached are copies of her medical records
for your review and her job description.  Please note
that her job is a ``light'' duty position and we can
accommodate physical restrictions/limitations.

Please provide us with a diagnosis, prognosis and a
return to work plan including any physical
restrictions/limitations.

Please contact me at (302) 324-2505 if you have any
questions.

Sincerely,

Ann C. Hines
Benefits Manager


Ach
Enclosure

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
Mailing: 324-2557
Ne     324-5509
Retail: 324-5518



**UPS Next Day Air**
**UPS Worldwide Express**

S h i p p i n g   D o c u m e n t

See instructions on back. Call 1-800-PICK-UPS (800-742-5877) for additional information.

**TRACKING NUMBER** 1Z 199 421 22 1005 097 8

**1 SHIPMENT FROM**

SHIPPER'S UPS ACCOUNT NO.
**199421**

REFERENCE NUMBER

NAME
*Ann C. Hiness*          302-324-2500

COMPANY
**THE NEWS JOURNAL CO**

STREET ADDRESS
**950 W BASIN RD**

CITY AND STATE          ZIP CODE
**NEW CASTLE**     DE    **19720-1008**

**2 EXTREMELY URGENT DELIVERY TO**

NAME                    TELEPHONE
*Linda Surdo   302 738 0103*

COMPANY
*Concentra Med. Center*

STREET ADDRESS                    DEPT./FLR.  Residential
*4110 Stanton · Ogletown Road*

CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)  ZIP CODE
*Newark     DE    19713*

---

**3 WEIGHT**  ENTER "LTR" IF LETTER
**DIMENSIONAL WEIGHT** If Applicable

SHIPPER'S COPY

CHARGES

**4 TYPE OF SERVICE**
[X] NEXT DAY AIR
[ ] EXPRESS (INTL)

FOR WORLDWIDE EXPRESS SHIPMENTS
Mark an "X" in this box if shipment only contains documents of no commercial value.
[ ] DOCUMENTS ONLY

**5 OPTIONAL SERVICES**
[ ] SATURDAY PICKUP  See instructions.
[ ] SATURDAY DELIVERY  See instructions.

[ ] INSURED VALUE
Contents are automatically protected up to $100. For insured value over $100, see instructions.
$ _____   AMOUNT

[ ] C.O.D.
If C.O.D., enter amount to be collected and attach completed UPS C.O.D. tag to package.
$ _____   AMOUNT

**6 ADDITIONAL HANDLING CHARGE**
An Additional Handling Charge applies for certain items. See instructions.
$ _____

**TOTAL CHARGES**
$ _____

**7 METHOD OF PAYMENT**
[ ] BILL SHIPPER
[ ] BILL RECEIVER  Domestic Only
[ ] BILL THIRD PARTY
[ ] CREDIT CARD  American Express Diner's Club Discover MasterCard Visa
[ ] CHECK

RECORD ACCOUNT NO. IN SECTION 8

**8** RECEIVER'S / THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.    EXPIRATION DATE

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE          ZIP CODE

**9 SHIPPER'S SIGNATURE** X *Ann C. Hiness*

DATE OF SHIPMENT

0101911202609  6/00  S

# EXHIBIT M

Exhibit M

Phone: (302) 738-0103    Fax: (302) 738-6812

# Return to Work Evaluation

| | | | |
|---|---|---|---|
| Patient: Vernette Walker | Address: 29 Richard Rd | Employer: News Journal | Contact: Ann Heinz |
| SSN: 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 | | Address: 950 W Basin Rd | Role: HR Manager |
| DOB: 09/14/1958 | NEW CASTLE, DE 19720 | NEW CASTLE, DE 19720 | Phone: (302) 324-2505 Ext.: |
| der: F | Phone: (302) 324-9175 | Auth. by: | Fax: (302) 324-2578 |

Race:    ASIAN    BLACK    HISPANIC    INDIAN    WHITE    OTHER

Reason for evaluation: _Auto Accident 4/27/04_

☐ Occupational with other provider          ☐ Non-Occupational

Requested by: _The News Journal_

Special attention to: _Craig Steinberg_

Treating provider: _Craig Steinberg_

## Authorization for Examination

Permission is hereby granted to the authorities of Concentra Medical Centers (DE) for any examination deemed
necessary by the physician. In addition, I authorize the release of any information acquired in the course of this examination.

_Vernette Walker_                    _8/23/04_
Patient Signature                         Date

## Examination

Temp: _97-8_    Blood Pressure: _118/70_    Pulse: _84_    Ht: _53"_    Wt: _131_

Other: _job, financ dist, 1 directly, sit, keys, phones, (R) handle C_
_job description available to review_
_(none) reports available to review_

Medical History: _45 y/o Q s/p MVA 4-27-04. Pt was belted driver, rear_
_ended. She states vehicle was totalled & she was taken to ER_
_no fx's found. Since that time pt has been treated for_
_neck and back injuries c PT/meds/ s/p 2 neck injections. She states_
_MRI's were done. She also states she had work related injury_
_1999 were a while stating fell onto her and she (shoulder injury)_
_requiring surgery. She also states she became depressed as a result_

Present Complaint: _of this injury requiring antidepressant meds. Currently she_
_c/o diffuse neck and low back pain, some radiation & pain to (R) leg_
_but not to arms. Denies numbness/weakness. She has not_
_returned to work. Med - Stelazin, Buspar, T+3, Lexapro, Ambien_

Findings/Recommendations: _Pt → initially pleasant, then tearful_
_lungs) clear, cor - S₁ S₂, affect - slightly depres_
_neck → diffuse superficial tenderness c FROM_
_back → diffuse superficial tenderness; straight leg raise, WNL_
_all ext full. SLR ⊖ DTPs - WNL motor/sensory_
_r/b 4 extremity - intact. ALL 2 the tenderness, pos s/t_

Physician's Signature

_① Cervical & lumbar strain_              _Pt → may RTW s ③ by_
_② Cervical & lumbar_                       _without_
_radiculopathy_                               _restrictions_
_③ Depression_

© 1995 - 2004 Concentra Health Services, Inc. All Rights Reserved


# RETURN TO WORK EVALUATION

PATIENT _Venette Walker_

EMPLOYER _News Journal_

DATE _5/23/04_

Recommendations

Patient may return to work

_____ on regular activity without any restrictions.

_____ with the following restrictions:




_____ is not medically able to return to work at this time.

Remarks:




Signature

Printed Name

# EXHIBIT N



**The News Journal**
www.delawareonline.com

Street Address:
950 West Basin Road
New Castle, DE 19720

Mailing Address:
P.O. Box 15505
Wilmington, DE 19850

(302) 324-2500
(800) 235-9100

UPS - NEXT DAY DELIVERY
August 30, 2004


Ms. Vernette Walker
29 Richard Road
Chelsea Estates
New Castle, DE    19720

Re:  Expiration of Family & Medical Leave Entitlement

Dear Ms. Walker:

Please be advised that your Family and Medical Leave
entitlement expired on July 20, 2004.  On August 23,
2004, you underwent a fitness for duty exam that
determined you are able to return to work, full duty,
without any physical restrictions/limitations.
Effective August 30, 2004, due to business necessity,
The News Journal no longer has a job available for
you and your short-term disability benefits will
cease as of August 30, 2004.

When you feel you are able to return to work full-
time, we will review our openings to see if there is
an appropriate job available.  It is important that
you understand that **this is not a guarantee of a job.**

If you have any questions, please contact me at (302)
324-2505.

Sincerely,

Ann C. Hines
Benefits Manager

Fax Numbers:
Accounting: 324-2554
Circulation: 324-2945
Classified: 324-5511
Human Resources: 324-2578
Info Systems: 324-2969
M⸱  ng: 324-2557
Ne⸱⸱ 324-5509
Retail: 324-5518

GANNETT