## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERNETTE WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-138-MPT |
| | ) | |
| THE NEWS JOURNAL and ANN | ) | |
| HINES, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>AFFIDAVIT OF SHELLY RUMPF</u>

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) SS. |
| NEW CASTLE COUNTY | ) |

SHELLY RUMPF, does swear and affirm as follows:

1.    I am an employee and the Credit Manager in the Finance Department for The News Journal ("News Journal" or "Company"). I have been employed with the Company since January 2003.

2.    I have twenty-seven (27) years of management experience. Prior to my position as the Credit Manager in the Finance Department at the Company, I worked as a manager at a local utility company.

3.    Some of my primary job responsibilities in the Finance Department include, but are not limited to, the management of employees and managing the collection of advertisement receivables.

4.    In early 2004, there were four full-time regular[1] employees that reported to me in the Finance Department; namely, Vernette Walker ("Ms. Walker"), Joan Raser ("Ms. Raser"), Cheryl Drummond ("Ms. Drummond") and Melissa Govens ("Ms. Govens").

5.    As a credit clerk, Ms. Walker and the other credit clerks were responsible for collection and dispute resolution of our advertising receivables in all of our publications. The credit clerks had shared responsibilities and provided work support for one another. A copy of the job description for the credit clerk position is attached. (See Exhibit A). An essential function of the credit clerk position is regular attendance.

6.    On or about January 1, 2004, Ms. Govens went out on a leave of absence and failed to return. As a result, Ms. Govens' employment was terminated on February 23, 2004 and I hired a full-time temporary employee[2] to fill the void created by Ms. Govens' absence.

7.    Beginning in early 2004, several temporary employees held the temporary position of credit clerk in the Finance Department in succession of each other. Their names are Alainna Thomas ("Ms. Thomas"), Adwoa Mprengo ("Ms. Mprengo") and finally, Andrea Johnson ("Ms. Johnson").

8.    On April 27, 2004, during the business day, I received a telephone call from a police officer concerning Ms. Walker. The officer's voicemail message indicated that Ms. Walker had been involved in a car accident, that she was "okay," and that she was at the Christiana Hospital.

9.    Upon learning of Ms. Walker's involvement in a car accident, I left work immediately and went to Christiana Hospital's Emergency Room. I was concerned for Ms.

---

[1] The Company uses the term "regular" employee to identify an ongoing employee (yet still at-will) who is entitled to certain Company funded benefits.

[2] Conversely, the Company uses the term "temporary" employee to identify an employee hired for a temporary duration who is not entitled to certain Company funded benefits.

Walker and I remained with Ms. Walker at the hospital for approximately an hour until her significant other arrived. Thereafter, I returned to work.

10.    A short time after Ms. Walker's car accident, I learned that she would be out of work and that she would continue to update us on her status. At that time, Ms. Walker did not give an anticipated return to work date. As such, I was not aware of when Ms. Walker would be returning to her position in the Finance Department.

11.    I never received any information from Ms. Ann Hines, Benefits Manager at the time, or any other employee of the Company concerning an expected return to work date for Ms. Walker. Rather, approximately every four weeks or so, I would be informed by Ms. Hines that Ms. Walker was out indefinitely and would be reevaluated at her next appointment.

12.    In 2004, I was told that there was a hiring freeze and that any application request to hire an employee in my department would be denied.

13.    For the reasons set forth in paragraphs 10 and 11, I did not hire a temporary employee to complete Ms. Walker's job assignments while she was absent.

14.    During the time Ms. Walker was out of work beginning in April 2004, I performed many of her job duties. Additionally, the other credit clerks performed Ms. Walker's job duties in her absence. During this time there was a steady flow of work and as a result, Ms. Raser, Ms. Drummond and Ms. Johnson, were given permission to work during their lunch period, to come in early and to stay a little after their 5:00 p.m. departure time to complete work assignments and were paid overtime, as applicable.

15.    Specifically, and in accordance with the Company's practice, periodically between the period of April and August of 2004, Ms. Hines sent updates to me on Ms. Walker's leave of absence status. Many times the emails from Ms. Hines simply stated that Ms. Walker would be out of work for "an additional four weeks" or "an additional three weeks." For

-3-

example, on May 5, 2004, Ms. Hines sent an email to me, Dolores Pinto ("Ms. Pinto"), Vice President of Human Resources, and Erich Walburn ("Mr. Walburn"), Vice President of Finance, advising that Ms. Walker would be out of work for "the next three weeks." A copy of the email is attached. (See Exhibit B).

16.    On other occasions, if I had not yet received an update from Ms. Hines, I would contact Ms. Hines in an effort to determine when to expect Ms. Walker back to work. For example, on May 28, 2004, I sent an email to Ms. Hines to determine if Ms. Walker would be returning to work on Tuesday, June 1, 2004. Ms. Hines responded, "No, She's out for an additional four (4) weeks. Next doctor's visit 6/23/04." A copy of the email is attached. (See Exhibit C).

17.    On June 1, 2004, Ms. Hines sent another email to me which stated, "Due to severe neck and back pain and muscle spasms, Vernette is unable to sit or stand for prolonged periods." A copy of the email is attached. (See Exhibit D).

18.    On June 23, 2004, Ms. Hines sent me an another email informing me that she had received a doctor's note, dated June 23, 2004, which stated that Ms. Walker would be out of work until July 21, 2004. A copy of the email is attached. (See Exhibit E).

19.    On July 1, 2004, I received an email from Ms. Hines informing me that Ms. Walker's Family Medical Leave Act ("FMLA") entitlement would end on July 20, 2004 and that her job would no longer be protected under FMLA but that Ms. Walker could continue to be eligible to receive short term disability benefits. A copy of the email is attached. (See Exhibit F).

20.    Ms. Walker contacted me at work on two separate occasions between the period of April 27, 2004 and July, 2004. During a call in June, Ms. Walker told me that she was doing

"much better" and that she was "hopeful" to return to work after her next scheduled appointment in July.

21.    During one of our conversations, Ms. Walker and I discussed a merit increase. I told Ms. Walker that she may be entitled to a merit increase when she returned from her leave of absence. I advised Ms. Walker that pursuant to Company policy, merit increase decisions are not made while an employee is on a leave of absence. I explained that once she returned to work, her performance would be evaluated and that she would receive a merit increase, if appropriate and it would be applied retroactively.

22.    Ms. Walker did not return to work nor did she contact me after her July 2004 doctor's appointment. Since she had been so optimistic in our previous conversation, I called Ms. Walker in July 2004 to see how she was feeling. Ms. Walker responded that she was not "doing well." She told me that she was getting injections that were causing her significant pain. Then she went on to ask me for advice about what she should do next. I told her that I was the wrong person to ask but that I did think she should see a specialist since she had told me that she was not evaluated by one yet.

23.    At no time during our conversations did I recommend a particular course of treatment except as described herein. Furthermore, contrary to any allegations, I did not tell Ms. Walker that her doctors did not care about her or that she needed to force them to release her back to work.

24.    At no time during any of our conversations did Ms. Walker request an accommodation for any alleged disability. Further, at no time did Ms. Walker complain to me of discrimination or retaliation.

25.    I have not spoken to Ms. Walker since this conversation in July 2004.

26.    At no time did Ms. Walker inform me that the Company owed her payments for any unused vacation time.

27.    I have never threatened Ms. Walker nor have I given her an ultimatum concerning her return to work.

28.    On August 17, 2004, I sent Ms. Hines an email inquiring as to whether there was "any news" on Ms. Walker's return to work. In response, Ms. Hines informed me that Ms. Walker had called her that day and that she was in the process of scheduling a medical evaluation for Ms. Walker. A copy of the email correspondence is attached. (See Exhibit G).

29.    On August 20, 2004, Ms. Hines informed me via email that Ms. Walker was scheduled to attend a fitness for duty exam at Concentra Medical Center on Monday, August 23, 2004. A copy of the email is attached. (See Exhibit H).

30.    After the exam, Ms. Hines informed me that Ms. Walker was cleared to return to work regular duty without restrictions.

31.    In or around August 30, 2004, Ms. Hines advised me that although Ms. Walker was cleared to return to work regular duty, she refused to return to work with or without an accommodation.

32.    I was informed by senior management that a decision had been made on or about August 30 to eliminate one of the credit clerk positions. I was further told that because Ms. Walker was not willing to return to work, her position, rather than Ms. Johnson's, would be eliminated.

33.    I felt I needed to tell my staff that Ms. Walker would not be returning to work On September 7, 2004, I sent an email to my staff informing them that Ms. Walker would not be returning to work due to medical reasons. I did not share with the staff any information about

-6-

the elimination of her position or any of the other eliminations, as it was considered confidential. A copy of the email is attached. (See Exhibit I).

34.    I was not involved in the decision to reduce the job force at the Company nor was I involved in the decision to eliminate one of the credit clerk positions.

35.    As of August 31, 2004, the staff of credit clerks who reported to me in the Finance Department had been reduced to three positions, which were held by Ms. Johnson, the temporary employee, and Ms. Raser and Ms. Drummond, both regular employees. A copy of the Finance Department organizational chart as of August 31, 2004 is attached. (See Exhibit J).

36.    Due to changing business needs, in January 2005, we were able to increase the number of employees in the Finance Department to 3.5 full-time employees. As a result, I hired Dottie Roberto ("Ms. Roberto") on a part-time basis.

37.    In August 2005, Ms. Johnson transferred out of the temporary full-time position she held in the Finance Department. Thereafter, the duties of this position were evaluated and the temporary position was converted to a regular full-time position.

38.    In September 2005 and in accordance with Company policy, the Company posted a full-time regular credit clerk position both internally and externally by advertising in The News Journal. Subsequently, Mary Ann Phillips (Ms. Phillips") was hired as a credit clerk. Ms. Walker did not apply for this position.

39.    In May 2006, Ms. Roberto resigned and this position was not filled because of budgetary constraints.

40     In or around July 19, 2006, Ms. Drummond voluntarily resigned. Again, a full-time regular credit clerk position was posted both internally and externally and Hope Marts ("Ms. Marts") was hired to fill the position. Ms. Walker did not apply for this position.

-7-

41.    At present, there are only three full-time credit clerk positions in the Finance Department. These positions are currently held by Ms. Marts, Ms. Raser and Ms. Phillips. A copy of the Finance Department organizational chart as of August 6, 2007 is attached. (See Exhibit K).

42.    To date, Ms. Walker has not contacted me to advise that she is able to return to work or to inquire about available positions at the Company

43    It is not the Company's general practice to contact employees who have separated from the Company to ask them to return to work.

44    I believe that Ms. Walker and I had a good working relationship  In regard to Ms. Walker's work performance, she was the strongest performer in my group in 2003 and 2004. She was fairly competent and I rarely had concerns about her work.

45.    Walker, although competent at her position, still required daily management supervision.

_Shelly Rumpf_
Shelly Rumpf
Credit Manager, Finance Department

SWORN TO AND SUBSCRIBED before me this _3rd_ day of _October_, 2007.

_Susan J. Klemczewski_
Notary Public
My Commission Expires: _12/18/2007_

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2007, I electronically filed the foregoing Affidavit of

Shelly Rumpf with the Clerk of Court using CM/ECF which will send notification of such filing

to the following and on October 4, 2007, hand delivered copies of the same to:

Vernette Walker
29 Richard Road
New Castle, Delaware 19720
*Pro Se* Plaintiff

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Lori A. Brewington (#4522)
Brewington@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Defendants

RLF1-3042370-1

# EXHIBIT A

## Job Description

**Job Title:** Credit Assistant / ~~Cheryl Blackiston~~ Vernette Walker

**Reports To:** Credit Manager

**Responsibilities:**

- Broad collection and dispute resolution responsibilities within the assigned account base. (Online and Retail Display) Position interacts with advertising sales, customers, and cash application personnel at all levels. Monitoring the delinquency status of customer accounts, following up by telephone, fax, and letter to determine the nature of the delinquency and obtaining payments on a timely basis. Customer dispute resolution ranges from unique situations requiring customer contact and clarification to routine customer reconciliations. Authority to place accounts on stop credit within scope of credit policy. Recommending the placement of delinquent accounts for collection with third-party agencies. Time Allocation: 80%.

- Accounts receivable clean-up research. Time allocation: 10%.

- Special projects and cross departmental responsibilities. Time allocation: 10%.

**Education and Experience:** High school diploma. Minimum two years of credit experience, with an emphasis on retailers. Knowledge of charge backs and dispute resolution is essential. Strong computer, written, and verbal communication skills.

Filename: Jobdes1

11/99 — Revisions

# EXHIBIT B

**Rumpf, Shelly**

| | |
|---|---|
| **From:** | Hines, Ann |
| **Sent:** | Wednesday, May 05, 2004 4:24 PM |
| **To:** | Rumpf, Shelly; Hines, Ann |
| **Cc:** | Walburn, Erich; Pinto, Dolores |
| **Subject:** | Vernette Walker |

**Importance:**    High

Vernette Walker will be out of work for the next three weeks (next doctor's appointment in 3 weeks).

# EXHIBIT C

**Sent:**  Friday, May 28, 2004 5:09 PM

**To:**  Rumpf, Shelly; Walburn, Erich; Hines, Ann

**Cc:**  Pinto, Dolores

**Subject:**  RE: Vernette Walker

**Importance:**  High

No.  She's out for an additional four (4) weeks. Next doctor's visit 6/23/04.

----Original Message----

**From:**  Rumpf, Shelly

**Sent:**  Friday, May 28, 2004 4:35 PM

**To:**  Hines, Ann

**Subject:**  RE: Vernette Walker

Hi Ann,

Is Vernette expected back Tuesday?

-----Original Message----

**From:**  Hines, Ann

**Sent:**  Wednesday, May 05, 2004 4:24 PM

**To:**  Rumpf, Shelly; Hines, Ann

**Cc:**  Walburn, Erich; Pinto, Dolores

**Subject:**  Vernette Walker

**Importance:**  High

Vernette Walker will be out of work for the next three weeks (next doctor's appointment in 3 weeks).

# EXHIBIT D

**Copy Center**

| | |
|---|---|
| **From:** | Hines, Ann [AHINES@wilmingt.gannett.com] |
| **Sent:** | Thursday, August 03, 2006 2:08 PM |
| **To:** | Green, Kelly |
| **Cc:** | Hines, Ann |
| **Subject:** | FW: Vernette Walker |
| **Importance:** High | |

-----Original Message-----
**From:** Hines, Ann
**Sent:** Thursday, July 27, 2006 6:42 PM
**To:** Pinto, Dolores
**Cc:** Hines, Ann
**Subject:** FW: Vernette Walker
**Importance:** High

-----Original Message-----
**From:** Hines, Ann
**Sent:** Tuesday, June 01, 2004 12:18 PM
**To:** Walburn, Erich; Rumpf, Shelly; Hines, Ann
**Cc:** Pinto, Dolores
**Subject:** RE: Vernette Walker
**Importance:** High

Due to severe neck and back pain and muscle spasms, Vernette is unable to sit or stand for prolonged periods.

    -----Original Message-----

    **From:** Walburn, Erich

    **Sent:** Monday, May 31, 2004 9:58 AM

    **To:** Hines, Ann

    **Cc:** Pinto, Dolores; Rumpf, Shelly

    **Subject:** RE: Vernette Walker

    Ann, Did you follow up on the doctor's info yet that you were going to check on? Thanks so much.

    Erich

        -----Original Message-----

        **From:** Hines, Ann

8/3/2006

**Sent:**  Friday, May 28, 2004 5:09 PM

**To:**   Rumpf, Shelly; Walburn, Erich; Hines, Ann

**Cc:**   Pinto, Dolores

**Subject:**    RE: Vernette Walker

**Importance:**   High

No.  She's out for an additional four (4) weeks. Next doctor's visit 6/23/04.

-----Original Message-----

**From:**  Rumpf, Shelly

**Sent:**  Friday, May 28, 2004 4:35 PM

**To:**   Hines, Ann

**Subject:**    RE: Vernette Walker

Hi Ann,

Is Vernette expected back Tuesday?

-----Original Message-----

**From:**  Hines, Ann

**Sent:**  Wednesday, May 05, 2004 4:24 PM

**To:**   Rumpf, Shelly; Hines, Ann

**Cc:**   Walburn, Erich; Pinto, Dolores

**Subject:**    Vernette Walker

**Importance:**   High

Vernette Walker will be out of work for the next three weeks (next doctor's appointment in 3 weeks).

# EXHIBIT E

ALL-STATE LEGAL  800-222-0510    E29R11    RECYCLED

## Copy Center

| | |
|---|---|
| **From:** | Hines, Ann [AHINES@wilmingt.gannett.com] |
| **Sent:** | Thursday, August 03, 2006 1:47 PM |
| **To:** | Green, Kelly |
| **Cc:** | Hines, Ann |
| **Subject:** | FW: Vernette Walker Update |
| **Importance:** | High |

-----Original Message-----
**From:** Hines, Ann
**Sent:** Thursday, July 27, 2006 7:09 PM
**To:** Pinto, Dolores
**Cc:** Hines, Ann
**Subject:** FW: Vernette Walker Update
**Importance:** High

-----Original Message-----
**From:** Rumpf, Shelly
**Sent:** Thursday, June 24, 2004 10:26 AM
**To:** Hines, Ann
**Subject:** RE: Vernette Walker Update

Thanks & *&@!&^ !

    -----Original Message-----

    **From:**  Hines, Ann

    **Sent:**  Wednesday, June 23, 2004 5:14 PM

    **To:**  Rumpf, Shelly

    **Cc:**  Pinto, Dolores; Hines, Ann

    **Subject:**  Vernette Walker Update

    **Importance:**  High

I have a doctor's note, dated 6/23/04, keeping Vernette out of work until 7/21/04 (her next dr's appointment).  Any questions, please call.

# EXHIBIT F

**Copy Center**

| | |
|---|---|
| **From:** | Hines, Ann [AHINES@wilmingt.gannett.com] |
| **Sent:** | Thursday, August 03, 2006 2:09 PM |
| **To:** | Green, Kelly |
| **Cc:** | Hines, Ann |
| **Subject:** | FW: Vernette Walker |
| **Importance:** | High |

-----Original Message-----
**From:** Hines, Ann
**Sent:** Thursday, July 27, 2006 6:41 PM
**To:** Pinto, Dolores
**Cc:** Hines, Ann
**Subject:** FW: Vernette Walker
**Importance:** High

-----Original Message-----
**From:** Rumpf, Shelly
**Sent:** Thursday, July 01, 2004 12:39 PM
**To:** Hines, Ann
**Subject:** RE: Vernette Walker

thanks

> -----Original Message-----
>
> **From:**   Hines, Ann
>
> **Sent:**   Thursday, July 01, 2004 12:34 PM
>
> **To:**   Rumpf, Shelly
>
> **Cc:**   Hines, Ann
>
> **Subject:**   RE: Vernette Walker
>
> **Importance:**   High
>
> Yes her protections ends; she will continue to receive short-term disability.
>
> > -----Original Message-----
> >
> > **From:**   Rumpf, Shelly

**Sent:**   Thursday, July 01, 2004 10:43 AM

**To:**   Hines, Ann

**Subject:**     RE: Vernette Walker

Just so I understand, the impact on Vernette is that her job is technically no longer protected after that date?

-----Original Message-----

**From:**   Hines, Ann

**Sent:**   Thursday, July 01, 2004 10:07 AM

**To:**   Rumpf, Shelly; Hines, Ann

**Cc:**   Pinto, Dolores

**Subject:**     Vernette Walker

**Importance:**   High

Vernette's Family and Medical Leave entitlement will end July 20, 2004.  Notification was mailed today via "certified mail" and telephone.

# EXHIBIT G

**Pinto, Dolores**

| | |
|---|---|
| **From:** | Hines, Ann |
| **Sent:** | Thursday, July 27, 2006 6:22 PM |
| **To:** | Pinto, Dolores |
| **Cc:** | Hines, Ann |
| **Subject:** | FW: Vernette |
| | |
| **Importance:** | High |

-----Original Message-----
**From:** Hines, Ann
**Sent:** Tuesday, August 17, 2004 4:12 PM
**To:** Rumpf, Shelly
**Cc:** Hines, Ann
**Subject:** RE: Vernette

She called today. I'm scheduling a medical evaluation this week.

> -----Original Message-----
> **From:** Rumpf, Shelly
> **Sent:** Tuesday, August 17, 2004 3:23 PM
> **To:** Hines, Ann
> **Subject:** Vernette
>
> Hi Ann,
>
> Any news?

1

# EXHIBIT H

-----Original Message-----
**From:** Hines, Ann
**Sent:** Friday, August 20, 2004 9:28 AM
**To:** Rumpf, Shelly
**Cc:** Pinto, Dolores; Lemire, Don
**Subject:** Vernette Walker - Fitness for Duty Exam
**Importance:** High

Vernette will have a fitness for duty exam at Concentra Medical Center, 10 AM, on Monday, 8/23/04. I'll keep you updated.

# EXHIBIT I



Vernette Walker vs. The News Journal

Attachment ①

Case no. 0410077807|17CA500028

---

**From:** Rumpf, Shelly
**Sent:** Tuesday, September 07, 2004 10:50 AM
**To:** WIL-FINANCE
**Subject:** Vernette Walker

Unfortunately, Vernette will not be returning to work for medical reasons. Her work has and will continue to be divided among the Credit team.

# EXHIBIT J



ALL-STATE LEGAL 800-222-0510    EGNI1    RECYCLED

# Finance

## Aug. 31, 2004

```
                    Don Lemire
                    Group Controller/VP
                    Finance
                         |
                    Sherry Salvia
                    Administrative
                    Assistant
                         |
                    Vacant
                    Controller
                         |
                    Regan Kelly
                    Assistant
                    Controller
```

**Jeff Fusaro** — AR Systems Specialist
- Brenda Massey-Smith — Adv. AR Clerk
- Collete Lathrop — AR Lineage Clerk
- Linda Barber — Adv AR Clerk

**Patricia Hawkins** — Payroll Supv.
- Terri Butcher — Payroll Clerk

**Ben Shepard** — Sr. Accountant

**Cindy Casper** — AP Clerk

**Donna Muldeng** — Finance Supervisor
- Debbie Boyer — Cashier
- Loreen Hayes — Circ AR Clerk
- Sharron Dixon — PIA Clerk
- Sandra Hawkes — Accounting Clerk

**Lillie Cook** — Purchasing Mgr.
- Isaac Cotton / Mark Petchel — Mail Clerks

**Shelly Rumpf** — Credit Manager
- Andrea Johnson — Credit Clerk
- Joan Raser — Credit Clerk
- Cheryl Drummond — Credit Clerk

8/3/2007

The News Journal

# EXHIBIT K

Finance
As of August 6, 2007



The News Journal

8/2/2007