IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERNETTE WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-138-MPT |
| ) | |
| THE NEWS JOURNAL and ) | |
| ANN HINES, ) | |
| ) | |
| Defendants. ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Lori A. Brewington (#4522)
Brewington@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
(302) 651-7700
Attorneys for Defendants

Dated: October 25, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

    I.    THE STANDARD FOR SUMMARY JUDGMENT ............................................. 3

    II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON WALKER'S ADA CLAIM BECAUSE SHE HAS NOT ESTABLISHED A *PRIMA FACIE* CASE, NOR HAS SHE PRESENTED ANY EVIDENCE TO REBUT THE LEGITIMATE BUSINESS REASON FOR HER TERMINATION .......................................................................................................... 4

        A.    Unused Time Does Not Impact A RIF Decision ........................................ 4

        B.    Walker Was Provided Several Opportunities To "Save Her Job." ............. 7

        C.    Walker's Position Was Eliminated ............................................................. 8

        D.    Walker Has Not Demonstrated Inconsistencies In Defendants' Legitimate Nondiscriminatory Reason For The RIF ................................ 10

    III.    WALKER'S RETALIATION CLAIM MUST BE DISMISSED BECAUSE SHE CANNOT SET FORTH A *PRIMA FACIE* CASE ...................................... 11

    IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE TO SUPPORT WALKER'S ADEA CLAIM ..................................................................................................................... 11

    V.    WALKER'S FAILURE TO MITIGATE PRECLUDES ANY WAGE DAMAGES ......................................................................................................... 12

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

Page

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ............................................................................................................4

Booker v. Taylor Milk Co.,
64 F.3d 860 (3d Cir. 1995) ................................................................................................12

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ............................................................................................................3

Davis v. Guardian Life Insurance,
2000 U.S. Dist. LEXIS 18166 (E.D. Pa. Dec. 15, 2000) ....................................................8

Fireman's Ins. Co. of Newark, N.J. v. DuFresne,
676 F.2d 965 (3d Cir. 1982) ..........................................................................................3, 11

Fogelman v. Mercy Hosp., Inc.,
283 F.3d 561 (3d Cir. 2002) ..............................................................................................11

Gans v. Mundy,
762 F.2d 338 (3d Cir.), cert. denied, 474 U.S. 1010 (1985) ...............................................3

Jones v. United Parcel Service,
214 F.3d 402 (3d Cir. 2000) ................................................................................................7

Lewis v. State,
986 F. Supp. 848 (D. Del. Nov. 20, 1997) ..........................................................................3

Potence v. Hazleton Area Sch. Dist.,
357 F.3d 366 (3d Cir. 2004) ..............................................................................................11

Saladino v. Envirovac, Inc.,
2006 U.S. LEXIS 2100 (7th Cir. Jan. 26, 2006) ............................................................9-10

Sharpe v. AT&T,
66 F.3d 1045 (9th Cir. 1995) .............................................................................................10

United States v. Hartman,
1997 WL 416283 (E.D. Pa. July 10, 1997) .......................................................................11

Williams v. Borough of West Chester, Pa.,
891 F.2d 458 (3d Cir. 1989) ................................................................................................3

-iii-

Williams v. Chrysler Corp.,
991 F. Supp. 383 (D. Del. Jan. 7, 1998), aff'd, 163 F.3d 183 (3d Cir. 1998) ...................3, 4

## **Other Authorities**

Fed. R. Civ. P. 56(e) ..........................................................................................................3, 11

## INTRODUCTION

Plaintiff Vernette Walker ("Walker") brought this suit claiming that defendants The News Journal (the "Company") and Ms. Ann Hines ("Hines") (collectively, "Defendants") discriminated against her on the basis of disability and age and indirectly alleging retaliation.[1]

In her Answering Brief, Walker fails to respond to the majority of Defendants' arguments concerning her Americans with Disabilities Act ("ADA") claim. For instance, Walker does not dispute Defendants' claim that she does not have a disability within the meaning of the ADA. Also, Walker does not dispute Defendants' contention, in the alternative, that she is not a qualified individual under the ADA because she cannot perform the essential functions of the job, with or without reasonable accommodations. Walker completely ignores Defendants' argument that an indefinite leave is an unreasonable accommodation and creates an undue burden, and is therefore not an accommodation required under the ADA. Finally, Walker fails to provide any evidence, other than bare assertions, to rebut the Company's legitimate business reason for her termination. Accordingly, Defendants are entitled to summary judgment on Walker's ADA claim.

In regards to the Age Discrimination in Employment Act claim ("ADEA"), Walker's Answering Brief is void of any evidence to support this claim. Therefore, and for the reasons stated in prior submissions to the Court, Defendants are entitled to summary judgment on Walker's ADEA claim.

Similarly, Walker's retaliation claim must be dismissed because she fails to set forth a *prima facie* case. In her Answering Brief, Walker fails to address the Defendants' argument that

---

[1] Walker confirmed at her deposition that she did not intend to file a race complaint. (Ex. 10 at 214). (Excerpts of Walker's deposition are referenced herein as "Ex. 10 at ___").

-2-

she never engaged in a protected activity. Also, many of the acts of purported retaliation do not rise to the level of adverse employment actions. Given the legitimate company-wide reduction in force and her inability to prove pretext, she cannot establish the requisite causal connection. As such, Walker's retaliation claim must also be dismissed.

Based on the undisputed evidence as set forth herein and also in Defendants' Opening Brief and Defendants' briefs in support of their Motions to Dismiss, Walker's claims of disability, retaliation and age discrimination must fail as to both Defendants.

## ARGUMENT

I. **THE STANDARD FOR SUMMARY JUDGMENT.**

Fed. R. Civ. P. 56(e) provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him.

Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965 (3d Cir. 1982).

Once the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner – whether by its own affidavits or otherwise setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial. Fireman's Ins. Co., 676 F.2d at 969. The non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Williams v. Chrysler Corp., 991 F. Supp. 383 (D. Del. Jan. 7, 1998), aff'd, 163 F.3d 183 (3d Cir. 1998). Plaintiff cannot rely solely "upon bare assertions, conclusory allegations or suspicions" to sustain his burden on summary judgment. Williams., 991 F. Supp. at 383; Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.), cert. denied, 474 U.S. 1010 (1985); Lewis v. State, 986 F. Supp. 848, 853 (D. Del. Nov. 20, 1997).

The non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving the elements to his claim. Celotex

Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the present case, Walker is attempting to rely solely "upon bare assertions, conclusory allegations or suspicions" to sustain her burden on summary judgment. Williams, 991 F. Supp. at 383. In her Answering Brief, Walker's unsworn statements are not supported by affidavit or any other information contained in the filed documents as part of the record. Moreover, even if she had taken such steps, the allegations are still just conclusions and suspicions with no proffered evidence in support. Thus, she has failed to meet her burden of establishing that issues of material fact exist precluding the entry of summary judgment in Defendants' favor.

II. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON WALKER'S ADA CLAIM BECAUSE SHE HAS NOT ESTABLISHED A *PRIMA FACIE* CASE, NOR HAS SHE PRESENTED ANY EVIDENCE TO REBUT THE LEGITIMATE BUSINESS REASON FOR HER TERMINATION.**

As previously noted, Walker, in her Answering Brief, fails to address several of Defendants' arguments concerning her ADA claim. Specifically, Walker does not respond to Defendants' contention that (1) she is not disabled as defined by the ADA; (2) she is not qualified under the ADA; (3) she did not request an accommodation; and (4) assuming *arguendo* that she requested an accommodation, any request for an unlimited leave of absence is unreasonable and creates an undue burden. Therefore, Walker has not established a *prima facie* case of ADA discrimination.

A. **Unused Time Does Not Impact A RIF Decision.**

The only argument it appears Walker makes in regards to the ADA claim – specifically, in response to the Company's legitimate, non-discriminatory reason for the elimination of her position – is that her position should not have been eliminated because "an employee is entitled

-5-

to use time earned, if the injury became extensive, then time earned does not cover the leave, then the employee may request FMLA or leave of absence." (Ans. Br. at 1). While Walker's position on this issue is not entirely clear, the evidence supports the Company's position that it provided Walker with all the rights and benefits she was entitled to under the law and in accordance with the Company's policies.

In April 2004, shortly after her car accident, Walker received a letter from Hines enclosing a copy of both the Company's Income Protection Plan (the "Plan") and the Family Medical Leave Act ("FMLA") policy. (Hines Aff. Ex. B).[2] Hines's letter advised Walker that based on her service year of 1988, she was eligible to receive *up to* 25 weeks of short-term disability ("STD") at 100% of pay. (Hines Aff. Ex. B). Walker was also advised that sick days and STD would be counted toward her 12-week FMLA entitlement from the first day of continuous absence. (Hines Aff. Ex. B). Walker received 12 weeks of FMLA job protection and more than an additional month of protection after her FMLA benefits were exhausted. (Pinto Aff. at ¶ 21). Walker also received STD benefits through August 30, 2004 (which was a week after she had been cleared to return to work regular duty by Dr. Surdo at Concentra). (Pinto Aff. at ¶ 21). Notwithstanding the receipt of these benefits, Walker purportedly now argues that an employee may request FMLA or a leave of absence before his or her position is eliminated and that she was not given the opportunity to do so. (Ans. Br. at 1). However, Walker never requested a leave of absence and, as noted, *infra*, she received more than 12 weeks of job protection under FMLA. (Pinto Aff. at ¶ 21, Ex. 10 at 92). Thus, Walker's assertion that the Company did not follow its policies is without merit.

---

[2] References to exhibit numbers are those exhibits attached to Defendants' Opening Brief. References to exhibit letters are those attached to the cited affidavit filed simultaneously with Defendants' Opening Brief, unless otherwise stated.

-6-

Walker also argues that she had no reason to request a leave of absence or any other extensions because she never used all the earned time to which she was entitled (Ans. Br. at 1, 7) in regards to her allegation that she had "1 year approved leave of absence." This is simply not true per Company policy. (Second Pinto Aff. at ¶¶ 3, 5).[3] Further, Walker had approximately 23 hours or, in other words, less than one week of earned, unused vacation time. (Second Pinto Aff. at ¶ 4). In accordance with Company policy, Walker would not have been paid for any earned, unused vacation time since she was receiving STD payments under the Plan through August 30, 2004. (Second Pinto Aff. at ¶ 5). Further, the fact that Walker was entitled to less than one week's vacation did not preclude her termination nor have any effect on the Company's decision to eliminate Walker's credit clerk position. The Company's handbook states, "Pay for all vacation ... will be included in your final paycheck."[4] (Pinto Aff. Ex. J). Thus, the Company was under no obligation to allow Walker to use any earned, unused vacation time before eliminating her position due to budgetary and financial constraints. (Second Pinto Aff. at ¶ 6).

Moreover, assuming *arguendo* Walker's contention that she had no reason to request a leave of absence because she had unused "earned days" as true (Ans. Br. at 7), she only earned less than one week of vacation. Obviously, this was not sufficient to excuse her perpetual absence from work or to otherwise prevent her position from being eliminated in a company-wide RIF. (Second Pinto Aff. ¶ 6). Further, Walker attempts to argue under the mistaken assumption that she was entitled to be absent from work until October 20, 2004. (Ans. Br. at 7).

---

[3] The Second Affidavit of Dolores Pinto is being filed simultaneously with Defendants' Reply Brief.

[4] The Company was not aware that Walker had any earned, unused vacation time until it was brought to Ms. Pinto's, Vice President of Human Resources, attention by Walker after the initiation of her lawsuit. (Second Pinto Aff. at ¶ 7). The Company has sent Walker a check for payment of the earned, unused vacation time. (Second Pinto Aff. at ¶ 8).

As noted in Defendants' Opening Brief, Walker was entitled to receive *up to* 25 weeks, and the duration was solely based on medical information. (Hines Aff. Ex. B). Since Walker was cleared to return to work regular duty, she was no longer eligible for STD benefits. Once cleared to return to work regular duty, Walker had an obligation to engage in the interactive process with the Company in order to determine what, if any, accommodations would allow her to return to work, but she inexplicably failed to do so. Jones v. United Parcel Service, 214 F.3d 402 (3d Cir. 2000).

### B.   Walker Was Provided Several Opportunities To "Save Her Job."

Walker also argues that she was never given an opportunity to save her job. (Ans. Br. at 7). According to Walker, "Ann, Deloris [sic], nor Shelly never requested from me … a return to work." (Ans. Br. at 7). She goes on to state that "if a return to work date made the determining factors as to why I have no job, Ann Hines never allowed me to do this." (Ans. Br. at 8). Similarly, Walker contends that Hines never discussed with her the jeopardy of her losing her job and that Hines told Walker that she had until October 20, 2004 to return to work. (Ans. Br. at 2, 7). These bare assertions are unsupported by the evidence in this case. Hines sent many letters and made phone calls requesting medical information from Walker, including an expected return to work date. (Hines Aff. ¶¶ 3-6, 15-17, 21, 29, 34, Exs. B, C, I, J). Also, it is undisputed that Walker received a letter from Hines dated July 1, 2004, advising that her 12 weeks of FMLA entitlement ended as of July 20, 2004 and that if she remained unable to return to work, business necessity required the Company to fill Walker's position. (Hines Aff. Ex. J). It is also undisputed that Walker received a copy of the Plan which specifically states that the receipt of benefits continues "until you are medically fit to return to work." (Hines Aff. Ex. B). Further, it is undisputed that she was aware that she was cleared to return to work regular duty by Dr. Surdo, yet she inexplicably failed to do so, nor did she call anyone at the Company for an

-8-

explanation or to argue against the decision. (Ex. 10 at 167). Although Walker now argues that she "was never given an opportunity to return to work" (Ans. Br. 8), she previously admitted in a letter to her counsel representing her in relation to her car accident that Hines asked her to return to work on August 30, 2004. (Ex. 8, Ex. 7). Lastly, even in her termination letter she was told to reapply when she was able to return to work, yet never did so. Thus, the evidence is clear that Walker's inability or unwillingness to return to work is attributable only to her actions and that the Company provided Walker with more than enough opportunities to return to work.[5] In fact, the Company considered Walker to be a good employee and wanted her to return to work. (Hines Aff. at ¶ 37).

### C.  Walker's Position Was Eliminated.

Without any evidence to support her contention, Walker also argues that "through a thorough investigation you will find that my position 'credit clerk' collector for retail advertisers had never been eliminated." (Ans. Br. at 8). Walker's claim is without merit. Walker's position was eliminated in August 2004 due to a company-wide reduction in force. (Pinto Aff. at ¶¶ 4-19, Exs. A-I).

As of August 31, 2004, the staff of credit clerks who reported to Ms. Shelly Rumpf ("Rumpf"), Walker's previous supervisor, had been reduced to three positions, which were held

---

[5] As evidence of the Company's alleged discrimination, Walker now argues that returning to the Company part-time was not an option. (Ans. Br. at 8). However, Hines spoke with Walker in August 2004 and advised her that the Company was willing to accommodate her restrictions. (Hines Aff. at ¶ 29). Additionally, it is undisputed that Walker never contacted the Company to discuss accommodations, such as working part-time. (Ex. 10 at 162, 198; Ex. 2). "[P]articipation in this is an obligation of both parties and that neither can be faulted if the other does not supply information or answer requests of the other.... [O]nce the employer initiates proposal, employee has a duty to cooperate in determining whether proposal was reasonable." Davis v. Guardian Life Insurance, 2000 U.S. Dist. LEXIS 18166, at *18 (E.D. Pa. Dec. 15, 2000).

by Ms. Johnson, Ms. Raser and Ms. Drummond. (Rumpf Aff. at ¶ 35). Due to changing business needs, in January 2004, the Company was able to increase the number of employees in the Finance Department to 3.5. (Rumpf Aff. at ¶ 36). As a result, Rumpf hired Dottie Roberto. (Rumpf Aff. at ¶ 36). In August 2005, Ms. Johnson transferred out of the temporary full-time position she held. (Rumpf Aff. at ¶ 37). Thereafter, the duties of this position were evaluated and the temporary position was converted to a regular full-time position. (Rumpf Aff. at ¶ 37). In September 2005 and in accordance with Company policy, the Company posted a full-time regular credit clerk position both internally and externally by advertising in The News Journal. (Rumpf Aff. at ¶ 38). Subsequently, Mary Ann Phillips was hired as a credit clerk. (Rumpf Aff. at ¶ 38). Walker chose not apply for this position. (Rumpf Aff. at ¶ 38).[6]

In May 2006, Ms. Roberto resigned, and this position was not filled because of budgetary constraints. (Rumpf Aff. at ¶ 39). In or around July 19, 2006, Ms. Drummond voluntarily resigned, and again a full-time regular credit clerk position was posted both internally and externally; Hope Marts was hired to fill the position. (Rumpf Aff. at ¶ 40). Once again, Walker did not apply for this position. (Rumpf Aff. at ¶ 40). Walker had every opportunity to reapply for the credit clerk position, but she inexplicably chose not to. It is not the Company's general practice to contact employees who have separated from the Company to ask them to return to work. (Rumpf Aff. at ¶ 43). If, in the restructuring, the job of an individual with a disability is eliminated, the employer simply needs to treat the individual the same way it treats other

---

[6] The Company sent Walker a letter in August asking her to reapply for a position when she was able to return to work. (Hines Aff. Ex. N). Again, in December 2004, the Company asked Walker to reapply when she was able to return to work. (Ex. 10 at 180). To date, Walker has never contacted Hines or anyone else at the Company to discuss open positions for which she may be qualified. (Hines Aff. at ¶ 38). This is a strong indication of Walker's unwillingness or inability to return to work at the Company.

individuals whose jobs are lost. Saladino v. Envirovac, Inc., 2006 U.S. LEXIS 2100 (7th Cir. Jan. 26, 2006).[7] Perhaps more importantly, however, if Walker had returned to work in August 2004, the position would have been hers. (Pinto Aff. at ¶ 11).

### D. Walker Has Not Demonstrated Inconsistencies In Defendants' Legitimate Nondiscriminatory Reason For The RIF.

Further, Walker argues that Hines "made fraudulent statements to her counselor, her VP, her attorney to defeit [sic] the courts." (Ans. Br. at 3). Walker purportedly argues that Hines made intentional misrepresentations to her resulting in the loss of her employment. (Ans. Br. at 3). Thereafter, Hines became a scapegoat by leaving or being forced to leave. (Ans. Br. at 3). According to Walker, this reflects "the natural acts of a guilty party." (Ans. Br. at 3). Once again, Walker fails to provide any evidence in support of her assumption except for her unsubstantiated belief that Hines's employment ended as a result of Walker's testimony during her deposition. (Ans. Br. at 3). However, Hines's voluntarily resigned from the Company in August 2007 prior to Walker's deposition. (Pinto Aff. at ¶ 12). Also, Hines resigned from the Company more than three years *after* the elimination of Walker's position and almost three years after the Charge of Discrimination was filed by Walker; therefore her resignation was not in any way related to the elimination of Walker's job or the filing of the Charge. Further, Hines played no role in the decision to reduce the Company's job force, nor was she responsible for the decision to eliminate Walker's position. (Pinto Aff. at ¶¶ 13, 19). Therefore, Walker's assertion that Hines's resignation is somehow an admission of guilt on the part of the Company is nothing

---

[7] In Sharpe v. AT&T, 66 F.3d 1045 (9th Cir. 1995), the court specifically noted that when the plaintiff lost his job as part of a corporate restructuring, he could be forced to compete for available positions in the same manner as other employees.

more than an unfounded suspicion.[8] For the aforementioned reasons, Defendants are entitled to summary judgment on Walker's ADA claim.[9]

### III. WALKER'S RETALIATION CLAIM MUST BE DISMISSED BECAUSE SHE CANNOT SET FORTH A *PRIMA FACIE* CASE.

Walker fails to address in any way Defendants' contention that her retaliation claim must fail because (1) she did not engage in a protected activity; (2) the actions alleged by Walker do not rise to the level of adverse employment; and (3) there is no causal link between a protected activity and an adverse employment action as required. Fogelman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002). Therefore, Defendants are entitled to summary judgment on Walker's retaliation claim.

### IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE TO SUPPORT WALKER'S ADEA CLAIM.

Walker fails to respond to, address or even mention any of the legal arguments set forth in Defendants' Opening Brief concerning Walker's ADEA claim; specifically, the contention that there is no evidence to establish a *prima facie* case of age discrimination. Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004). Moreover, to date she still has not alleged any facts in support. Therefore, Defendants are entitled to summary judgment on Walker's ADEA claim.

---

[8] Walker also makes the conclusory allegation that Hines's statements are inconsistent, yet offers no evidence of such. (Ans. Br. at 3).

[9] Plaintiff chose not to depose any of Defendants' witnesses. Defendants, as the moving parties, have supplied sufficient affidavits in accordance with Fed. R. Civ. P. 56(e). Fireman's Ins. Co., 676 F.2d at 969. Therefore, Defendants' affidavits and supporting documents are sufficient to establish Defendants' entitlement to summary judgment on these claims. United States v. Hartman, 1997 WL 416283, at *3 (E.D. Pa. July 10, 1997). Moreover, despite allegations by Walker to the contrary, the Company was under no duty to respond to discovery requests from Walker or an agent of Walker prior to litigation.

-12-

## V. WALKER'S FAILURE TO MITIGATE PRECLUDES ANY WAGE DAMAGES.

Similarly, Walker fails to respond to, address or even mention her failure to mitigate her alleged damages as required by the ADA and the ADEA. <u>Booker v. Taylor Milk Co.</u>, 64 F.3d 860, 864 (3d Cir. 1995). Therefore, Defendants are entitled to summary judgment on the issue of damages.

## CONCLUSION

Based on the foregoing, as well as the arguments set forth in Defendants' Opening Brief in support of their Motion for Summary Judgment and in the submissions related to Defendants' Motions to Dismiss, Walker has failed to respond to the legal arguments in support of dismissal or present any issues of material fact requiring that her claims be submitted to a jury. As a result, her claims in their entirety as to both Defendants must be dismissed.

_____
Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Lori A. Brewington (#4522)
Brewington@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
302-651-7700
Attorneys for Defendants

Dated: October 25, 2007

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2007, I electronically filed the foregoing Reply Brief in Support of Defendants' Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing to the following and on October 25, 2007, mailed copies of the same via first class mail to:

Vernette Walker
29 Richard Road
New Castle, Delaware  19720
*Pro Se* Plaintiff

/s/ Jennifer C. Jauffret
_____
Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Lori A. Brewington (#4522)
Brewington@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
(302) 651-7700
Attorneys for Defendants