IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERNETTE WALKER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C. A. No. 06-138-MPT |
| | : |
| THE NEWS JOURNAL and | : |
| ANN HINES, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Vernette Walker, Pro Se, 29 Richard Road, New Castle, DE 19720

Jennifer C. Jauffret, Esquire, Kelly A. Green, Esquire, and Lori A. Brewington, Esquire, Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, DE 19899

March 24, 2008

Thynge, U.S. Magistrate Judge

## I. Introduction

This is an employment discrimination case involving several claims. Plaintiff, Vernette Walker ("Walker") alleges that she was wrongfully terminated from her employment with defendant, The News Journal, on August 30, 2004. Walker alleges that her termination was a discriminatory action based on her age and disability in violation of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act of 1990 ("ADA") respectively. Walker also alleges discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").

Defendant, Ann Hines ("Hines"), a manager at The News Journal, moved to dismiss all of the above claims against her pursuant to Fed. R. Civ. P. 12(b)(6) because she maintains that there is no individual liability under the ADEA, ADA, or Title VII. The News Journal moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because it argues that Walker failed to exhaust the required administrative remedies before bringing this action. The News Journal also moved for summary judgment pursuant to Fed. R. Civ. P. 56(c) on the basis that Walker cannot establish *prima facie* discrimination under the ADA and further that there is no evidence to support Walker's ADEA claim. This opinion addresses all three motions herein.

## II. Facts

The following facts are undisputed. Walker was an employee of the News Journal from December 1987 through August 2004. On April 27, 2004, Walker was involved in a car accident, from which she sustained injuries to her neck and back.

Although Walker was "sore" from her injuries, she was released from the hospital on the same day as the accident.[1] The next morning Walker informed her supervisor, Shelly Rumph ("Rumph"), that she would be absent from work until she felt better. Although Walker did not provide an anticipated return to work date, she promised to update her employer on the status of her recovery.

Before the accident, the parties agree that Walker was a competent employee who had a good working relationship with her superiors.[2] After the accident, however, the relationship began to disintegrate. On April 30, 2004, three days after Walker's car accident, Hines sent Walker notification of her benefits' entitlement under The News Journal's Income Protection Plan (the "Plan") and its Family Medical Leave Act ("FMLA") policy. The Plan stated in part, "At its discretion, the Company may require written information from your personal physician or through an examination by a company-selected physician, before payments under this plan are authorized."[3] Although Walker provided periodic updates from her doctor, The News Journal alleges the updates failed to provide sufficient detail. Accordingly, The News Journal scheduled a medical exam for August 23, 2004, with a company-selected physician to determine the extent of her recovery and when she might return to work.[4] At the conclusion of the that examination, the company-selected physician informed Walker

---

[1] D.I. 63 at 5.

[2] D.I. 63 at 4.

[3] D.I. 63 at 6.

[4] D.I. 63 at 9-10.

that she could return to work that day without restriction. Walker did not return to work and on August 30, 2004, The News Journal terminated her employment.

Walker commenced administrative action against The News Journal when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") on October 7, 2004. On June 30, 2005, the DDOL dismissed Walker's claims. The EEOC adopted the findings of the DDOL and on December 5, 2005, the EEOC dismissed Walker's claims. On March 1, 2006, Walker filed the present action against Hines and The News Journal alleging discrimination for the reasons set forth above.

### III. Legal Standard

<u>Motion to Dismiss</u>

A motion to dismiss is governed by Fed. R. Civ. P. 12(b)(6).[5] Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.[6] The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[7] To that end, a Rule 12(b)(6) motion should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

[5] See *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409-10 (3d Cir. 1991) (citing *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989) ("The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion.")).

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).

4

relief."[8] The court assumes that all factual allegations in plaintiff's amended complaint are true and draws all reasonable factual inferences in the light most favorable to her.[9] However, the court should reject unsupported allegations, "bald assertions," or "legal conclusions."[10]

Summary Judgment

Granting summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11] A Rule 56(c) movant bears the burden of establishing the lack of a genuinely disputed material fact by demonstrating "that there is an absence of evidence to support the nonmoving party's case."[12] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[13] The nonmovant must be given the benefit of all justifiable inferences and the court must resolve any disputed issue of fact in favor of the nonmovant.[14] The mere existence of some evidence in support of the nonmoving party, however, is insufficient to deny a

---

[8] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[9] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

[10] *Id.* (citations omitted).

[11] Fed. R. Civ. P. 56(c).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[14] *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue.[15] If the nonmoving party fails to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law.[16]

## IV. Analysis

<u>Hines' Motion to Dismiss</u>

Following Third Circuit precedent, this court applies arguments regarding individual liability to all three statutes interchangeably. While there is no express grant of individual liability under any of the statutes, employers may be liable under all three. Thus, an individual must be considered an employer under one of the statutes to be potentially liable.

The definition of "employer" is nearly identical in each statute. In Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."[17] Similarly, the ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees . . . and any agent of such a person."[18] Language identical to Title VII's definition of an employer was included in the earliest proposals of

---

[15] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[16] See *Celotex Corp.*, 477 U.S. at 325.

[17] 42 U.S.C. § 2000e(b).

[18] 29 U.S.C. § 630(b); see also *Sheridan v. E.I. Du Pont de Nemours and Co.* citing *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-80 (7th Cir. 1995) ("[T]he ADEA's definition is . . . essentially identical to Title VII's. . . .[T]herefore, the ADEA is interchangeable with Title VII.").

6

the ADA and was not altered by the Senate or House.[19]  In fact, the EEOC's regulations state that the term "employer" as used in the ADA "shall have the meaning[ ] . . . set forth in . . . the Civil Rights Act of 1964."[20]

Although at first blush, the phrase "any agent of such a person" that is included in the definition of employer under all three statutes may appear to include Hines, the Third Circuit has explicitly rejected individual liability under Title VII, the ADA, and the ADEA.[21]  Accordingly, these claims against Hines must be dismissed.

News Journal's Motion to Dismiss

The News Journal moves to dismiss the ADEA and Title VII claims against it on the basis that plaintiff failed to exhaust the required administrative remedies before bringing those claims.  The ADEA provides, in pertinent part, that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity

---

[19] See S. 933, 101st Cong., 1st Sess. § 201 (1989); H.R. 2273, 101st Cong., 1st Sess. § 201 (1989) (defining an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  This definition is identical to the final version of the Act, although a different standard was in effect for two years following the ADA's effective date).

[20] 29 C.F.R. § 1601.2 (1996).

[21] *Kachmar v. Sungard Data Systems, Inc.* 109 F.3d 173, 184 (3d Cir. 1997) ("Congress did not intend to hold individual employees liable under Title VII."); *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002) (holding individual liability was not appropriate under Title III of the ADA and explaining that that finding was consistent with other circuits which determined that individual liability was not appropriate under Titles I and II of the ADA); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA"); *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) ("[T]he ADEA does not provide for individual liability.")

Commission."[22]  The Third Circuit has interpreted that provision as requiring a plaintiff to exhaust certain administrative remedies before bringing an action under the ADEA. Plaintiff, however, did not file an age discrimination claim with the EEOC.[23]  Therefore, her ADEA claims must be dismissed for failure to exhaust administrative remedies.

Similarly, Title VII requires that a "charge under [that] section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred . . . ."[24] Once the EEOC makes a final determination about the Title VII claim, the EEOC "shall so notify the person aggrieved within ninety days after the giving of such notice [that] a civil action may be brought against the respondent . . ."[25]  The Third Circuit has interpreted those provisions to mean that a Title VII claim cannot be raised for the first time in a civil action.[26]  As that court has said, "it is a basic tenet of administrative law that a plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief."[27]  Moreover, questions about whether administrative remedies have been exhausted "are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim."[28]  Here, plaintiff failed to raise any Title VII claims with the EEOC or Delaware Department of Labor ("DDOL").  Thus, those claims must be

---

[22] 29 U.S.C. § 626(d).

[23] D.I. 15 at Exhibit B.

[24] 42 U.S.C.A. § 2000e-5.

[25] *Id.*

[26] *Hornsby v. United States Postal Serv.*, 787 F.2d 87 (3d Cir. 1986).

[27] *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997).

[28] *Id.* at 1022.

dismissed.

News Journal's Motion for Summary Judgment

News Journal moved for summary judgment on plaintiff's ADEA and ADA claims. In light of the previous findings herein, the motion for summary judgment on the ADEA claim is moot; therefore, this opinion will only address the motion for summary judgment on the ADA claim.

News Journal contends that summary judgment is appropriate because plaintiff cannot establish a *prima facie* case of disability discrimination under the ADA. To establish a *prima facie* case, plaintiff must establish that she: (1) has a disability within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) was subject to some adverse action as a result of her disability.[29] If plaintiff fails to establish any of the elements listed above, summary judgment is appropriate.

Regarding the first element, Walker does not appear to have a disability within the meaning of the ADA. A "disabled" individual under the ADA is one whose physical or mental impairment *substantially limits* one or more *major life activities*. The Supreme Court has held that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."[30] The Third Circuit has explained that "major life activities" are those "activities that the average person in the general population can

---

[29] *Buskirk v. Apollo Metals,* 307 F.3d 160, 166 (3d Cir. 2002).

[30] *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).

9

perform with little or no difficulty."[31]

By plaintiff's own admission, she is not substantially limited in any major life activity. In fact, plaintiff testified at her deposition that had she know her job would be eliminated, and she would have returned to work immediately.[32] However, even if this court accepts there is a genuine issue of material fact there, plaintiff cannot satisfy the second element of a *prima facie* case of disability discrimination.

Regarding the second element, plaintiff is not a "qualified individual" under the ADA. A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position."[33] Walker is estopped from asserting that she could perform the essential functions of her job because Walker previously represented that she was totally and permanently disabled from April 27, 2004 to December 18, 2006.[34] Walker claimed that she was not "able to physically get out and work" due to her injuries.[35] Moreover, Walker's treating physicians consistently maintained Walker was unable to work in any occupation. Perhaps most importantly, the Social Security Administration ("SSA") accepted those representations as true when awarding Walker SSDI benefits.[36] Consequently, Walker is now estopped from

---

[31] *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 361 (3d Cir. 2000).

[32] D.I. 63 at 19.

[33] 42 U.S.C. § 12112(8).

[34] D.I. 63 at 22.

[35] *Id.*

[36] *Id.*

claiming that she was, in fact, qualified to perform the essential functions of her job.

Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with the one that she has previously asserted in the same or in a previous proceeding.[37] "Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[38] The potential for inconsistency arises where a plaintiff, as in here, applies for and receives SSDI benefits under the theory that she is totally disabled and thereafter alleges that she could have worked but for some discriminatory act.[39] Accordingly, plaintiff is estopped from claiming she is a qualified individual under the ADA. Since plaintiff cannot satisfy the second element of a *prima facie* case of disability discrimination under the ADA, it is unnecessary to address the final element. Accordingly, News Journal's motion for summary judgment is granted.

## V. Conclusion

For the reasons contained herein, Ann Hines' motion to dismiss is GRANTED, News Journal's Motion to Dismiss is GRANTED, and News Journal's Motion for Summary Judgment is GRANTED in part and found as moot in part.

---

[37] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

[38] 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* Juris. 2d § 4477 (1981).

[39] *Lorde v. City of Philadelphia*, 2000 U.S. Dist. LEXIS 17196, at *4 (E.D. Pa. Nov. 30, 2000).